1  Mark J. Austin (State Bar No. 208880)
   maustin@rutan.com
2  V. Thai Phan (State Bar No. 310176)
   tphan@rutan.com
3  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Suite 1400
4  Costa Mesa, California 92626-1931
   Telephone: 714-641-5100
5  Facsimile:   714-546-9035

6  Kristin A. Pelletier (SBN 155378)
   kpelletier@anaheim.net
7  ANAHEIM CITY ATTORNEY'S OFFICE
   200 S. Anaheim Boulevard, Suite 356
8  Anaheim, California 92805
   Telephone: 714-765-5169
9  Facsimile: 714-765-5123

10 Attorneys for Defendant CITY OF ANAHEIM

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  SOUTHERN DIVISION

| | |
|---|---|
| 14  ORANGE COUNTY CATHOLIC WORKER, an unincorporated association; Lisa Bell, Shawn Carroll, Melissa Fields, Larry Ford, Cameron Ralston, Kathy Schuler, Gloria Shoemake, as individuals;<br><br>Plaintiffs,<br><br>v.<br><br>ORANGE COUNTY, the City of Anaheim, the City of Costa Mesa, and the City of Orange,<br><br>Defendants. | Case No. 8:18-cv-00155<br><br>**DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date Action Filed:  January 29, 2018<br>Trial Date:   None Set |

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

1

# **TABLE OF CONTENTS**

2

**Page**

3  I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

4  II.   ARGUMENT .........................................................................................5

5  A.    Plaintiffs Do Not Demonstrate an Imminent Threat of
       Irreparable Harm .....................................................................................5

6

7  B.    Plaintiffs Fail to Establish the Remaining Elements for a
       TRO .........................................................................................................8

8        1.    Plaintiffs are unlikely to succeed on the merits of
             their claims........................................................................................9

9

10       2.    Plaintiffs fail to show a preliminary injunction is in
             the public interest and that the equities tip in their
             favor ...............................................................................................13

11

12       3.    Anaheim is not responsible for enforcement or
             actions at the Santa Ana Riverbed, and should not
             be "enjoined" in relation thereto...................................................14

13

    III.  CONCLUSION .........................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

2731/012377-0053
11951478.2 a02/02/18

-i-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987) .......................................................................... 13

*Ashbaucher v. City of Arcata*,
   No. CV 08-2840 MHP (NJV), 2010 WL 11211481 (N.D. Cal. Aug.
   19, 2010) ...................................................................................... 4, 10

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
   729 F.3d 937 (9th Cir. 2013) .............................................................. 8

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ........................................................... 2, 5

*Carrico v. City and Cty. of San Francisco*,
   656 F.3d 1002 ............................................................................... 2, 5

*Durning v. Citibank, N.A.*,
   950 F.2d 1419 (9th Cir. 1991) .......................................................... 4, 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Trick Drivers*,
   415 U.S. 423 (1974) ....................................................................... 5, 7

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ............................................................. 8

*Jones v. City of Los Angeles*,
   444 F.3d 1118 (9th Cir. 2006) ................................... 3, 4, 9, 10, 11, 12

*Joyce v. City & County of San Francisco*,
   846 F.Supp. 843 (N.D. Cal. 1994) ...................................................... 10

*League of Wilderness Defenders/Blue Mountains Biodiversity Project*
   *v. Connaughton*,
   752 F.3d 755 (9th Cir. 2014) ............................................................. 13

*Lehr v. City of Sacramento*,
   624 F.Supp.2d 1218 (E.D. Cal. 2009) .......................................... 4, 10, 12

*Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*,
   254 F.3d 846 (9th Cir. 2001) ........................................................... 2, 6

-ii-

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Page(s)**

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................. 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................. 8

*Powell v. Texas*,
    392 U.S. 514 (1968) ........................................................................... 11

*Reno Air Racing Ass'n., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) ............................................................ 5

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ............................................................................. 8

*Robinson v. California*,
    370 U.S. 660 (1962) ........................................................................... 11

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
    907 F. Supp. 2d 1086 (N.D. Cal. 2012) .............................................. 5

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .......................................................... 13

*Sullivan v. City of Berkeley*,
    No. C 17-06051 WHA, 2017 WL 4922614 (N.D. Cal. Oct. 31,
    2017) ............................................................................................ 4, 10

*Veterans for Greater Peace v. City of Seattle*,
    2009 WL 2243796 (W.D. Wash. 2009) ............................................. 14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) .......................................................................... 8, 13

**CALIFORNIA CASES**

*Allen v. City of Sacramento*,
    234 Cal.App.4th 41 (2015) ............................................................... 10

*Tobe v. City of Santa Ana*,
    9 Cal.4th 1069 (1995) ...................................................................... 10

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-iii-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Page(s)**

**OTHER AUTHORITIES**

Eighth Amendment ...............................................................3, 4, 9, 10, 11, 12, 13, 15

Anaheim Municipal Code
    section 7.28.010 ............................................................................. 1, 3, 10
    section 11.10 ................................................................................... 1, 3, 10
    section 11.10.020(c) ...................................................................2, 3, 7, 11
    section 13.08.020.190 .......................................................................... 2, 7

Anaheim Ordinance section 11.10.010............................................................. 13, 14

Federal Rules of Civil Procedure
    65(b)..........................................................................................................5

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-iv-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2         Plaintiffs come before this Court on the most expedited basis available under

3  the law, under which the government defendants have a mere 24 hours to respond,

4  without making *any* showing of an immediate threat of irreparable harm if the

5  requested relief is not granted, and with no likelihood of success on the merits.

6         As against Defendant City of Anaheim ("Anaheim" or "the City"), Plaintiffs

7  seek an injunction *completely prohibiting* the City from (1) citing or arresting

8  individuals for violations of the City's "anti-camping" ordinance (Anaheim

9  Municipal Code § 11.10) (Ana. Exh. 2), and (2) "enforcing" the City's anti-loitering

10  ordinance (Anaheim Municipal Code § 7.28.010) (Ana. Exh. 2), "unless an actual

11  obstruction of the sidewalk exists." Proposed Order (ECF Doc. 16-3) at 8-9.

12  Nevertheless, Plaintiffs—including the only two who allege any past involvement

13  with Anaheim police, Lisa Bell and Shawn Carrol—make *no showing* that they are

14  in any *__imminent__* danger of the enforcement of these provisions against them,

15  sufficient to justify expedited relief.

16         In fact, not a single Plaintiff alleges that he or she has *ever* been cited or

17  arrested for violations of these provisions, let alone that they are in danger of that

18  happening in the very near future. In fact, all Plaintiffs (including Anaheim-focused

19  Bell and Carroll) claim that they currently reside in the Santa Ana Riverbed, which

20  is *not* an area in which Anaheim enforces its code provisions. Declaration of Mark

21  Cyprien ("Cyprien Decl."), ¶ 3. Thus, for Plaintiffs to be in imminent danger of

22  enforcement of Anaheim's laws, *various speculative steps would first have to*

23  *occur*, including (1) Plaintiffs leaving the Santa Ana Riverbed, (2) Plaintiffs coming

24  to Anaheim, and (3) Plaintiffs engaging in actions that actually fall within the ambit

25  of the two challenged provisions. However, *none* of that has been alleged as

26  imminently occurring, meaning Plaintiffs cannot justify expedited relief. Indeed,

27  Plaintiffs' requested relief would actually *alter* the *status quo*.

28         Of course, in addressing the "imminent threat" issue, it is important not to

Rutan & Tucker, LLP
*attorneys at law*

2731/012377-0053
11951478.2 a02/02/18

-1-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

confuse the standard for establishing *standing* (for which Plaintiffs need merely show a "credible threat" of enforcement of the laws against them (*Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1006)) and the standard to justify a temporary restraining order, which requires an imminent threat of irreparable harm (*Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff [seeking a preliminary injunction] must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (emphasis in original); *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon,* 254 F.3d 846, 850–51 (9th Cir. 2001) (showing required for standing *not* enough to establish "fear of immediate and substantial injury to warrant an injunction")). In their Motion, Plaintiffs intentionally obfuscate these issues, citing the standard for standing in their section on irreparable harm, when the bar for justifying a TRO is much higher. Motion for TRO (ECF Doc. 16-2) at 21:6-13.

Ultimately, it is not surprising that Plaintiffs cannot establish a history of enforcement of these provisions against them, for the only "violation" that Plaintiffs claim to have "committed" is "sleeping" in Anaheim, and yet Anaheim's Municipal Code **does <u>not</u> criminalize merely sleeping in public places, and Anaheim's police force does not cite persons for that behavior**. Declaration of Kristin Pelletier ("Pelletier Decl."), ¶¶ 2-3; Ana. Exhs. 2 and 3. Indeed, not only do the two challenged Anaheim ordinances not criminalize "sleeping" (*see* Ana. Exh. 2), but the City's anti-camping ordinance expressly *allows* sleeping so long as it is not in a park after the park has closed (Anaheim Municipal Code § 11.10.020(c) (Ana. Exh. 3) ("'Camping' shall not include merely sleeping outside in a park or the use of a blanket, towel or mat in a park during the time the park is open to the public."). On the latter issue, the City has a separate "park hours" regulation (Anaheim Municipal Code § 13.08.020.190 (Ana. Exh. 3)), which prohibits people from *being* in public parks (whether sleeping or not) between the prohibited hours of 10:30 p.m. and 5:00

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-2-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  a.m. (*id.*). Of course, the "park hours" ordinance ***is not challenged in this case***.

2      Plaintiffs also fail to establish a likelihood of success on the merits. Plaintiffs

3  seek a complete prohibition on the City's enforcement of the challenged provisions,

4  without a distinction between those in Plaintiffs' circumstances (even assuming the

5  ordinances are applied to mere "sleepers," which, as noted above, they are not) and

6  any other violations. This alone is overbroad, and Plaintiffs propose no grounds for

7  making distinctions between "legitimate" and allegedly "illegitimate" violations.

8      Moreover, Plaintiffs' claim of "likelihood of success" is premised exclusively

9  on an alleged violation of the Eighth Amendment, and a ***since-vacated*** decision of

10  the Ninth Circuit, *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006). In

11  *Jones*, the Ninth Circuit held that a Los Angeles ordinance that prohibited sitting,

12  lying, or sleeping in a public right-of-way violated the Eighth Amendment because

13  it punished "the unavoidable consequence of a person's status or being." *Id.* at 1136,

14  1120. *Jones* has no persuasive weight here and should not be followed because:

15      The City's challenged ordinances do *not* criminalize "sitting, lying, or

16      sleeping"—or homeless "status"—but instead the *conduct* of either

17      "camping" (with all of one's camping paraphernalia) (Anaheim Municipal

18      Code § 11.10), or blocking the sidewalk through loitering (Anaheim

19      Municipal Code § 7.28.010). Indeed, as noted above, Anaheim's laws

20      expressly *allow* sleeping on public property except to the extent someone

21      does so (or does anything, for that matter) in a park after hours. Anaheim

22      Municipal Code §§ 11.10.020(c) (Ana. Exh. 2), 13.08.020.190 (Ana. Exh. 3)).

23      Thus, *Jones* involves a different type of ordinance.

24      Similarly, in reaching its conclusion, the *Jones* court required a showing that the

25      plaintiffs have nowhere else to go—*i.e.*, that no beds were available in local

26      shelters. *Jones* at 1132. Here, as Plaintiffs admit in their Motion (ECF Doc.

27      16-2, page 13, fn. 9), and as the City's evidence shows, there *are* beds

28      available on a nightly basis at the local shelters, including the Fullerton

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-3-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1    Armory. Declaration of Sandra Sagert ("Sagert Decl."), ¶ 2. In fact, prior to

2    citing someone for a violation of the City's anti-camping ordinance, *it is*

3    *Anaheim's policy and practice to first offer the cited person "an available*

4    *shelter/housing services of an available convenient shelter/housing option."*

5    Cyprien Decl., ¶ 2; Ana. Exh. 1.

6    • The *Jones* decision has been vacated, meaning it has *no precedential value*.

7    *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A

8    decision may be reversed on other grounds, but a decision that has been

9    vacated has no precedential authority whatsoever.")

10   The *Jones* decision has been rejected in a number of recent decisions, ***including***

11   ***in a recent ruling of Judge Andrew Guilford***. Ana. Exh. 4; *Lehr v. City of*

12   *Sacramento*, 624 F.Supp.2d 1218, 1231-1232 (E.D. Cal. 2009) (finding "the

13   *Jones* dissent to be the more persuasive and well-reasoned opinion"); *Sullivan*

14   *v. City of Berkeley*, No. C 17-06051 WHA, 2017 WL 4922614, at *4-*5

15   (N.D. Cal. Oct. 31, 2017) (finding that the holding in *Jones* was narrow and

16   that the Ninth Circuit "was not confronted with an ordinance that criminalized

17   camping, or one that prohibited lying, sitting, or sleeping only at certain

18   times, or in certain places."); *Ashbaucher v. City of Arcata*, No. CV 08-2840

19   MHP (NJV), 2010 WL 11211481, at *8 (N.D. Cal. Aug. 19, 2010), report and

20   recommendation adopted, No. C 08-02840 MHP, 2010 WL 11211527 (N.D.

21   Cal. Dec. 1, 2010).

22   • Consistent with those rejections, the *Jones* decision is simply wrong, in that

23   the Eighth Amendment does not prohibit the criminalization of "status," and

24   simply does not apply in this context.

25   In sum, Plaintiffs have not justified their request for expedited relief. There

26   has been no showing that Plaintiffs are in any imminent danger of enforcement of

27   the two Anaheim Municipal Code provisions that they challenge. Moreover, they

28   are destined to lose on the merits, as they rely exclusively on a now-vacated ruling

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-4-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   that is inapplicable under its own terms, is factually distinguishable, and was of

2   unsound reasoning to begin with. For those reasons and others, Plaintiffs' request

3   for a temporary restraining order must be denied.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Demonstrate an Imminent Threat of Irreparable Harm

7       Plaintiffs fail to demonstrate any emergency or risk of irreparable harm

8   sufficient to support the issuance of a temporary restraining order. To obtain such

9   relief, Plaintiffs must "clearly show that immediate and irreparable injury, loss, or

10   damage will result to the movant before the adverse party can be heard in

11   opposition." Fed. R. Civ. P. 65(b); *Mission Power Eng'g Co.*, 883 F.Supp. 488, 492

12   (C.D. Cal. 1995); *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086,

13   1095 (N.D. Cal. 2012). Pursuant to this standard, the U.S. Supreme Court has

14   explained that the circumstances justifying the issuance of a temporary restraining

15   order are extremely limited:

16      The stringent restrictions imposed . . . by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire

17      jurisprudence *runs counter to the notion of court action taken before*

18      *reasonable notice and an opportunity to be heard has been granted both sides of a dispute.* Ex parte temporary restraining orders are no

19      doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving

20      the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

21   *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Trick Drivers*, 415 U.S. 423,

22   438–439 (1974) (internal citation omitted, emphasis added). "Consistent with this

23   overriding concern, courts have recognized very few circumstances justifying the

24   issuance of an ex parte TRO." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d

25   1126, 1131 (9th Cir. 2006).

26       This is different from the standard for ***standing***, for which Plaintiffs need

27   merely show a "credible threat" of enforcement against them. *Carrico v. City and*

28   *Cty. of San Francisco*, 656 F.3d 1002, 1006; *Caribbean Marine,* 844 F.2d at 674

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-5-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (emphasis in original); *Midgett,* 254 F.3d at 850–51 (9th Cir. 2001) (showing required for standing *not* enough to establish "fear of immediate and substantial injury to warrant an injunction")). In their Motion, Plaintiffs incorrectly rely on the lower "standing" requirement when arguing that they are in imminent danger, when the standard for obtaining a TRO is much higher. Motion for TRO (ECF Doc. 16-2) at 21:6-13.

Plaintiffs make no showing of an immediate and irreparable injury, loss, or damage sufficient for the Court to issue a TRO—*i.e.*, no showing of any imminent threat of enforcement of Anaheim's laws against them. Plaintiffs allege that they "are afraid they will be cited and threatened with citation or arrest again if they leave Orange County property, but now risk arrest or citation if they stay there." Motion (ECF Doc. 16-2), at 1. In other words, all Plaintiffs (including Anaheim-focused Bell and Carroll) claim that they currently reside in the Santa Ana Riverbed, which is *not* an area in which Anaheim enforces its code provisions. Cyprien Decl., ¶ 3. Under these facts, for Plaintiffs to be in imminent danger of enforcement of Anaheim's laws, various speculative steps would first have to occur, including (1) Plaintiffs leaving the Santa Ana Riverbed, (2) Plaintiffs coming to Anaheim, and (3) Plaintiffs engaging in actions that actually fall within the ambit of the two challenged provisions. However, ***neither Plaintiff Bell nor Carroll indicate that they have the current intent to move to Anaheim from the Riverbed, let along that they will do so immediately in the near future***. As such, there is no showing of an imminent threat of enforcement against them.

Furthermore, there is also no risk of imminent threat of enforcement because Plaintiffs are not threatening to engage in conduct that Anaheim criminalizes. The only purported "violation" that Plaintiffs claim to have "committed" is "sleeping" in Anaheim. However, Anaheim's Municipal Code ***does <u>not</u> criminalize merely***

Rutan & Tucker, LLP
attorneys at law

-6-

2731/012377-0053
11951478.2 a02/02/18

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   ***sleeping in public places, and Anaheim's police force does not cite persons for***

2   ***that behavior***. Pelletier Decl., ¶¶ 2-3; Ana. Exhs. 2 and 3. Indeed, not only do the

3   two challenged Anaheim ordinances not criminalize "sleeping" (*see* Ana. Exh. 2),

4   but the City's anti-camping ordinance expressly ***allows*** sleeping so long as it is not

5   in a park after the park has closed (Anaheim Municipal Code § 11.10.020(c) (Ana.

6   Exh. 2) ("'Camping' shall not include merely sleeping outside in a park or the use of

7   a blanket, towel or mat in a park during the time the park is open to the public."). On

8   the latter issue, the City has a separate "park hours" regulation (Anaheim Municipal

9   Code § 13.08.020.190 (Ana. Exh. 3)), which prohibits people from ***being*** in public

10  parks (whether sleeping or not) between the prohibited hours of 10:30 p.m. and 5:00

11  a.m. (*id.*). Of course, the "park hours" ordinance ***is <u>not</u> challenged in this case***.

12       Moreover, Plaintiffs are under no threat of imminent harm because, even if

13  Anaheim's laws were about to be enforced against them, ***there are beds available***

14  ***on a nightly basis at the local shelters, including the Fullerton Armory***. Sagert

15  Decl., ¶ 2. Thus, the "worst case scenario" for Plaintiffs is that they are relocated to

16  a shelter that is intended to provide housing for the homeless. The fact that they are

17  choosing not to go there is not a basis for claiming "irreparable harm."

18       Finally, as clearly stated in *Granny Goose Foods, Inc*., under federal law,

19  temporary restraining orders "should be restricted to serving their underlying

20  purpose of preserving the status quo." *Granny Goose Foods, Inc*., 415 U.S. at 438-

21  439 (emphasis added). By issuing a temporary restraining order against Anaheim as

22  requested by Plaintiffs, the Court will be changing the status quo by preventing

23  Anaheim from enforcing its duly adopted anti-camping and other ordinances, not

24  just against those in Plaintiffs' circumstances (to the extent they are applied to them

25  at all) but against legitimate, undisputed violations as well

26       For these reasons, Plaintiff's request for a TRO should be denied. There is no

27  imminent threat of irreparable harm to Plaintiffs, and issuing the requested relief

28  would alter, rather than maintain, the status quo.

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-7-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**B.**     **Plaintiffs Fail to Establish the Remaining Elements for a TRO**

In addition to establishing a imminent threat of irreparable harm, a plaintiff seeking a TRO "must establish that he is likely to succeed on the merits," that "the balance of equities tips in his favor," and that "an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (a temporary restraining order is an "extraordinary remedy never awarded as of right"). When the government is a party, these last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because it is a threshold inquiry, when "a plaintiff has failed to show the likelihood of success on the merits, [the Court] 'need not consider the remaining three [*Winter* elements].'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013), quoting *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776-777 (9th Cir. 2011).

Where, as here, an injunction is sought to enjoin the activities of a state or local government, including that of a police department, the Supreme Court has repeatedly urged great caution and respect for the principle of federalism:

> When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,' *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 896 (1961)," quoted in *Sampson* v. *Murray,* 415 U.S. 61, 83 (1974). The District Court's injunctive order here, significantly revising the internal procedures of the Philadelphia police department, was indisputably a sharp limitation on the department's "latitude in the 'dispatch of its own internal affairs.'"

*Rizzo v. Goode*, 423 U.S. 362, 379-380 (1976); see also *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (". . . such a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized"); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042-1043 (9th Cir. 1999) (same).

\ \ \

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-8-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1.   **Plaintiffs are unlikely to succeed on the merits of their claims**

Plaintiffs' claim of "likelihood of success" is premised exclusively on an alleged violation of the Eighth Amendment, and the now-vacated ruling of the Ninth Circuit in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006). In *Jones*, the Ninth Circuit considered an Eighth Amendment challenge to a Los Angeles ordinance that prohibited sitting, lying, or *sleeping* on any public street or public right of way. *Id.* at 1120. The court held that the Eighth Amendment prohibits the government from punishing an involuntary act or condition "if it is the unavoidable consequence of a person's status or being." *Id*. at 1136. The court found that this standard was met with respect to the Los Angeles ordinance because the homeless plaintiffs had no choice but to be on the streets at the time they were cited for violating the city's ordinance (specifically, ***there were no beds available in local shelters***), and sleeping in public is involuntary and inseparable from an individual's status or condition of being homeless when no shelter space is available. (*Id.* at 1132-1137.) In reaching this conclusion, the court noted that there is *no* Eighth Amendment protection for conduct that a person makes unavoidable based on their own immediately proximate voluntary acts, including "camping or building shelters that interfere with pedestrian or automobile traffic." *Id.* at 1137.

For multiple reasons, the Jones case should not be followed here.

**First**, because *Jones* has been vacated, it is no longer good law, and has no precedential weight. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A decision may be reversed on other grounds, but a decision that has been vacated has no precedential authority whatsoever.") Indeed, in a recent case making similar claims, Judge Guilford reached this same conclusion in rejecting adn declining to follow *Jones*. Ana. Exh. 4.

**Second**, consistent with the fact that *Jones* has no precedential value, it has been rejected in a number of recent District Court decisions (including the above-noted decision by Judge Guilford), which have uniformly chosen to follow the

Rutan & Tucker, LLP
attorneys at law

-9-

2731/012377-0053
11951478.2 a02/02/18

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

dissent in *Jones* rather than the majority. Ana. Exh. 4; *Lehr*, 624 F.Supp.2d at 1231-1232 (E.D. Cal. 2009) (finding "the *Jones* dissent to be the more persuasive and well-reasoned opinion"); *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2017 WL 4922614, at *4-*5 (N.D. Cal. Oct. 31, 2017) (finding that the holding in *Jones* was narrow and that the Ninth Circuit "was not confronted with an ordinance that criminalized camping, or one that prohibited lying, sitting, or sleeping only at certain times, or in certain places."); *Ashbaucher v. City of Arcata*, No. CV 08-2840 MHP (NJV), 2010 WL 11211481, at *8 (N.D. Cal. Aug. 19, 2010), report and recommendation adopted, No. C 08-02840 MHP, 2010 WL 11211527 (N.D. Cal. Dec. 1, 2010). Indeed, the *Sullivan* case specifically involved an ***anti-camping ordinance***, and is thus more factually akin to the present case.

Consistent with these rulings, a number of cases have also held that "homelessness" is not a "status" for the purpose of the Eighth Amendment, and/or that the Eighth Amendment does not prohibit the criminalization of issues tied to one's status. *See, e.g.*, *Lehr*, 624 F.Supp.2d at 1222; *Joyce v. City & County of San Francisco*, 846 F.Supp. 843, 857-858 (N.D. Cal. 1994) (refusal to find status based on alleged failure of city to provide sufficient housing for the homeless); *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1105-1106 (1995); *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 59 (2015) ("What constitutes a status 'might elude perfect definition,' but factors such as the involuntary acquisition of the characteristic . . . and the degree to which the person has control over that characteristic determine whether a characteristic is a status.")

**<u>Third</u>**, factually *Jones* is entirely distinguishable from the present case. Contrary to *Jones*, here the City's challenged ordinances do ***not*** criminalize "sitting, lying, or sleeping"—or homeless "status"—but instead the ***<u>conduct</u>*** of either "camping" (with all of one's camping paraphernalia) (Anaheim Municipal Code § 11.10), or blocking the sidewalk through loitering (Anaheim Municipal Code § 7.28.010). Indeed, Anaheim's laws expressly ***allow*** sleeping on public property

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-10-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   except to the extent someone does so (or does anything, for that matter) in a park

2   after hours. Anaheim Municipal Code §§ 11.10.020(c) (Ana. Exh. 2), 13.08.020.190

3   (Ana. Exh. 3)). Moreover, with respect to camping (the main focus of Plaintiffs'

4   challenge and the primary of the City's two challenged ordinances), the *Jones* court

5   even stated that ordinances prohibiting such conduct would not fall within the ambit

6   of its ruling. *Jones* at 1137.

7       Courts have routinely recognized that there is an important distinction

8   between laws that criminalize status and laws that criminalize conduct, even if that

9   conduct may be derivative of a person's status, finding that the latter typically do

10  not run afoul of the Eighth Amendment. In *Robinson v. California*, 370 U.S. 660

11  (1962), the Supreme Court held that while a state could not criminalize "the status

12  of being addicted to narcotics," a state may criminalize conduct such as the use,

13  purchase, sale, or possession of narcotics. *Id*. at 666-667. Six years later, the Court

14  reaffirmed this distinction between status and conduct—even as to conduct that

15  allegedly is "involuntary." *See Powell v. Texas*, 392 U.S. 514 (1968). In *Powell,* the

16  Court rejected the argument that an alcoholic could not be punished for public

17  intoxication because the conduct for which he was punished was involuntary.[1] *Id*. at

18  533. The Court further held:

19      On its face the present case does not fall within that holding, since
20      ***appellant was convicted, not for being a chronic alcoholic, but for
        being in public while drunk*** on a particular occasion. The State of
21      Texas thus has not sought to punish a mere status, as California did in
        *Robinson*; nor has it attempted to regulate appellant's behavior in the
22      privacy of his own home. Rather, ***it has imposed upon appellant a
        criminal sanction for public behavior which may create substantial
23      health and safety hazards, both for appellant and for members of the
        general public, and which offends the moral and esthetic sensibilities
24      of a large segment of the community***. This seems a far cry from
        convicting one for being an addict, being a chronic alcoholic, being
        'mentally ill, or a leper.'

25

26  *Powell v. State of Tex.*, 392 U.S. 514, 532 (1968) (emphasis added).

27  _____

28  [1]   Plaintiffs misconstrues the holding in *Powell v. Texas*, stating that the Supreme
        Court "upheld a prohibition against public drunkenness because the statute
        criminalized the *act* of being intoxicated in public." Plaintiffs' Memo, pg. 16.

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-11-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*Lehr*, *supra*, 624 F.Supp.2d at 1224-1234 also provides an extensive and compelling analysis regarding the punishment of conduct versus the punishment of status. The *Lehr* court acknowledges the vacated decision in *Jones*. In words equally applicable to the case at hand, "[t]here is no question that homelessness is a serious problem and the plight of the homeless, a cause for serious concern. Yet this does not give us license to expand the narrow limits that, in a 'rare type of case,' the Cruel and Unusual Punishment Clause of the Eighth Amendment places on substantive criminal law." 444 F.3d at 1138-1139 (Rymer, J., dissenting). The *Lehr* court also observed that relief of the type sought by Plaintiffs under the Eighth Amendment:

> would set precedent for an onslaught of challenges to criminal convictions by those who seek to rely on the involuntariness of their actions. It would potentially provide constitutional recourse to anyone convicted on the basis of conduct derivative of a condition he is allegedly 'powerless to change.' While this Court is sympathetic to the plight of Plaintiffs in this case, as well as to that of all individuals who are without shelter, a decision in favor of Plaintiffs today would be dangerous bordering on irresponsible.

624 F.Supp.2d at 1234

Finally, in reaching its conclusion, the *Jones* court required a showing that the plaintiffs had nowhere else to go—*i.e.*, that no beds were available in local shelters. *Jones* at 1132. Here, as Plaintiffs admit in their Motion (ECF Doc. 16-2, page 13, fn. 9), and as the City's evidence shows, there ***are*** beds available on a nightly basis at the local shelters, including the Fullerton Armory. Sagert Decl., ¶ 2. In fact, prior to citing someone for a violation of the City's anti-camping ordinance, ***it is Anaheim's policy and practice to first offer the cited person "an available shelter/housing services of an available convenient shelter/housing option."*** Cyprien Decl., ¶ 2; Ana. Exh. 1. Thus, Plaintiffs fail to demonstrate that they have no choice but to camp or otherwise sleep on public property in Anaheim. On the contrary, they have a choice—to utilize the available beds at the Armory. Because they voluntarily fail to do so, they have no likelihood of success on the merits, even under *Jones*.

Rutan & Tucker, LLP
attorneys at law

2731/012377-0053
11951478.2 a02/02/18

-12-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1    At bottom, Plaintiffs' claim of cruel and unusual punishment under the Eighth

2  Amendment lacks merit and, as a result, cannot support the requested temporary

3  restraining order. Furthermore, any consideration of the nature and scope of the

4  provisional relief sought by Plaintiff—shutting down Anaheim's enforcement of

5  municipal laws designed to protect the health, safety, and welfare of Anaheim

6  residents—should occur only after a rigorous review of a robust and complete

7  evidentiary record, not the skewed and limited presentation offered up by Plaintiffs.

8    **2.    Plaintiffs fail to show a preliminary injunction is in the**

9    **public interest and that the equities tip in their favor**

10    When ruling on a request for expedited provisional relief such as a TRO, "a

11  court must balance the competing claims of injury and must consider the effect on

12  each party of the granting or withholding of the requested relief" (*Amoco Prod. Co.*

13  *v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)) and must "weigh in its analysis the

14  public interest implicated by [an] injunction" *Stormans, Inc. v. Selecky*, 586 F.3d

15  1109, 1138 (9th Cir. 2009); see *League of Wilderness Defenders/Blue Mountains*

16  *Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (public

17  interest element "deserves special attention in cases where the public interest may be

18  affected"). In exercising their sound discretion, courts of equity should pay

19  particular regard to the public consequences in employing the extraordinary remedy

20  of injunction." *Winter*, *supra*, 555 U.S. at 24.

21    Here, the balance of equities tip in favor of Anaheim because the camping

22  ordinances were put in place to further the public interest in health, safety, and

23  welfare. As indicated in Anaheim ordinances section 11.10.010, the purpose and

24  intent of the camping ordinances are as follows:

25    The public parks, public streets and alleys, public parking lots, public
      rights-of-way, parkways, public sidewalks, recreational areas and other

26    publicly-owned or controlled property within the City should be readily
      accessible and available to residents, businesses and the public at large

27    for their intended purposes. The use of these Public Areas for Camping
      purposes and/or for the Storage of Personal Property interferes with the

28    rights of others to use and enjoy these Public Areas as they are intended.
      Such activity can constitute a public health and safety hazard which

Rutan & Tucker, LLP
*attorneys at law*

-13-

2731/012377-0053
11951478.2 a02/02/18

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  adversely impacts neighborhoods and commercial areas. The purpose
2  of this Chapter is to maintain these Public Areas within the City in a
   clean, sanitary, safe and accessible condition, to adequately protect the
3  health, safety, environment and general welfare of the community, and
   to ensure that these Public Areas are used for their intended purposes
4  and remain accessible to all citizens, businesses and visitors in the City.
   Nothing in this Chapter is intended to interfere with otherwise lawful
5  and ordinary uses of public property.

6  (Anaheim Ordinance, § 11.10.010.)

7       Preventing Anaheim from enforcing the camping ordinance will cause

8  adverse public health, safety, and sanitary impacts.  Sagert Decl. ¶ 6. Further, the

9  courts have recognized that allowing individuals to turn public property into private

10 storage facilities or encampments violates the rights of others, exposes the City to

11 significant liability, and arguably amounts to a gift of public funds. *Veterans for*

12 *Greater Peace v. City of Seattle*, 2009 WL 2243796 (W.D. Wash. 2009) (sweeps of

13 encampments on public property and seizure and destruction of property incident

14 thereto deemed reasonable based on governmental interests). Accordingly, the

15 balance of equities and the public interest do not support issuing the requested

16 injunction.

17         **3.**      **Anaheim is not responsible for enforcement or actions at the**

18                **Santa Ana Riverbed, and should not be "enjoined" in**

19                **relation thereto**

20      Finally, the first section of Plaintiffs' Proposed Order (ECF Doc. 16-3, p. 8:10-

21 22) seeks to enjoin all defendants, including the city defendants such as Anaheim,

22 from taking various enforcement actions in or around the Santa Ana Riverbed. This

23 is property of the County of Orange. Cyprien Decl., ¶ 3. It is not within the City's

24 boundaries, and the City does not enforce its ordinances there. Thus, to the extent

25 Plaintiffs seek relief relating to that area, it should be addressed by the County, and

26 any relief should be directed solely *at* the County, not at Anaheim or any of the

27 other city defendants. Indeed, Plaintiffs cite no basis for seeking injunctive relief

28 against Anaheim in relation to actions in that area. Thus, any relief requested in that

Rutan & Tucker, LLP
*attorneys at law*

2731/012377-0053
11951478.2 a02/02/18

-14-

DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1 portion of the Proposed Order should be denied as against the City of Anaheim, over

2 and above any bases for denying it on the merits as to the County.

3 **III.    CONCLUSION**

4       Plaintiffs are unlikely to succeed on the merits of their claims under the

5 Eighth Amendment, and they have provided no evidence that they are under an

6 imminent threat of irreparable harm if the requested TRO is not granted. Moreover,

7 a temporary restraining order is clearly ***not*** in the public interest, and the equities

8 weigh against such an  injunction.

9       Based on the foregoing, the City of Anaheim respectfully requests that this

10 Court should deny Plaintiffs' application for a temporary restraining order against

11 the City.

12

13 Dated: February 2, 2018_____          RUTAN & TUCKER, LLP

14                                                        By:_____/s/ Mark J. Austin_____

15                                                             Mark J. Austin
                                                            Attorneys for Defendant
16                                                          CITY OF ANAHEIM

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2731/012377-0053
11951478.2 a02/02/18

-15-
DEFENDANT CITY OF ANAHEIM'S OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION