**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street, Suite 104
Santa Ana, California 92705
t. 714 617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org


**CAROL A. SOBEL** SBN 84483
**MONIQUE ALARCON** SBN 311650
**AVNEET CHATTHA** SBN 316545
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, California 90401
t. 310-393-3055
e. carolsobellaw@gmail.com
e. monique.alarcon8@gmail.com
e. avneet.chattha7@gmail.com

ATTORNEYS FOR PLAINTIFFS
[ADDITIONAL COUNSEL ON NEXT PAGE]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Orange County Catholic Worker, et al., <br><br>  Plaintiffs,<br> v.<br> County of Orange, et al.,<br>  Defendants. | Case No.: 18-CV-00155-DOC-KES<br><br>NOTICE OF FILING AMICUS LETTER AND EXHIBITS OF THE NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY<br><br>Date: February 13, 2018<br>Time: 8:00 AM<br>Ctrm: SA 9D |

1 **PAUL L. HOFFMAN** SBN 71244
2 **CATHERINE SWEETSER** SBN 271142
   **COLLEEN M. MULLEN** SBN 299059
3 SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
4 11543 W. Olympic Blvd.
   Los Angeles, California  90064
5 t. 310-396-0731
6 e. hoffpaul@aol.com
   e. csweetser@sshhlaw.com
7 e. cmullen@sshhlaw.com

`Case 8:18-cv-00155-DOC-JDE Document 85 Filed 02/12/18 Page 3 of 6 Page ID #:1457`

Notice is hereby given of filing the amicus letter and attached exhibits of the National Law Center on Homelessness and Poverty.

Dated: February 12, 2018            Respectfully submitted,

Elder Law and Disability Rights Center
Law Office of Carol A. Sobel
Schonbrun Seplow Harris & Hoffman

  /s/   Carol A. Sobel
By: CAROL A. SOBEL
Attorneys for Plaintiffs

# NATIONAL LAW CENTER
## ON HOMELESSNESS & POVERTY

**Board of Directors**

**Edward R. McNicholas**
*Chair*
Sidley Austin LLP

**Bruce E. Rosenblum**
*Vice-Chair*
The Carlyle Group

**Robert C. Ryan**
*Treasurer*
American Red Cross

**Kirsten Johnson-Obey**
*Secretary*
NeighborWorks

**Eric A. Bensky**
Schulte Roth & Zabel LLP

**Paul F. Caron**
Microsoft Corporation

**Bruce J. Casino**
Attorney

**Rajib Chanda**
Simpson Thacher & Bartlett LLP

**Dwight A. Fettig**
Porterfield, Fettig & Sears LLC

**Julia M. Jordan**
Sullivan & Cromwell LLP

**Steve Judge**
Private Equity Growth
Capital Council (retired)

**Father Alexander Karloutsos**
Greek Orthodox Archdiocese
of America

**Georgia Kazakis**
Covington & Burling LLP

**Pamela Malester**
U.S. Department of Health and
Human Services (retired)

**Tashena Middleton Moore**
Attorney

**G.W. Rolle**
Missio Dei Church

**Erin Sermeus**
OWN TV

**Jeffrey A. Simes**
Goodwin Procter LLP

**Vasiliki Tsaganos**
Attorney

**Robert Warren**
People for Fairness Coalition

**Maria Foscarinis**
*President*
Executive Director

*Affiliations for identification
purposes only*

February 12, 2018

Honorable David O. Carter
United States District Court, Central District of California
411 West Fourth Street, 9th Floor, Courtroom D
Santa Ana, California 92701

RE: Amicus Letter of National Law Center on Homelessness & Poverty in support of Plaintiffs' Emergency Stay Request, *Orange County Catholic Worker*, *et al*. *v*. *Orange County*, *et al*.
Case No. 8:18-cv-00155-DOC-(KESx)

Dear Judge Carter:

Pursuant to the Court's Minute Order of February 6, 2018 inviting "written briefing from any amicus groups which may include. . .service providers . . . and housing organizations," the National Law Center on Homelessness & Poverty (the "Law Center") submits this amicus letter and attached reports to support the court in crafting a constitutional and evidence-based response to the needs of homeless persons living in the encampment in the Santa Ana Riverbed. *Orange County Catholic Worker*, *et al*. *v*. *Orange County*, *et al*., Case 8:18-cv-00155-DOC-(KESx) (C.D. Cal. 2/6/18) (order Setting Injunction Hearing (Dkt. 50). As detailed further below, the Law Center has spent years analyzing how government policies and practices impact homeless persons and their Constitutional rights, as well as researching constructive alternatives to the criminalization of homelessness. The Law Center is therefore in a position to provide the Court with vital information and perspective relevant to several key questions before the Court in deciding Plaintiff's pending motion for a Preliminary Injunction. Specifically, the Law Center wishes to provide the court with evidence-based principles that should be followed in developing a response to encampments; and examples of these principles being put into practice, at least in part, by communities across the country.

## I.   INTERESTS OF AMICUS CURIAE

The Law Center is a nonprofit organization based in Washington, D.C. that was founded in 1989 and is the only national legal organization with the mission to prevent and end homelessness. Over the past 10 years, the Law Center has published numerous legal and policy analyses of the increase in ordinances criminalizing homelessness. *See*, e.g. Nat'l Law Ctr. on Homelessness & Poverty, Housing Not Handcuffs: Ending the Criminalization of Homelessness in U.S. Cities (2016), https://www.nlchp.org/documents/Housing-Not-Handcuffs [hereinafter "Housing Not

2000 M Street, N.W., Suite 210, WASHINGTON, DC 20036  |  www.nlchp.org  |  PHONE: 202.638.2535  |  FAX: 202.628.2737

*The National Law Center on Homelessness & Poverty is a 501(c)3 charitable organization. Its federal tax ID is 52-1633883. No goods or services were given in exchange for this gift. Your donation is tax-deductible to the extent of the law. Please retain this letter for your records as your official receipt.*

Handcuffs"], attached. The Law Center also recently published Tent City, USA, which shares the results of a national survey of news reports documenting the rise of tent cities across the country, surveys 187 cities for municipal ordinances, formal, and informal practices regarding encampments, and provides cases studies based on interviews with dozens of government officials, service providers, and homeless individuals documenting communities that have adopted best practice approaches, at least in part. *See,* Nat'l Law Ctr. on Homelessness & Poverty, Tent City, USA: The Growth of America's Encampments and How Communities are Responding (2017), https://www.nlchp.org/Tent_City_USA_2017 [hereinafter "Tent City, USA"], attached.

I. PRINCIPLES AND BEST PRACTICES REGARDING CLOSURE OF ENCAMPMENTS, CONSISTENT WITH CONSTITUTIONAL OBLIGATIONS, EXIST, AND SHOULD BE APPLIED IN ADDRESSING THE SANTA ANA RIVERBED ENCAMPMENT.

Orange County is not the first community in the U.S. to deal with the existence of homeless encampments, and numerous resources exist to assist it in addressing the Santa Ana encampment in a manner that is consistent with constitutional rights and best practices. Based on its decades of experience and recent interviews with federal, city, and county officials; service providers; and directly impacted persons experiencing homelessness, the Law Center developed a list of Encampment Principles and Practices its Tent City, USA report that offer guidance to municipalities, found on p. 13-14. Without repeating the entirety of that list here, we note the first principle provides the basis on which any solution must be formed: "All people need safe, accessible, legal place to be, both at night and during the day, and a place to securely store belongings—until permanent housing is found." Tent City, USA, *at* 13. Any remedy which does not provide for that—as this Court recognizes—means "persons who leave or are evicted from the Riverbed may subsequently be cited by Defendant Cities under those Cities' anti-camping or anti-loitering laws, even though those persons may not be able to find a shelter or other place to sleep," subjecting them to potential fines, fees, and incarceration, disrupting relationships they have with service providers and each other, and pushing them into more vulnerable and dangerous living situations, all at higher cost to taxpayers than simply providing adequate alternative housing. *See Orange County Catholic Worker*, *et al*. *v*. *Orange County*, *et al*., Case 8:18-cv-00155-DOC-(KESx) (C.D. Cal. 2/6/18) (order Setting Injunction Hearing (Dkt. 50); Tent City, USA*, at* 33-34.

We also wish to draw the Court's attention to the case studies in our Tent City, USA report which demonstrate the feasibility of solutions which promote permanent housing solutions, rather than criminalization which may temporarily clear one area, but does not remedy the underlying problem. In Charleston, SC, the city marshalled its own resources and partnered with others, setting a definite but ample timeline, to clear an entire 100+ person encampment without a single arrest. Tent City, USA, *at* 46-53. Indianapolis, IN, and Charleston, WV passed ordinances requiring the availability of adequate alternative housing before encampments can be cleared—the latter as part of a court-approved settlement. *Id., at* 54-64. And Seattle, WA, and San Francisco, CA have both considered ordinances that provide similar protections. *Id., at* 65. Seattle's bill was determined by the U.S. Department of Justice to be consistent with the constitution and with DOJ's Statement of Interest in *Bell v. Boise. See* Letter from Lisa Foster, Director, Office for Access to Justice, U.S. Dept. of Justice, to Seattle City Councilors, (Oct.13, 2016), (https://assets.documentcloud.org/documents/3141894/DOJ-ATJ-Letter-to-Seattle-City-Council-10-13-2016.pdf); *Bell v. Boise, et. al.,* 1:09-cv-540-REB, Statement of Interest of the United States (Aug. 6, 2015). The full text of these ordinances is contained in the

Appendices to the Tent City, USA report. These approaches follow our Principle 3: "Any move or removal of an encampment must follow clear procedures that protect residents."

We are confident that Plaintiffs will adequately brief the court on the constitutional and other harms of criminalization of homelessness, but both Tent City, USA and our Housing Not Handcuffs: A Litigation Manual summarize existing case law on sweeps of encampments and broader criminalization, respectively. *See* Tent City, USA, *at* 82-95; Nat'l Law Ctr. on Homelessness & Poverty, Housing Not Handcuffs: A Litigation Manual (2017), https://www.nlchp.org/documents/Housing-Not-Handcuffs-Litigation-Manual. Additionally, we note the existence of federal guidance on encampments and criminalization. The U.S. Interagency Council on Homelessness ("USICH") published guidance specifically on encampments that is largely consistent with the principles in our Tent City, USA report, as well as guidance on criminalization. *See* USICH, Ending Homelessness for People Living in Encampments: Advancing the Dialogue (2015), http://usich.gov/issue/human-rights/effective-community-basedsolutions-to-encampments/; USICH, *Searching Out Solutions: Constructive Alternatives to Criminalization* (2012), *available at* http://usich.gov/resources/uploads/asset_library/RPT_SoS_March2012.pdf. The Department of Justice affirmed the relevance of this guidance to its position in its Statement of Interest in *Bell v. Boise. See, Bell v. Boise, et. al.,* 1:09-cv-540-REB, Statement of Interest of the United States (Aug. 6, 2015), *at* 15, attached. The Department of Justice's Community Oriented Policing Services also published a newsletter focusing on alternatives to criminalization. Community Policing Dispatch, U.S. Dept. of Justice Community Oriented Policing Services, vol. 8, Issue 12 (Dec. 2015), https://cops.usdoj.gov/html/dispatch/12-2015/index.asp.

Finally, as a practical matter, we note that despite the extensive case law in this area, communities continue to find new ways of criminalizing homelessness that violate the constitutional rights of persons experiencing homelessness. The only true remedy for this constitutional ill is to provide housing, so that no one needs to sleep or conduct other basic, life-sustaining conduct on the streets in the first place. Courts can use their remedial powers to order extraordinary relief in cases where simply issuing an injunction restricting limited behavior will not offer relief. For a full exploration of this avenue, we offer Eric S. Tars, et. al., *Can I Get Some Remedy?: Criminalization of Homelessness and the Obligation to Provide an Effective Remedy*, 45 Col. HRLR 738 (2014), attached. This case, where there is a clear regional problem with criminalization, may present the appropriate setting for ordering such relief at some stage.

We hope the Court is able to draw upon our case studies and apply our Encampment Principles and Practices in crafting effective relief in this case. Should the Court require any additional assistance, we are happy to offer our services. Please feel free to contact me at 202-464-0034 or at etars@nlchp.org.

Sincerely,

*Eric S. Tars*

Eric S. Tars
Senior Attorney