**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

**CAROL A. SOBEL** SBN 84483          **PAUL L. HOFFMAN** SBN 71244
**MONIQUE ALARCON** SBN 31165       **CATHERINE SWEETSER** SBN 271142
**AVNEET CHATTHA** SBN 316545       **COLLEEN M. MULLEN** SBN 299059
**LAW OFFICE OF CAROL SOBEL**        SCHONBRUN, SEPLOW, HARRIS &
725 Arizona Avenue, Suite 300             & HOFFMAN
Santa Monica, California 90401          11543 W. Olympic Blvd.
t. 310-393-3055                                Los Angeles, California   90064
e. carolsobellaw@gmail.com            t.  310-396-0731
e. Monique.alarcon8@gmail.com      e. hoffpaul@aol.com
e. avneet.chattha7@gmail.com         e. csweetser@sshhlaw.com
                                                      e. cmullen@sshhlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ORANGE COUNTY CATHOLIC WORKER, et al., | Case No. 8:18-cv-00155 DOC (JDE) |
| Plaintiffs, | **NOTICE OF SETTLEMENT BETWEEN THE PLAINTIFFS AND DEFENDANT CITY OF ORANGE** |
| v. | |
| ORANGE COUNTY, the CITY OF ANAHEIM, the CITY OF COSTA MESA, and the CITY OF ORANGE, | |
| Defendants. | |

1357315.1

18
- - 18

1    Notice is hereby given that the Plaintiffs have reached a settlement in this
2    matter with the Defendant CITY OF ORANGE, subject to the approval of the
3    Court.
4        A copy of the settlement agreement is attached to this Notice as Exhibit A.
5    Because the agreement involves a provision for a Dispute Resolution Process to be
6    established by the Court, and because there are multiple defendants in this action,
7    the parties seek the Court's preliminary approval for the terms of the settlement.
8    The parties will file an agreement with the signatures of all parties, along with a
9    proposed Order of Dismissal, once the Court has reviewed the agreement and
10   advised the parties of changes, if any, the Court finds necessary.
11
12
13   Dated: October 26, 2018         Respectfully submitted,
14                                   ELDER LAW & DISABILITY RIGHTS CENTER
15                                   LAW OFFICE OF CAROL A. SOBEL
                                     SCHONBRUN SEPLOW HARRIS & HOFFMAN
16
17                                   _____/s/____Carol A. Sobel_____.
18                                   By: CAROL A. SOBEL
19                                   Attorneys for Plaintiffs
20
21   DATED: October 26, 2018         WAYNE WINTHERS, CITY ATTORNEY
22
23                                   _____/s/____Wayne Winthers_____.
24                                   By: WAYNE WINTHERS
                                     Attorneys for Defendant CITY OF ORANGE
25
26
27
28

2

1357315.1

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

3

1357315.1

**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

**CAROL A. SOBEL** SBN 84483
**MONIQUE ALARCON** SBN 31165
**AVNEET CHATTHA** SBN 316545
**LAW OFFICE OF CAROL SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, California 90401
t. 310-393-3055
e. carolsobellaw@gmail.com
e. Monique.alarcon8@gmail.com
e. avneet.chattha7@gmail.com

**PAUL L. HOFFMAN** SBN 71244
**CATHERINE SWEETSER** SBN 271142
**COLLEEN M. MULLEN** SBN 299059
SCHONBRUN, SEPLOW, HARRIS &
      & HOFFMAN
11543 W. Olympic Blvd.
Los Angeles, California   90064
t. 310-396-0731
e. hoffpaul@aol.com
e. csweetser@sshhlaw.com
e. cmullen@sshhlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ORANGE COUNTY CATHOLIC WORKER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ORANGE COUNTY, the CITY OF ANAHEIM, the CITY OF COSTA MESA, and the CITY OF ORANGE,<br><br>Defendants. | Case No. 8:18-cv-00155 DOC (JDE)<br><br>**SETTLEMENT AGREEMENT BY AND BETWEEN THE CITY OF ORANGE AND ALL PLAINTIFFS, ON THEIR INDIVIDUAL BEHALF** |

1

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between, on the one hand, the City of Orange ("Orange")  and, on the other hand, Orange County Catholic Worker ("OCCW") (an unincorporated association, acting by and through its designated representatives), and the following individuals, who enter into this agreement on their individual behalfs, as defined below: Lisa Bell, Melissa Fields, Gloria Shoemake, Richie Thomas, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Fuller (collectively, the "Individual Plaintiffs, and together with OCCW, "Plaintiffs"). The parties to this Agreement are referred to herein individually as a "Party" and collectively as the "Parties."

# RECITALS

A.    **WHEREAS**, on January 29, 2018, OCCW and certain of the Individual Plaintiffs (Lisa Bell, Melissa Fields, Gloria Shoemake, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Fuller) filed this Action, entitled *Orange County Catholic Worker v. Orange County*, California Central District Case No. 8:18-cv-00155 (the "Action"), against the County of Orange, the City of Costa Mesa, the City of Orange, and Orange (collectively, "Defendants").

B.    **WHEREAS**, on July 26, 2018, all Plaintiffs filed a "First Amended Complaint" ("FAC") in the Action, against all Defendants. Among other changes from the original complaint, the FAC added Richie Thomas as a named Plaintiff and pleaded a potential class action against the County of Orange. At the time of this Agreement, the FAC is the operative complaint in the Action.

C.    **WHEREAS**, the FAC alleges that OCCW is an unincorporated association dedicated to the service and care of the poor in Orange County, and that the Individual Plaintiffs are homeless individuals residing in Orange County. The FAC alleges, *inter alia*, that Defendants, and each of them, have violated the Individual Plaintiffs' rights by enforcing various trespass, loitering, and/or anti-

2

1   camping ordinances or laws against them at times when, according to Plaintiffs,

2   there were no immediately accessible and appropriate beds available to them in

3   Orange County. Orange disputes the factual allegations and legal contentions made

4   by Plaintiffs in the FAC.

5       **D.     WHEREAS**, the FAC alleges the following claims for relief against

6   Orange, as well as the other Defendants: (1) violation of the Eighth and Fourteenth

7   Amendments to the U.S. Constitution (42 U.S.C. § 1983), and Article VII, sec. 17,

8   of the California Constitution for alleged "cruel and unusual punishment" (First

9   Cause of Action), (2) violation of the First and Fourth Amendments to the U.S.

10  Constitution (42 U.S.C. § 1983) (Second Cause of Action), (3) violation of the

11  right to due process of law under the Fourteenth Amendment to the U.S.

12  Constitution (42 U.S.C. § 1983) (Third Cause of Action), (4) violation of

13  California Civil Code section 52.1 (Seventh Cause of Action), (5) violation of

14  California Government Code section 815.6 (Eighth Cause of Action), and (6)

15  violation of California Government Code 11135 (Ninth Cause of Action). Orange

16  disputes each of these claims for relief in their entirety, and disputes Plaintiff's

17  underlying legal contentions and theories.

18      **E.     WHEREAS**, the Individual Plaintiffs have now determined to dismiss

19  the F.R.Civ.P. 23(b)(2) class allegations, with the approval of the Court.

20      **F.     WHEREAS**, without admitting any wrongdoing, liability, or legal

21  violations on the part of Orange, without conceding the validity of any of

22  Plaintiffs' legal theories or claims, and for the sole purpose of resolving the Action

23  and any claims relating thereto in an economic and efficient manner, the Parties

24  now desire to enter into this Agreement on the terms set forth herein.

## TERMS

**NOW, THEREFORE,** for full and valuable consideration, the sufficiency
of which is hereby acknowledged, and based upon the foregoing Recitals, and the

3

1   terms, conditions, covenants, and agreements herein, the Parties agree as follows:

2   **1.   Order re Continuing Jurisdiction, and Effective Date.** Following

3   the full execution of this Agreement by all Parties, the Parties shall file with the

4   Court in the Action the "[Proposed] Order re Settlement and Continuing

5   Jurisdiction," attached hereto as <u>Exhibit A</u> (the "Order"). The obligations of the

6   Parties in the remaining sections of this Agreement, and the releases contained

7   herein, shall become effective and operative on the date on which the Order is

8   signed and entered by the Court, and shall be contingent upon the Court's signing

9   and entry of the Order (hereinafter, the "Effective Date").

10  **2.   Incorporation of Recitals.** The representations in the above section

11  of this Agreement, entitled "RECITALS," are hereby incorporated into and made a

12  material part of the terms and representations of this Agreement.

13

14  **3.   Construction and Operation of New Homeless Shelter(s).** Orange

15  commits to the following with respect to the funding and/or expedited review of

16  one or more new facilities to provide placements for unsheltered individuals within

17  the City's jurisdiction:

18  **3.1**   The cities in the area designated by the County as the North

19  Special Planning Area ("North SPA"), which includes, Orange, Fullerton,

20  Placentia, Buena Park, Anaheim, Brea, Cypress, La Habra, La Palma, Los

21  Alamitos, Stanton, Villa Park and Yorba Linda, shall fund, or obtain funding from

22  the County for, the construction and initial operation of two or more feasible,

23  temporary, low-barrier homeless shelters at locations within North SPA cities

24  (collectively, the "Shelters," and individually a "Shelter"), with a total capacity of

25  at least 200 beds to be operational and a goal of having the facilities operational by

26  June 30, 2019, or sooner if possible. The North SPA shall have complete discretion

27  in determining which, if any, Shelter projects to fund, and which Shelter projects

28  are suitably feasible, subject to any limitations set forth herein.

4

**3.2**    To the extent that it is required to do so by Government Code sec. 65583 et seq., or any other relevant provision, Orange agrees to execute an MOU with the County and the participating North SPA cities, setting forth the financial responsibilities of each participating government entity for the development and ongoing operation of the Shelter(s) and the allocation of beds to each participating entity according to its financial contribution.

**3.3**    The City of Orange also agrees to expedite any necessary processing, review, approvals, and/or inspections of any Shelter project selected by the North SPA for funding pursuant to this Agreement, to the extent reasonably practicable and permitted by law.

**3.4**    The North SPA cities, in conjunction with the County, currently plan to fund two Shelter(s) in the North SPA, each with an initial capacity of 100 beds and the availability of expansion to 200 beds, if necessary.  Although these projects are not the exclusive means by which Orange may satisfy its obligation to meet the needs of homeless individuals in the City, Plaintiffs acknowledge and agree that the creation of these Shelter projects, or any portion thereof initially totaling 200 Shelter beds, shall satisfy Orange's obligations under Paragraph 3.1 of this Agreement to meet the Court's requirement of available placements for at least 60 percent of the unsheltered individuals in the Defendant City.

**4.**    **Enforcement of Anti-Camping and Anti-Loitering Provisions.**

**4.1**    Orange shall establish the following policies and procedures relating to the enforcement of Orange Municipal Code sections 12.66.030 and 12.48.045 (collectively, the "Anti-Camping Provision"), or any comparable provisions of state law, or any law concerning "loitering" against homeless individuals within its jurisdiction:

**4.1.1**  Absent exigent circumstances, any enforcement of the Anti-Camping Provision against a homeless individual (including any of the

5

named Plaintiffs) will first be preceded by contacts by outreach and engagement personnel to determine appropriate shelter placement for the individual in question, per the procedures outlined herein. For purposes of this Agreement, the term "appropriate outreach and engagement personnel" shall include County Outreach and Engagement personnel, and/or representatives from CityNet or any other organization(s) with which Orange has contracted for such outreach and engagement services (collectively, "O&E personnel"), who are trained in engaging in appropriate clinical assessments of individuals with disabilities when necessary to determine an appropriate placement.  Orange may elect to use City employees as long as they are properly trained.

4.1.2  In implementation of Section 4.1.1, prior to enforcement of the Anti-Camping Ordinance against any homeless individual, Orange will first work with O&E personnel to locate and offer an available shelter placement for the individual in question in the North SPA that constitutes a reasonable accommodation of the individual's disabilities, if any.  If no such shelter is available in the North SPA but an alternative appropriate and immediately available placement within the County of Orange is identified by O&E, Orange may place the individual at that shelter with the consent of the individual.  Orange may consider this offer an "available bed" for purposes of enforcement so long as the placement does not impede the individual's ability to access their doctors, outpatient programs in which they may be enrolled, work and other support systems in or near Orange. If the individual accepts the offered placement outside of the North SPA, Orange will provide transportation to the placement and will assist the individual in finding any necessary transportation to and from scheduled appointments or work required as a result of the placement outside of the North SPA, including but not limited to bus passes. If the individual declines the offered placement, Orange may proceed with enforcement of the Anti-Camping Ordinance

6

1   in its discretion. Notwithstanding the preceding sentence, for any individual who

2   declines the offered placement, Orange will first give the person a warning and an

3   opportunity to immediately leave the location before engaging in further

4   enforcement efforts, such as citation and/or arrest.   If the alleged violation arises

5   from an individual's presence in a park outside of the established operational

6   hours, Orange Municipal Code section 12.48.090 (the "Park-Hours Provision"),

7   and if there is no appropriate and immediately available placement for that person,

8   Orange will advise the individual that they must leave the park.   Orange will

9   advise the individual that they may move to any public area outside the park per

10  *Martin v. City of Boise*. If the person does not leave the park after receiving a

11  warning, Orange may issue a citation to the individual. However, if the individual

12  contests whether the offered and immediately available bed is a reasonable

13  accommodation, absent exigent circumstances, Orange shall not execute a

14  custodial arrest but will, instead, issue a citation and advise the individual of the

15  available Dispute Resolution process. Orange shall advise of the availability of the

16  Dispute Resolution Process at each stage of engagement once an individual

17  declines an offered placement.

18      **4.1.3**  The requirements of this Section 4.1 shall only apply until the

19  earlier of (a) the date on which the case of *Martin v. City of Boise*, Case No. 15-

20  35845, 2018 WL 4201159 (9th Cir. Sept. 4, 2018) ("*Martin v. Boise*") is no longer

21  applicable law within the jurisdiction of the Ninth Circuit, and (b) the date on

22  which the Court finds that there are sufficient appropriate and immediately

23  available placements for the unsheltered population in the City of Orange.

24      **4.2**   Orange shall not cite or arrest any homeless individual for

25  violation of the law based on an alleged obstruction of public property unless that

26  individual, either individually or in conjunction with his or her property, actually

27  obstructs free passage of any person or vehicle on any public highway, alley,

28

1  sidewalk, or crosswalk and declines to move the object(s) creating obstruction
2  from the public right of way after being requested to do so.

3      **4.3**    Nothing in this Agreement constitutes an admission by Orange
4  that its current policies and procedures for enforcement of the Anti-Camping
5  Provision and/or Anti-Loitering Provision are either (a) different than those set
6  forth above, or (b) in any way legally inadequate, or a concession by Plaintiffs that
7  it is legally adequate.

8      **4.4**    Nothing in this Agreement constitutes a promise,
9  representation, or warranty, on the part of Orange, that any number of beds will be
10  available to any particular person(s) at any time. The lack of availability of an
11  appropriate and immediately accessible bed for any person or persons at any time,
12  including any of the Plaintiffs, may impact the ability of Orange to find a purported
13  violation of law, including but not limited to Orange Municipal Code sections
14  12.66.030 and 12.48.045 (the "Anti-Camping Provision"). However, the failure to
15  meet the number of beds set out in this agreement, and a failure of a shelter to meet
16  reasonable accommodation needs, may be raised with this court under the Dispute-
17  Resolution procedure set forth below.

18      **5.**    **Disability Laws.**

19      **5.1**    Any agreement entered into by Orange, whether directly or by
20  an MOU with the North SPA cities and/or County, with a privately operated
21  Shelter(s) or a private contractor to operate a public shelter, will require that the
22  facility meets the requirements of the Americans with Disabilities Act, 42 U.S.C.
23  §§ 12101 *et seq.* (the "ADA"), its associated regulations, or any other state or
24  federal laws relating to disabilities, including but not limited to the Fair Housing
25  Act 42 U.S.C. §§ 3601 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*,
26  and/or Government Code section 11135 (collectively with the ADA, the Disability
27  and Anti-discrimination Laws").

8

5.2    The Parties hereby agree that any and all disputes concerning the adequacy of any placement offered to a homeless individual pursuant to Section 4.1 of this Agreement, including but not limited to whether the offered placement sufficiently accommodates the individual's disabilities, will be resolved via the "Dispute-Resolution Process," as defined below.

6.    **Dispute-Resolution Process.** The Court shall retain jurisdiction over the Action for a period of three years from the date of this Agreement (hereinafter, the "Termination Date"), for the purposes of (a) overseeing the implementation of this Agreement, and (b) implementing and presiding over the a dispute-resolution process (the "Dispute-Resolution Process"), to be established by the Court and to which Plaintiffs and Orange, hereby consent and agree:

6.1    Except as expressly identified in this Agreement, or as may be modified by the Court or the Parties, with the Court's consent, during the three-year period of the Court's continued jurisdiction, this Dispute-Resolution Process shall apply to adjudicate any and all disputes between, on the one hand, Orange, and, on the other hand, any homeless individual or individuals (including but not limited to any individual Plaintiffs), relating to (a) the implementation of this Agreement, and/or (b) Orange's enforcement of the above-identified Orange Municipal Code sections, or analogous state penal code provisions applied on the basis of an individual's status as homeless, including but not limited to disputes regarding the availability or adequacy of any shelter or shelter services offered to the individual pursuant to Section 4.1 of this Agreement (collectively, the "Disputes," and individually, a "Dispute").

6.2    In the event of any Dispute arising during the pendency of the Court's retained jurisdictions, the parties to that Dispute will first attempt to meet and confer informally with the other side in an effort to resolve it. In the case of a Dispute raised by one or more homeless individuals (including but not limited to

9

any individual Plaintiffs) against Orange, or a Dispute raised by Orange against one or more homeless individuals who are known to be represented by counsel of record in the Action, this attempt will at least involve (a) a written communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy, and providing any available evidence in relation thereto, and (b) a discussion, either in person or via telephone, seeking to resolve the Dispute.  Orange employees, as well as the employees of the Shelter(s), shall give any affected individual notice of the Court's Dispute-Resolution Process and the contact information for Plaintiffs' counsel, together with a statement that Plaintiffs' counsel may be available to assist them.

**6.3**    If the parties to a Dispute are unable to resolve it within two (2) court days after it is first raised informally by one of the parties to the Dispute, any party to the Dispute may request a hearing with the Court under the standards and processes to be set by the Court, and the Court will have jurisdiction to resolve that Dispute.  If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by the Court.

**6.4**    Except as provided for in Section 4, hereinabove, nothing in this agreement shall impact Orange's right to enforce any law against a person believed to be homeless, including issuing citations and arresting the person for an alleged violation of the law.

**6.5**    In resolving any Dispute, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence, and other due process. The Court shall not be empowered to award damages or any other monetary relief to any party as a result of any Dispute submitted to this process.

**8.**    **Release and Covenant Not to Sue.**

10

8.1     In consideration for the terms of this Agreement, Plaintiffs, and each of them, on their own behalf (the "Releasing Parties"), hereby release and forever discharge Orange, as well as its present and former employees, agents, managers, officers, directors, council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees, costs, and liabilities, arising from and relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Parties, and/or any of them, have, or ever may claim to have, as against the Released Parties, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, (c) the availability of homeless shelters, shelter beds, and/or other homeless accommodations in Orange County, (d) Orange's alleged obligation to provide and/or fund such accommodations, and/or (e) Orange's alleged inability to enforce any of the Ordinances identified herein (including but not limited to any law that the Releasing Parties claim criminalizes a person's homeless status), against any person because of his or her homeless status (hereinafter, the "Released Claims"), conditional upon the provision of section 4.1.3, hereinabove.

8.3     The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Parties and within the scope of the Released Claims based solely and only on the events giving rise to this Action. To effectuate the intent of the Parties, the Releasing Parties expressly agree to waive and relinquish all rights and benefits they may have under Section 1542

11

of the Civil Code of the State of California, which reads as follows:

> § 1542. [General release; extent] A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

8.4     The Releasing Parties, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, right of action, or any right, of any kind whatsoever, within the scope of the Released Claims, and that no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Claims.

9.     **Dismissal of the Action.** At the conclusion of the Court's retained jurisdiction, Plaintiffs will take all necessary actions and file all necessary documents to effectuate dismissal of the Action, with prejudice.

10.     **Settlement Payments and Attorneys' Fees.** Within thirty (30) days after the full execution of this Agreement by the Parties, Orange shall make the following payments to the following persons or entities:

a.     $40,000 made payable to the Elder Law and Disability Rights Center in full satisfaction of any claims for attorneys' fees and/or costs of Plaintiffs' counsel in connection with the Action;

b.     $7,500 to a Special Needs Trust, in satisfaction of any claims for damages on behalf of Cameron Ralston; and

Except as set forth above, all Parties, and all Releasing Parties, shall bear their own costs, expenses, and attorneys' fees in relation to or arising out of (a) the Action, (b) the resolution, negotiation, and settlement of the Action, including the negotiation of this Agreement, and (c) the implementation of this Agreement, including the resolution of any Dispute.

11.   **Non-Admission of Liability.** By entering into this Agreement, Orange admits no liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein constitutes an admission by Orange as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made against it in the Action, or that the claims alleged in the Action are suitable for class-wide treatment (which Orange expressly denies). Orange has entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, that the plaintiffs have agreed to move for dismissal of the class allegations, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

12.   **Knowing and Voluntary.** This Agreement is an important legal document and in all respects has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, prior to signing this Agreement, (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, prior to signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

13.   **Entire Agreement.** This Agreement constitutes the entire agreement

13

between the Releasing Parties and Orange regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Releasing Parties and Orange relating to the subject matter hereof. The Releasing Parties and Orange each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement shall be made by written instrument executed by each party hereto in order to become effective.

14.   **Warranty of Authority.** Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

15.   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement.

IN WITNESS WHEREOF, this Settlement Agreement is hereby entered into and executed by the parties hereto on the dates set forth below.

Dated: _____, 2018         ORANGE COUNTY CATHOLIC
                                      WORKER

14

1

2

3   Dated: _11/6_____, 2018

4

5

6   Dated: _____, 2018

7

8

9   Dated: _____, 2018

10

11

12

13   Dated: _11/6_____, 2018

14

15

16

17   Dated: _11-6_____, 2018

18

19

20   Dated: _10-29-___, 2018

21

22

23

24

25   Dated: _____, 2018

26

27

28

By: _____
xxxxxxxxxxxxxxxxxxxx
LISA BELL, ON HER OWN BEHALF

MELISSA FIELDS, ON HER OWN
BEHALF

GLORIA SHOEMAKE, ON HER OWN
BEHALF

RICHIE THOMAS, ON HIS OWN
BEHALF

SHAWN CARROLL, ON HIS OWN
BEHALF

LARRY FORD, ON HIS OWN BEHALF

CAMERON RALSTON, ON HIS OWN
BEHALF

15

1

2

3 Dated: _____, 2018

4

5

6 Dated: 11·5 _____, 2018

7

8

9 Dated: _____, 2018

10

11

12

13 Dated: _____, 2018

14

15

16

17 Dated: _____, 2018

18

19

20 Dated: 10-29- _____, 2018

21

22

23

24

25 Dated: _____, 2018

26

27

28

By: _____
xxxxxxxxxxxxxxxxxxxx

LISA BELL, ON HER OWN BEHALF

_____

MELISSA FIELDS, ON HER OWN
BEHALF

_____

GLORIA SHOEMAKE, ON HER OWN
BEHALF

_____

RICHIE THOMAS, ON HIS OWN
BEHALF

_____

SHAWN CARROLL, ON HIS OWN
BEHALF

_____

LARRY FORD, ON HIS OWN BEHALF

_____

CAMERON RALSTON, ON HIS OWN
BEHALF

_____

15

1

2

3    Dated: _____, 2018

By: _____

xxxxxxxxxxxxxxxxxxxx

LISA BELL, ON HER OWN BEHALF

4

5

6    Dated: _____, 2018

7

MELISSA FIELDS, ON HER OWN
BEHALF

8

9

10   Dated: _____, 2018

11

12

GLORIA SHOEMAKE, ON HER OWN
BEHALF

13   Dated: _____, 2018

14

15

RICHIE THOMAS, ON HIS OWN
BEHALF

16

17   Dated: _____, 2018

18

19

SHAWN CARROLL, ON HIS OWN
BEHALF

20   Dated: 10-29- , 2018

21

22

23

LARRY FORD, ON HIS OWN BEHALF

24

25   Dated: _____, 2018

26

27

28

CAMERON RALSTON, ON HIS OWN
BEHALF

15

By: _____
xxxxxxxxxxxxxxxxxxxx

Dated: _____, 2018

LISA BELL, ON HER OWN BEHALF

_____

Dated: _____, 2018

MELISSA FIELDS, ON HER OWN
BEHALF

_____

Dated: _____, 2018

GLORIA SHOEMAKE, ON HER OWN
BEHALF

_____

Dated: _____, 2018

RICHIE THOMAS, ON HIS OWN
BEHALF

_____

Dated: _____, 2018

SHAWN CARROLL, ON HIS OWN
BEHALF

_____

Dated: 10-29-, 2018

LARRY FORD, ON HIS OWN BEHALF

Dated: 11/05/2018, 2018

CAMERON RALSTON, ON HIS OWN
BEHALF

15

Dated: 11 - 8 _____, 2018          KATHY SCHULER, ON HER OWN
                                     BEHALF

Dated: _____, 2018          CITY OF ORANGE

                                     By: _____

                                          Teresa E. Smith, Mayor

APPROVED AS TO FORM:

Dated: Nov. 13 2018 _____, 2018    ELDER LAW AND DISABILITY
                                     RIGHTS CENTER

                                     By: _____
                                          Brooke Weitzman
                                          Attorneys for Plaintiffs

Dated: Nov. 13 2018 _____, 2018    LAW OFFICE OF CAROL A. SOBEL

                                     By: _____
                                          Carol A. Sobel
                                          Attorneys for Plaintiffs

16