1
2
3
4
5
6
7
8

F I L E D

CLERK, U.S. DISTRICT COURT

8/6/19

CENTRAL DISTRICT OF CALIFORNIA
BY:   D. Lewman   DEPUTY

9
10
11
12
13

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

14  ORANGE COUNTY CATHOLIC
    WORKER, et al.,

15          Plaintiffs,

16      v.

17  ORANGE COUNTY, the CITY OF
    ANAHEIM, the CITY OF COSTA
18  MESA, and the CITY OF ORANGE,

19          Defendants.

20
21
22
23

Case No. 8:18-cv-00155 DOC (JDE)

**SETTLEMENT AGREEMENT BY
AND BETWEEN THE CITY OF
BREA, CITY OF BUENA PARK,
CITY OF CYPRESS, CITY OF
FULLERTON, CITY OF LA HABRA,
CITY OF LA PALMA, CITY OF LOS
ALAMITOS, CITY OF PLACENTIA,
CITY OF STANTON, CITY OF
VILLA PARK, AND CITY OF
YORBA LINDA, AND ALL
PLAINTIFFS, ON THEIR
INDIVIDUAL BEHALF**

24
25          **SETTLEMENT AGREEMENT**

26      This Settlement Agreement ("Agreement") is entered into by and between,

27  on the one hand, the City of Brea, City of Buena Park, City of Cypress, City of

28  Fullerton, City of La Habra, City of La Palma, City of Los Alamitos, City of

1

Placentia, City of Stanton, City of Villa Park, and City of Yorba Linda (each individually a "NORTH SPA CITY", and collectively the "NORTH SPA CITIES"), and, on the other hand, Orange County Catholic Worker ("OCCW") (an unincorporated association, acting by and through its designated representatives), and the following individuals, each of whom enters into this Agreement on his or her individual behalf, as defined below: Lisa Bell, Melissa Fields, Gloria Shoemake, Richie Thomas, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Schuler (collectively, the "Individual Plaintiffs", and together with OCCW, "Plaintiffs"). The parties to this Agreement are referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

**A.    WHEREAS**, on January 29, 2018, OCCW and certain of the Individual Plaintiffs (Lisa Bell, Melissa Fields, Gloria Shoemake, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Schuler) filed this Action, entitled *Orange County Catholic Worker et al. v. Orange County et al.*, California Central District Case No. 8:18-cv-00155 (the "Action"), against the County of Orange, the City of Anaheim ("Anaheim"), the City of Costa Mesa, and the City of Orange ("Orange") (collectively, "Defendants").

**B.    WHEREAS**, on July 26, 2018, all Plaintiffs filed a "First Amended Complaint" ("FAC") in the Action, against all Defendants. Among other changes from the original complaint, the FAC added Richie Thomas as a named Plaintiff and pleaded a potential class action against the County of Orange ("County"). At the time of execution of this Agreement, the FAC is the operative complaint in the Action.

**C.    WHEREAS**, the FAC alleges that OCCW is an unincorporated association dedicated to the service and care of the poor in the County, and that the Individual Plaintiffs are homeless individuals residing in the County. The FAC

2

alleges, *inter alia*, that Defendants, and each of them, have violated the Individual Plaintiffs' rights by enforcing various trespass, loitering, and/or anti-camping ordinances or laws against them at times when, according to Plaintiffs, there were no immediately accessible and appropriate beds available to them in the County. Defendants dispute the factual allegations and legal contentions made by Plaintiffs in the FAC.

**D.   WHEREAS**, the FAC alleges the following claims for relief against all Defendants: (1) violation of the Eighth and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983), and Article VII, section 17 of the California Constitution for alleged "cruel and unusual punishment" (First Cause of Action); (2) violation of the First and Fourth Amendments to the U.S. Constitution (42 U.S.C. § 1983) (Second Cause of Action); (3) violation of the right to due process of law under the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983) (Third Cause of Action); (4) violation of California Civil Code section 52.1 (Seventh Cause of Action); (5) violation of California Government Code section 815.6 (Eighth Cause of Action); and (6) violation of California Government Code section 11135 (Ninth Cause of Action). Defendants dispute each of these claims for relief in its entirety, and disputes Plaintiffs' underlying legal contentions and theories.

**E.   WHEREAS**, Plaintiffs have informed the Court that they intend to file a Second Amended Complaint, naming the NORTH SPA CITIES as defendants in the Action.

**F.   WHEREAS**, without admitting any wrongdoing, liability, or legal violations on the part of the NORTH SPA CITIES, without conceding the validity of any of Plaintiffs' legal theories or claims, and for the sole purpose of preemptively, economically, and efficiently resolving the Action (and any claims relating thereto) as to the NORTH SPA CITIES, the Parties now desire to enter

3

into this Agreement on the terms set forth herein.

**G.**   **WHEREAS,** Anaheim is a named defendant in the Action and has entered into a separate Settlement Agreement with Plaintiffs, a copy of which is attached hereto as Exhibit "A" ("Anaheim Agreement").

**H.**   **WHEREAS,** Orange is a named defendant in the Action and has entered into a separate Settlement Agreement with Plaintiffs, a copy of which is attached hereto as Exhibit "B" ("Orange Agreement").

## TERMS

**NOW, THEREFORE,** for full and valuable consideration, the sufficiency of which is hereby acknowledged, and based upon the foregoing Recitals, and the terms, conditions, covenants, and agreements herein, the Parties agree as follows:

1.   **Order re Continuing Jurisdiction, and Effective Date.** Following the full execution of this Agreement by all Parties, the Parties shall file with the Court in the Action the "[Proposed] Order re Settlement and Continuing Jurisdiction," attached hereto as <u>Exhibit C</u> (the "Order"). The obligations of the Parties in the remaining sections of this Agreement, and the releases contained herein, shall become effective and operative on the date on which the Order is signed and entered by the Court ("Effective Date"), and shall be contingent upon the Court's signing and entry of the Order.

2.   **Incorporation of Recitals.** The representations in the above section of this Agreement, entitled "RECITALS," are hereby incorporated into and made a material part of the terms and representations of this Agreement.

3.   **Construction and Operation of New Centers.**

    3.1   The area designated by the County as the North Service Planning Area ("North SPA") includes the territory of the NORTH SPA CITIES, the City of Orange, and the City of Anaheim.

    3.2   The NORTH SPA CITIES, and each of them, commit to the

following with respect to the funding and/or expedited review of one or more new facilities to provide placements for unsheltered homeless individuals located within the North SPA:

3.2.1  The NORTH SPA CITIES shall fund, obtain funding from the County for, and/or coordinate third-party funding for, the construction and initial operation of two or more feasible, temporary, low barrier homeless shelters at locations within the boundaries of the North SPA (individually a "New Center", and collectively the "New Centers"), with an aggregate capacity of at least 200 beds. The NORTH SPA CITIES shall have complete discretion in determining which, if any, New Center projects to fund, and which New Center projects are suitably feasible, subject to any limitations set forth herein.  The NORTH SPA CITIES' funding commitment for the New Centers is for four years only, commencing on the Effective Date.

3.2.2  The NORTH SPA CITIES agree to expedite any necessary processing, review, approvals, and/or inspections of any New Center project selected by the NORTH SPA CITIES for funding pursuant to this Agreement, to the extent reasonably practicable and permitted by law.

3.3     The NORTH SPA CITIES, in conjunction with the County, currently plan to fund two New Centers in the North SPA, with the Placentia facility having a capacity of 100 beds, and the Buena Park facility having an initial capacity of 100 beds and the potential to expand to 150 beds, if necessary. As of the Effective Date, and subject to the conditions and limitations set forth herein, the NORTH SPA CITIES anticipate the New Centers to be located and have the capacity as follows:

| New Centers | |
|---|---|
| City | New Centers & Capacity |
| Buena Park | 100 |
| Placentia | 100 |

| Total | 200 |
|-------|-----|

3.4     The NORTH SPA CITIES shall use their best efforts to ensure construction of the New Centers by the earliest practicable date, with a goal of making best efforts to complete construction and commence operations for Placentia on or before December 31, 2019 and for Buena Park on or before February 28, 2020.

3.5     The NORTH SPA CITIES shall require that the New Centers be operated by referral only and be subject to the substantially similar admission requirements as the facility known as "Bridges at Kraemer Place," located in Anaheim, as such admission requirements exist as of the Effective Date. However, referrals to the New Centers will be available to all Police enforcement organizations operating in the North SPA CITIES and including, but not limited to, the following organizations: [Please list out what organizations want to have referral authority]

3.6     The NORTH SPA CITIES shall require that the New Centers be operated on a non-religious basis and in full compliance with all applicable federal and state non-discrimination laws, including but not limited to California Government Code section 11135.

3.7     **Sharing of North SPA Capacity.**  Orange and Anaheim have previously entered into individual settlement agreements with Plaintiffs concerning the Action. As relevant here, via the Orange Agreement, Orange committed, in conjunction with the NORTH SPA CITIES and the County, to fund, or obtain third-party funding for, the construction and initial operation of two or more feasible, temporary low-barrier homeless shelters within the North SPA, with a total capacity of at least 200 beds, and a goal of making best efforts to complete construction and commence operations for Placentia on or before December 31, 2019 and for Buena Park on or before February 28, 2020.

6

**3.8**    The NORTH SPA CITIES commit to coordinate and implement the sharing of bed capacity provided by (i) certain shelter facilities that are currently open and operating within the North SPA ("Existing Centers"), and (ii) the New Centers.

**3.9**    To the extent they are required to do so by California Government Code section 65583 et. seq., or any other applicable law, the NORTH SPA CITIES agree, and currently intend, to execute a Memorandum of Understanding ("MOU") with the County and the participating entities, setting forth the financial responsibilities of each participating entity for the development and ongoing operation of the New Centers, and the allocation of beds provided by the New Centers, the Existing Centers, (cumulatively "Navigation Centers") to each participating entity according to its financial contribution and need.

**3.10**    Although the Navigation Centers are not the exclusive means by which the NORTH SPA CITIES may satisfy their obligation to meet the needs of homeless individuals in the North SPA, Plaintiffs acknowledge and agree that the creation of the New Centers, or any portion thereof initially totaling 200 beds, plus the shared access to existing Navigation Centers located in the North SPA  as described herein, shall satisfy the NORTH SPA CITIES' obligations under Section 3 of this Agreement and the Court's requirement of available beds for at least 60 percent of the unsheltered individuals in the North SPA.

**4.    Enforcement of Anti-Nuisance Ordinances.**

**4.1**    The NORTH SPA CITIES shall establish the following policies and procedures relating to the enforcement of their trespass, loitering, anti-camping, and park closure ordinances (individually "Anti-Nuisance Ordinance", and collectively the "Anti-Nuisance Ordinances"), or any analogous provision of local or State law, applied against homeless individuals within their respective jurisdiction:

**4.1.1**   Absent exigent circumstances, any enforcement of the Anti-Nuisance Ordinances against a homeless individual (including any of the named Plaintiffs) will first be preceded by contacts with Outreach and Engagement personnel to determine appropriate shelter placement for the individual in question, per the procedures outlined herein.  For purposes of this Agreement, the term "Outreach and Engagement personnel" shall include representatives from the County's Health Care Agency, City Net, Mercy House, or any other organization a NORTH SPA CITY contracts with for outreach and engagement services, and who are trained in engaging in clinical assessments of individuals with disabilities as necessary to determine an appropriate placement with a reasonable accommodation of the individual's disability. O&E personnel may include City employees, homeless liaison and police officers, and, for NORTH SPA CITIES that contract with the Orange County Sheriff's Department ("OCSD"), OCSD staff, provided the foregoing have been properly trained for interactions with the homeless population (collectively, "O&E personnel").

**4.1.2** In implementation of Section 4.1.1 of this Agreement, prior to enforcement of an Anti-Nuisance Ordinance against any homeless individual, the NORTH SPA CITY will first work with O&E personnel to offer an appropriate immediately available Navigation Center placement for the individual in question in the North SPA.  If no such Navigation Center is available in the North SPA, but an alternative appropriate and immediately available placement within the County is identified by O&E personnel, then the NORTH SPA CITY may offer the individual placement at that facility with the consent of the individual. Such placements outside of the North SPA include, but are not limited to, countywide Behavioral Health and Healthcare placements. The NORTH SPA CITY may consider this offer an "available bed" for purposes of enforcement so long as the placement does not unreasonably impede the individual's ability to access medical

appointments, outpatient programs in which the individual may be enrolled, work and other support systems in or near the North SPA. If the individual accepts the offered placement outside of the North SPA, then O&E personnel will provide transportation to the placement and will assist the individual in finding necessary transportation to and from scheduled appointments or work, including but not limited to bus passes, when such transportation is necessitated by the placement outside of the North SPA.

**4.1.3**  If the individual declines the offered placement, the NORTH SPA CITY may proceed with enforcement of its Anti-Nuisance Ordinances in its discretion. Notwithstanding the preceding sentence, for any individual who declines the offered placement, the NORTH SPA CITY will first give the person a warning and an opportunity to immediately leave the location before engaging in citation and/or arrest. Provided the individual relocates upon warning to another location, he or she will not be cited or arrested for that violation of the Anti-Nuisance Ordinance.  If the individual fails to relocate to another location as directed, then the individual may be issued a citation or, subject to the provisions of Section 6.3 and 6.4 of this Agreement, placed under custodial arrest for the violation. The NORTH SPA CITY will advise the individual of the availability of the Dispute-Resolution Process described in Section 6 of this Agreement and will provide a contact number for Plaintiffs' attorneys in the Action.  If the alleged violation arises from an individual's presence in a park outside of the established operational hours of the park in the NORTH SPA CITY's municipal code, or other applicable municipal law or regulations, and if there is no appropriate and immediately available placement for that person, the NORTH SPA CITY will advise the individual of a location he or she may move to and avoid citation or arrest for a violation of the Anti-Nuisance Ordinance until an appropriate and immediately available bed is made available to the individual.

9

**4.1.4**  The requirements of this Section 4.1 shall only apply until the earlier of (a) the date on which the case of *Martin v. City of Boise*, 902 F.3d 1031 (9th Cir. 2018) is no longer applicable law within the jurisdiction of the Ninth Circuit, or (b) the date on which the Court finds that there are sufficient appropriate and immediately available placements for the unsheltered population in the North SPA.

**4.2**     The NORTH SPA CITIES shall not cite or arrest any homeless individual for violation of the law based on an alleged obstruction of public property unless that individual, either individually or in conjunction with his or her property, actually interferes with the intended use of the public property and declines to cease the interference, and declines to move the object(s) creating obstruction from the public right of way after being requested to do so.

**4.3**     Nothing in this Agreement constitutes an admission by the NORTH SPA CITIES that their current policies and procedures for enforcement of their Anti-Nuisance Ordinances and/or other laws based on an individual's status as homeless are either (a) different than those set forth above, or (b) in any way legally inadequate, or a concession by Plaintiffs that it is legally adequate.

**4.4**     Nothing in this Agreement constitutes a promise, representation, or warranty, on the part of the NORTH SPA CITIES that any number of beds will be available to any particular person(s) at any time. The lack of availability of an appropriate and immediately accessible bed for any person or persons at any time, including any of the Plaintiffs, may impact the ability of the NORTH SPA CITIES to punish a purported violation of law for camping in a public place, being in a park during non-operational hours, or loitering, based on an individual's status as homeless.  However, the failure to meet the minimum number of beds set out in this Agreement for the first four years, and a failure of the NORTH SPA CITIES to meet reasonable accommodation needs, may be raised

with this Court under the Dispute-Resolution Process set forth below.

      **4.5**    Nothing in this Agreement limits Plaintiffs or their counsel from raising facial challenges to the NORTH SPA CITIES' Anti-Nuisance Ordinances on constitutional grounds. The NORTH SPA CITIES intend to make their best efforts to prepare and adopt a model anti-camping and anti-loitering ordinances.

      **5.**    <u>**Anti-Discrimination Laws.**</u>

      **5.1**    Any agreement entered into by the NORTH SPA CITIES, whether directly or by an MOU with other cities and/or the County, with a privately operated Navigation Center or a private contractor to operate a public Navigation Center, will require the facility or the collective facilities subject to the agreement(s) to meet all applicable anti-discrimination laws, including but not limited to the requirements of the Americans with Disabilities Act, 42 U.S.C. section 12101 *et seq.* (the "ADA"), its associated regulations, or any other state or federal laws relating to disabilities, including but not limited to the Fair Housing Act 42 U.S.C. section 3601 *et seq.*, the Rehabilitation Act, 29 U.S.C. section 701 *et seq.*, and/or Government Code section 11135.

      **5.2**    The Parties hereby agree that any and all disputes concerning the adequacy of any placement offered to a homeless individual pursuant to Section 4.1 of this Agreement, including but not limited to whether the offered placement sufficiently accommodates the individual's disabilities, will be resolved via the "Dispute-Resolution Process" set forth below. As used in this Agreement, disability is defined as 42 U.S. Code section 12102.

      **6.**    <u>**Dispute-Resolution Process.**</u> The Court shall retain jurisdiction over the Action until the date that is four years from the Effective Date ("Termination Date"), for the purposes of (a) overseeing the implementation of this Agreement, and (b) implementing and presiding over the dispute-resolution process (the

"Dispute-Resolution Process"), to be established by the Court and to which Plaintiffs and the NORTH SPA CITIES, hereby consent and agree:

   **6.1**   Except as expressly identified in this Agreement, or as may be modified by the Court or the Parties, with the Court's consent, during the four-year period of the Court's continuing jurisdiction, this Dispute-Resolution Process shall apply to adjudicate any and all disputes arising out of the appropriate housing of homeless individuals, including but not limited to disputes regarding the availability or adequacy of any Navigation Center or Navigation Center services offered to the individual pursuant to Section 4.1 of this Agreement and expressly excluding violations of law relating to conduct not arising from the individual's homeless status (examples include but are not limited to possession of illegal substances or weapons, acts of violence, public intoxication, etc.) (collectively, the "Disputes," and individually, a "Dispute").

   **6.2**   In the event of any Dispute, as defined above, arising during the pendency of the Court's continuing jurisdiction, the parties to that Dispute will first attempt to meet and confer informally with the other side in an effort to resolve it. In the case of a Dispute raised by one or more homeless individuals (including but not limited to any of the Individual Plaintiffs) against a NORTH SPA CITY, or a Dispute raised by a NORTH SPA CITY against one or more homeless individuals who are known to be represented by counsel of record in the Action, this attempt will at least involve (a) a communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy, and providing any available evidence in relation thereto, and (b) a discussion, either in person or via telephone, seeking to resolve the Dispute. In the event a complaint is received by a NORTH SPA CITY or a Navigation Center from a homeless individual, the NORTH SPA CITY or the Navigation Center shall give the complaining individual notice of the Court's

Dispute-Resolution Process and the contact information for Plaintiffs' counsel,
together with a statement that Plaintiffs' counsel may be available to assist them.

   **6.3** If the parties to a Dispute, as defined above, are unable to
resolve it within two court days after it is first raised informally by one of the
parties to the Dispute, any party to the Dispute may request a hearing with the
Court under the standards and processes to be set by the Court, and the Court will
have jurisdiction to resolve that Dispute. If the Dispute involves an emergency
situation that presents a threat to the immediate health and safety of an individual,
the parties may seek expedited review by the Court.

   **6.4** The fact that a person has initiated the Dispute-Resolution
Process shall not impact a NORTH SPA CITY's right to enforce any law against
that person, including issuing citations to the person, concurrently with the
Dispute-Resolution Process. However, if the individual has initiated the Dispute-
Resolution Process, the NORTH SPA CITY agrees that no custodial arrest will
subsequently be made for a violation of the Anti-Nuisance Ordinances and
analogous laws arising from an individual's status as homeless prior to the
exhaustion of the Dispute-Resolution Process with the Court pursuant to Section
6.3 of this Agreement. Once the Dispute-Resolution Process has concluded
regarding an issue, the NORTH SPA CITY will not be required to await
exhaustion of the Dispute-Resolution Process regarding the same issue regarding
that individual prior to a custodial arrest, where the individual does not comply
with a warning or leave once a citation has been issued, provided the NORTH SPA
CITY complies with the Court's determination of that same issue. For purposes of
this Section, "same issue" refers to an issue determined by the Court in a Dispute-
Resolution Process where the individual's objections, including any claim of
alleged disability, physical limitations and the offered bed are substantially similar
for purposes of determining whether the individual's disability or other objection is

being reasonably accommodated. In circumstances involving citation for violation of an Anti-Nuisance Ordinance, the Court may issue an order directing the NORTH SPA CITY to stay the filing of formal charges against the homeless individual until the Dispute-Resolution Process has been completed for that Dispute. The NORTH SPA CITY agrees not to contest such a request for a brief stay of the filing of charges.

**6.5**   In resolving any Dispute, as defined above, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence, and other due process. The Court shall not be empowered to award damages or any other monetary relief, including but not limited to attorney's fees, to any party as a result of any Dispute submitted to this process. Nothing in this Agreement limits the ability of any Plaintiff to seek damages in other proceedings not subject to this Agreement.

**7.**   <u>Release and Covenant Not to Sue.</u>

**7.1**   In consideration for the terms of this Agreement, Plaintiffs, and each of them, on their own behalf, and any other individual claiming rights under this Agreement, including but not limited to those employing the Dispute-Resolution Process (the "Releasing Parties"), hereby release and forever discharge the NORTH SPA CITIES, as well as their present and former employees, agents, managers, officers, directors, council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees, costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Parties, and/or any of them, have, or ever may claim to have, as against the Released Parties, or any of them, whether directly or indirectly, relating to or

arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, (c) the availability of Navigation Center, Navigation Center beds, and/or other homeless accommodations in the County, (d) the NORTH SPA CITIES' alleged obligation to provide and/or fund such accommodations, and/or (e) the NORTH SPA CITIES' alleged inability to enforce any of the Anti-Nuisance Ordinances identified herein (including but not limited to any law that the Releasing Parties claim criminalizes a person's homeless status), against any person because of his or her homeless status (hereinafter, the "Released Claims").

       **7.2**    The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Parties and within the scope of the Released Claims based solely and only on the events giving rise to this Action. To effectuate the intent of the Parties, the Releasing Parties expressly agree to waive and relinquish all rights and benefits they may have under California Civil Code Section 1542, which reads as follows:

> § 1542. [General release; extent] A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

       **7.3**    The Releasing Parties, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, right of action, or any right, of any kind whatsoever, within the scope of the Released Claims, and that no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Claims.

       **8.**     **Dismissal of the Action.** At the conclusion of the Court's continuing

jurisdiction, Plaintiffs will take all necessary actions and file all necessary documents to effectuate dismissal of the Action, with prejudice.

**9.** **Settlement Payments and Attorneys' Fees.**

All Parties, and all Releasing Parties, shall bear their own costs, expenses, and attorneys' fees in relation to or arising out of (a) the Action, (b) the resolution, negotiation, and settlement of the Action, including the negotiation of this Agreement, and (c) the implementation of this Agreement, including the resolution of any Dispute.

**10.** **Non-Admission of Liability.** By entering into this Agreement, the NORTH SPA CITIES admit no liability, and explicitly deny any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein constitutes an admission by the NORTH SPA CITIES as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made in the Action. The NORTH SPA CITIES have entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

**11.** **Knowing and Voluntary.** This Agreement is an important legal document and, in all respects, has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, prior to signing this Agreement, (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c)

they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, prior to signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

12.   **Entire Agreement.**   This Agreement constitutes the entire agreement between Plaintiffs and the NORTH SPA CITIES regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between Plaintiffs and the NORTH SPA CITIES relating to the subject matter hereof. Plaintiffs and the NORTH SPA CITIES each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement shall be made by written instrument executed by each Party in order to become effective.

13.   **Warranty of Authority.**   Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

14.   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall

constitute one agreement.

　　　　IN WITNESS WHEREOF, this Settlement Agreement is hereby entered into and executed by the parties hereto on the dates set forth below.

Dated: 8/6/19　　　　, 2019　　　　ORANGE COUNTY CATHOLIC WORKER

By: _____

APPROVED AS TO FORM:

Dated: _8/6/19_____, 2019　　　　ELDER LAW AND DISABILITY RIGHTS CENTER

By: _____
Brooke Weitzman
Attorneys for Plaintiffs

Dated: _8/6/19_____, 2019　　　　LAW OFFICE OF CAROL A. SOBEL

By: _____
Carol A. Sobel
Attorneys for Plaintiffs

[SIGNATURES FOR EACH CITY OF THE NORTH SPA TO FOLLOW]

CITY OF _Brea_

By: _[signature]_

_William Gallardo_
Name

_City Manager_
Title

_5-8-2019_
Date

ATTEST:

_[signature]_

City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _William Gallardo_

City of: _Brea_

Street Address: _1 Civic Center Circle_

_Brea_ , CA _92821_

Phone: _(714) 990-7711_

Fax: _(714) 990-2258_

APPROVED AS TO FORM:

_[signature]_

City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF  Buena Park

By: _____

James B. Vanderpool
Name

City Manager
Title

Date  5|14|19

ATTEST:

_____ , me
City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: James B. Vanderpool

City of: Buena Park

Street Address: 6650 Beach Blvd

Buena Park ____, CA 90622

Phone: (714) 562-3555

Fax: (714) 562-3559

APPROVED AS TO FORM:

_____
City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF _Cypress_

By _[signature]_

Name _Peter Grant_

Title _City Manager_

Date _May 14 2019_

ATTEST:

_[signature]_

City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _____

City of: _Cypress_____

Street Address: _5275 Orange Ave_

_Cypress_____, CA _90630_

Phone: _714 229 6680___

Fax: _____

APPROVED AS TO FORM:                    **SIGNED IN COUNTERPART**

_[signature]_

City Attorney

North Specific Planning Area Settlement Agreement Signature Page

CITY OF Fullerton

By: _____

Jesus Silva

**Name**

Mayor

**Title**

5-13-19

**Date**

ATTEST:

_____

City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: Kenneth Domer

City of: Fullerton

Street Address: 303 W. Commonwealth Avenue

Fullerton , CA 92832

Phone: 714. 738. 6310

Fax: N/A

APPROVED AS TO FORM:

_____

City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF ___La Habra_____

By: _____

___Jim Sadro_____
Name

___City Manager_____
Title

May 14, 2019
Date

ATTEST:

_____, CMC
City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _Jim Sadro_____

City of: __La Habra_____

Street Address: _110 E. La Habra Blvd.

__La Habra_____, CA _90631_

Phone: _(562) 383-4010_____

Fax: ___(562) 383-4474_____

APPROVED AS TO FORM:

_____
City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF LA PALMA

By: _____

Marshall Goodman
Name

Mayor
Title

May 14, 2019
Date

ATTEST:

_____
City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: Laurie Murray

City of: La Palma

Street Address: 7822 Walker Street
La Palma, CA 90623

Phone: 714-690-3334

Fax: 714-690-3346

APPROVED AS TO FORM:

_____
Emily Webb, City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF LA PALMA

By: _____          May 14, 2019
                                        Date
Marshall Goodman
Name

Mayor
Title

ATTEST:

_____
City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: Laurie Murray

City of: La Palma

Street Address: 7822 Walker Street
La Palma, CA 90623

Phone: 714-690-3334

Fax: 714-690-3346

APPROVED AS TO FORM:                    SIGNED IN COUNTERPART

Emily Webb, City Attorney

North Specific Planning Area Settlement Agreement Signature Page

CITY OF _Los Alamitos_

_____

Bret M. Plumlee, City Manager

Date _5/14/19_

ATTEST:

_____

Windmera Quintanar, MMC, City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _Bret M. Plumlee_

City of: _Los Alamitos_

Street Address: _3191 Katella Ave._

_Los Alamitos_, CA _90720_

Phone: _(562) 431-3538_

Fax: _(562) 493-1255_

APPROVED AS TO FORM:

_____

Michael S. Daudt, City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF   Placentia

By: _____

Damien R. Arrula
Name

City Administrator
Title

Date   05/21/19

ATTEST:

City Clerk, Robert S. McKinnell

NOTICE TO CITY TO BE GIVEN TO:

City Manager: ___Damien R. Arrula___

City of: _____Placentia_____

Street Address: ___401 E. Chaspman Ave.___

___Placentia___, CA _92870___

Phone: ___(714) 993-8171___

Fax: ___(714) 961-0283___

APPROVED AS TO FORM:

Gary kranker
City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page



North Specific Planning Area Settlement Agreement Signature Page (Stanton)

**CITY OF STANTON**

By: _David John Shawver_      _May 14, 2019_
                                   Date

David J. Shawver
**Name**

Mayor
**Title**

ATTEST:

City Clerk

**NOTICE TO CITY TO BE GIVEN TO:**

City Manager: **Jarad L. Hildenbrand**

City of: **Stanton**

Street Address: **7800 Katella Avenue**

**Stanton** , CA **90680**

Phone: **(714) 890-4277**

Fax: **(714) 890-1443**

APPROVED AS TO FORM:

City Attorney

**SIGNED IN COUNTERPART**

North Specific Planning Area Settlement Agreement Signature Page



CITY OF _Villa Park_

By: _____

_Steve Franks_
Name

_City Manager_
Title

Date _May 14, 2019_

ATTEST:

_____
City Clerk

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _Steve Franks_

City of: _Villa Park_

Street Address: _17855 Santiago_

_Villa Park_, CA _92861_

Phone: _(714) 998-1500_

Fax: _(714) 998-1508_

APPROVED AS TO FORM:

_Todd O_____
City Attorney

SIGNED IN COUNTERPART

North Specific Planning Area Settlement Agreement Signature Page

CITY OF _YORBA LINDA_

By: _Mal Pul_

_MARK PULONE_
Name

_CITY MANAGER_
Title

_05-15-2019_
Date

ATTEST:

~~City Clerk~~ Deputy City Clerk
for

NOTICE TO CITY TO BE GIVEN TO:

City Manager: _____

City of: _____

Street Address: _____

_____, CA _____

Phone: _____

Fax: _____

APPROVED AS TO FORM:

_Todd E. Litfin_
City Attorney

**SIGNED IN COUNTERPART**

North Specific Planning Area Settlement Agreement Signature Page

EXHIBIT A

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 32 of 56   Page ID
#:3676
Case 8:18-cv-00155-DOC-JDE   Document 276-1   Filed 11/02/18   Page 1 of 7   Page ID
#:2949

## SETTLEMENT AGREEMENT

1

2      This Settlement Agreement ("Agreement") is entered into by and between,

3  on the one hand, the City of Anaheim ("Anaheim"), and, on the other hand, Orange

4  County Catholic Worker ("OCCW") (an unincorporated association, acting by and

5  through its designated representatives), and each of the individual Plaintiffs named

6  in the First Amended Complaint (collectively with OCCW, "Plaintiffs").

7      On January 29, 2018, Plaintiffs filed this action, entitled *Orange County*

8  *Catholic Worker v. Orange County*, California Central District Case No. 8:18-cv-

9  00155 (the "Action"), against the County of Orange, the City of Costa Mesa, the

10  City of Orange, and Anaheim (collectively, "Defendants").

11      Plaintiffs filed a First Amended Complaint ("FAC") against all Defendants

12  on July 26, 2018. Plaintiffs allege that their rights were violated by, *inter alia,*

13  enforcing Anaheim Municipal Code sections 11.10 and 13.08.101.080 based on

14  their status as homeless individuals. The City disputes the factual allegations and

15  legal contentions set forth in the FAC.

16      Without any admission of liability on the part of Anaheim or any concession

17  of the validity of Plaintiffs' allegations, and for the sole purpose of resolving the

18  Action in an economic and efficient manner, the Parties now desire to enter into this

19  Agreement on the terms set forth herein.

20                              **TERMS**

21      **1.    Consent Decree, and Effective Date.** Following the full execution of

22  this Agreement by all Parties, the Parties shall file a document on the terms required

23  by the Court in the Action (hereinafter, the "Court") to effectuate this Agreement as

24  an order and/or consent decree (the "Consent Decree"). The terms of this

25  Agreement shall only become effective and operative on the date it is approved by

26  the Court (hereinafter, the "Effective Date").

27      **2.    Construction and Operation of New Homeless Shelter(s).** Anaheim

28  commits to the following with respect to the funding and/or expedited review of

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 33 of 56   Page ID
#:3677
Case 8:18-cv-00155-DOC-JDE   Document 276-1   Filed 11/02/18   Page 2 of 7   Page ID
#:2950

1    one or more new homeless shelters within its boundaries:

2         **2.1**    Anaheim shall fund, and/or coordinate third-party funding for,

3    the construction and initial operation, as solely agreed to by Anaheim and the

4    operator(s), of one or more temporary, low-barrier homeless shelters within its

5    boundaries (collectively, the "Shelters," and individually a "Shelter"), with a total

6    capacity of at least 325 beds. Anaheim's funding commitment for the Shelters is for

7    two years only, commencing on the Effective Date.

8         **2.2**    Anaheim shall use its best efforts to ensure construction of the

9    325 Shelter beds by the earliest practicable date, with a goal of completing

10   construction of the 325 beds by January 2019.

11        **2.3**    Any agreement between Anaheim and any other entity

12   regarding the provision of funding for a Shelter by Anaheim shall include a term

13   requiring the entity receiving the funding to comply with any applicable anti-

14   discrimination laws, including but not limited to any applicable laws prohibiting

15   discrimination on the basis of a disability, and to provide a reasonable

16   accommodation of the disabilities of any Shelter occupants as required by law.

17        **2.4**    Nothing contained in this Agreement will cause Anaheim to be

18   deemed or considered to be (a) a tenant of all of any portion of a Shelter site, (b) in

19   control of all or any portion of any Shelter site, or of any operations, development,

20   or construction thereon, or (c) an occupant or owner of all of any portion of a

21   Shelter site, or any structures or facilities thereon.

22       **3.**    **Enforcement Against Homeless Individuals**

23        **3.1**    On all Anaheim properties (other than the specific properties

24   exempted in Section 3.3 below), Anaheim will lead the contact of those indigent

25   homeless individuals inhabiting areas open to the public with outreach and

26   engagement personnel. For purposes of this Agreement, the term "outreach and

27   engagement personnel" shall include County Outreach and Engagement personnel,

28   City personnel, and/or representatives from CityNet or any other organization(s)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 34 of 56   Page ID
#:3678
Case 8:18-cv-00155-DOC-JDE   Document 276-1   Filed 11/02/18   Page 3 of 7   Page ID
#:2951

1   with which Anaheim has contracted for such services and who are qualified to
2   conduct appropriate assessments of individuals with disabilities (collectively,
3   "O&E personnel").

4        **3.2**    O&E personnel will determine appropriate placements for the
5   indigent homeless persons and the availability of said placements. Disputes over an
6   appropriate placement will be subject to the policies and procedures outlined in this
7   Agreement. Absent exigent circumstances, after engagement by O&E personnel, an
8   indigent homeless person will be given a warning of the alleged violation and
9   notice (of at least 24 hours) of their service and shelter options. After an offer of
10  appropriate placement, a warning, and a notice of the need to relocate, and an
11  opportunity to accept the placement or voluntarily relocate, Anaheim may utilize
12  criminal law, including any applicable Anaheim ordinances, to effect the person's
13  removal. In the event the homeless person declines the offered placement, Anaheim
14  will advise the person of the availability of the notice-and-grievance process
15  enacted by the Court as discussed below and provide the person with the contact
16  information for Plaintiffs' attorneys in the Action, Brooke Weitzman and Carol
17  Sobel.

18       **3.3**    The procedures set forth in this Section 3 shall not apply to the
19  enforcement of criminal laws and/or Anaheim ordinances on (1) currently lockable,
20  gated, and fenced Anaheim park facilities with noticed hours of operation, (2)
21  Anaheim libraries during closed hours of operation, or (3) other special-use
22  properties as agreed upon by the Parties. In such locations, indigent homeless
23  persons shall have and enjoy the same right of access (and shall be subject to the
24  same rules of conduct) as other members of the public, and Anaheim shall, where
25  feasible, provide indigent homeless persons a warning and an opportunity to vacate
26  the area, before issuing a citation or effecting an arrest. On any property where
27  Anaheim and the County have dual enforcement authority, County restrictions on
28  access to that property shall be applicable to and enforceable by Anaheim.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

1      **3.4**     Nothing herein shall be construed to prevent Anaheim from

2   performing routine maintenance, remediation, or cleaning projects, as determined to

3   be necessary by Anaheim. Anaheim will advise Plaintiffs' counsel when a proposal,

4   plan, or project is expected to be submitted to the Anaheim City Council or

5   appropriate Anaheim agency or personnel if said proposal, plan, or project will

6   result in the displacement of an unsheltered community and, if necessary, submit

7   the proposal to the Court's notice-and-grievance process (discussed below)

8   pursuant to this Agreement. The Parties will meet and confer in good faith on the

9   implementation of the project as it impacts an unsheltered community. Except in

10  cases of emergency, in the event of such projects, Anaheim shall provide at least 24

11  hours' notice to affected indigent homeless persons and shall provide storage, at no

12  charge, for their personal property. The Parties agree to meet and confer on the

13  extent of Anaheim's obligation to store personal property seized during such

14  projects.

15     **3.5**     To further the goals of maximizing eligibility for, and providing

16  services to, unhoused persons so they can be enrolled in available benefit programs,

17  including homeless court, Anaheim will endeavor, when feasible, to charge

18  offenses based on homeless status as infractions rather than misdemeanors.

19  However, nothing herein shall be construed to preclude Anaheim from enforcing

20  criminal law not based on homeless status.

21     **3.6**     Absent exigent circumstances, prior to the time the 325 Shelter

22  beds referenced in section 2.1 are operational in Anaheim, a homeless individual

23  believed to be in violation of Anaheim Municipal Code section 13.08.101.080 (the

24  "Park-Hours Provision") will be given a warning and directed to move to another

25  public area outside the park which is not subject to a curfew. Once an individual

26  has been given the warning and direction set forth above on two separate days,

27  Anaheim need not provide it again to the same individual on any subsequent day

28  prior to enforcing the Park-Hours Provision against that individual.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

1    **3.7**    Anaheim shall not cite or arrest any homeless individual for
2    violation of Anaheim Municipal Code section 7.28.010 (the "Anti-Loitering
3    Provision") unless that individual, either individually or in conjunction with his or
4    her property, actually obstructs the free passage of any person or vehicle on any
5    public highway, alley, sidewalk, or crosswalk and declines to move the obstruction
6    after being asked to do so. A sidewalk is "obstructed" if less than 36 consecutive
7    inches of the sidewalk is available for passage.

8    **3.8**    Absent exigent circumstances, for five days after the Effective
9    Date, Anaheim Municipal Code sections 11.10.030 and 11.10.040, to the extent
10   they relate to the possession or storage of personal property in public areas, shall
11   not be used as the basis to cite or arrest any homeless individual, or to permit the
12   seizure of property, whether attended or unattended, in Anaheim parks during park
13   hours, or on other, non-park public property at all other times. During that five-day
14   period, the Parties agree to meet to discuss possible resolution of their conflicts on
15   these issues, including potential revisions to the ordinance and due-process
16   procedures regarding the possession or storage of personal property in a public
17   park. At the end of the five-day period, the restriction set forth above shall end
18   unless otherwise agreed to in writing by the Parties.

19   **3.9**    The terms of this agreement may be vacated or modified, at the
20   request of any party hereto, before the Termination Date (defined below) if: (a) the
21   holding of *Martin v. City of Boise*, Case No. 15-35845, 2018 WL 4201159 (9th Cir.
22   Sept. 4, 2018) ("*Martin v. Boise*") is reversed or modified, or is otherwise no longer
23   good law; or, (b) the Court determines that the number of available and appropriate
24   shelter placements in the City of Anaheim warrant termination or modification of
25   the Agreement.

26   **4.    Notice-and-Grievance Process.**

27   **4.1**    The Parties agree that a more thorough and detailed notice-and-
28   grievance review procedure that complies and is otherwise consistent with state and

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 37 of 56   Page ID
#:3681
Case 8:18-cv-00155-DOC-JDE   Document 276-1   Filed 11/02/18   Page 6 of 7   Page ID
#:2954

1  federal law must be developed and agreed to by the Parties, for approval and

2  implementation by the Court. In utilizing such procedure, the Parties anticipate that

3  every effort will be made by the Parties to resolve issues before seeking review by

4  the Court. The Parties agree that the Court will have the authority to enforce the

5  terms of this Agreement and resolve disputes as they may arise. The Parties agree to

6  make reasonable efforts to exhaust any and all applicable meet-and-confer and/or

7  grievance procedures prior to contacting the Court, except in instances where the

8  health or safety of individuals is at risk of imminent harm. The informal court

9  hearing process as part of the notice-and-grievance procedure will be established by

10  mutual agreement and with the approval of the Court. The parties shall make every

11  reasonable, good-faith effort to have these disputes heard by the Court during

12  normal business hours, but understand that the hearings may be dependent upon (1)

13  the Court's availability, and (2) circumstances in which the health or safety of an

14  individual is at risk of imminent harm.

15      **4.2**    Once a matter is decided in the Dispute-Resolution Process, the

16  parties will be bound by the decision as applied to substantially similar facts for the

17  same individual. When the determination is in favor of the City, the City may

18  proceed with citation and release or, where appropriate in its discretion, arrest, in

19  future contacts with the same person without deferring to the Dispute-Resolution

20  Process.

21      **5.**    This Agreement will fully terminate on the date that is three years after

22  the Effective Date (the "Termination Date").

23  \ \ \

24  \ \ \

25  \ \ \

26  \ \ \

27  \ \ \

28  \ \ \

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 38 of 56   Page ID
#:3682
Case 8:18-cv-00155-DOC-JDE   Document 276-1   Filed 11/02/18   Page 7 of 7   Page ID
#:2955

1        **6.**      The Parties will endeavor to separately resolve the issue of attorneys'

2 fees, costs, and damages, as to any individual Plaintiffs, prior to the Effective Date.

3        **7.**      The effectiveness of this Agreement shall be subject to the Parties

4 agreeing to an appropriate release.

5

6 DATED: November 2, 2018             BURKE, WILLIAMS, & SORENSEN

7                                                MARK J. AUSTIN

8                                         By: _____

9                                              Mark J. Austin

10                                            Attorneys for Defendant CITY OF
                                             ANAHEIM

11

12 DATED: November 2, 2018             LAW OFFICE OF CAROL A. SOBEL

13

14                                              By: _____

15                                              Carol A. Sobel
                                             Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

**EXHIBIT B**

1  **BROOKE WEITZMAN** SBN 301037
2  **WILLIAM WISE** SBN 109468
   **ELDER LAW AND DISABILITY RIGHTS CENTER**
3  1535 E 17th Street
   Santa Ana, California 92705
4  t. 714-617-5353
5  e. bweitzman@eldrcenter.org
6  e. bwise@eldrcenter.org

7  **CAROL A. SOBEL** SBN 84483        **PAUL L. HOFFMAN** SBN 71244
8  **MONIQUE ALARCON** SBN 31165      **CATHERINE SWEETSER** SBN 271142
   **AVNEET CHATTHA** SBN 316545      **COLLEEN M. MULLEN** SBN 299059
9  **LAW OFFICE OF CAROL SOBEL**      SCHONBRUN, SEPLOW, HARRIS &
10 725 Arizona Avenue, Suite 300             & HOFFMAN
   Santa Monica, California 90401     11543 W. Olympic Blvd.
11 t. 310-393-3055                    Los Angeles, California  90064
12 e. carolsobellaw@gmail.com         t. 310-396-0731
   e. Monique.alarcon8@gmail.com      e. hoffpaul@aol.com
13 e. avneet.chattha7@gmail.com       e. csweetser@sshhlaw.com
14                                    e. cmullen@sshhlaw.com
15 Attorneys for Plaintiffs

16
17                UNITED STATES DISTRICT COURT
18                CENTRAL DISTRICT OF CALIFORNIA
19                     SOUTHERN DIVISION
20

| | |
|---|---|
| 21  ORANGE COUNTY CATHOLIC WORKER, et al., | Case No. 8:18-cv-00155 DOC (JDE) |
| 22 | |
| 23          Plaintiffs, | **SETTLEMENT AGREEMENT BY AND BETWEEN THE CITY OF ORANGE** |
| 24     v. | **AND ALL PLAINTIFFS, ON THEIR INDIVIDUAL BEHALF** |
| 25  ORANGE COUNTY, the CITY OF ANAHEIM, the CITY OF COSTA | |
| 26  MESA, and the CITY OF ORANGE, | |
| 27          Defendants. | |
| 28 | |

1

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is entered into by and between, on the one hand, the City of Orange ("Orange")  and, on the other hand, Orange County Catholic Worker ("OCCW") (an unincorporated association, acting by and through its designated representatives), and the following individuals, who enter into this agreement on their individual behalfs, as defined below: Lisa Bell, Melissa Fields, Gloria Shoemake, Richie Thomas, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Fuller (collectively, the "Individual Plaintiffs, and together with OCCW, "Plaintiffs"). The parties to this Agreement are referred to herein individually as a "Party" and collectively as the "Parties."

<u>**RECITALS**</u>

**A.     WHEREAS**, on January 29, 2018, OCCW and certain of the Individual Plaintiffs (Lisa Bell, Melissa Fields, Gloria Shoemake, Shawn Carroll, Larry Ford, Cameron Ralston, and Kathy Fuller) filed this Action, entitled *Orange County Catholic Worker v. Orange County*, California Central District Case No. 8:18-cv-00155 (the "Action"), against the County of Orange, the City of Costa Mesa, the City of Orange, and Orange (collectively, "Defendants").

**B.     WHEREAS**, on July 26, 2018, all Plaintiffs filed a "First Amended Complaint" ("FAC") in the Action, against all Defendants. Among other changes from the original complaint, the FAC added Richie Thomas as a named Plaintiff and pleaded a potential class action against the County of Orange. At the time of this Agreement, the FAC is the operative complaint in the Action.

**C.     WHEREAS**, the FAC alleges that OCCW is an unincorporated association dedicated to the service and care of the poor in Orange County, and that the Individual Plaintiffs are homeless individuals residing in Orange County. The FAC alleges, *inter alia*, that Defendants, and each of them, have violated the Individual Plaintiffs' rights by enforcing various trespass, loitering, and/or anti-

2

1     camping ordinances or laws against them at times when, according to Plaintiffs,

2     there were no immediately accessible and appropriate beds available to them in

3     Orange County. Orange disputes the factual allegations and legal contentions made

4     by Plaintiffs in the FAC.

5          **D.     WHEREAS**, the FAC alleges the following claims for relief against

6     Orange, as well as the other Defendants: (1) violation of the Eighth and Fourteenth

7     Amendments to the U.S. Constitution (42 U.S.C. § 1983), and Article VII, sec. 17,

8     of the California Constitution for alleged "cruel and unusual punishment" (First

9     Cause of Action), (2) violation of the First and Fourth Amendments to the U.S.

10    Constitution (42 U.S.C. § 1983) (Second Cause of Action), (3) violation of the

11    right to due process of law under the Fourteenth Amendment to the U.S.

12    Constitution (42 U.S.C. § 1983) (Third Cause of Action), (4) violation of

13    California Civil Code section 52.1 (Seventh Cause of Action), (5) violation of

14    California Government Code section 815.6 (Eighth Cause of Action), and (6)

15    violation of California Government Code 11135 (Ninth Cause of Action). Orange

16    disputes each of these claims for relief in their entirety, and disputes Plaintiff's

17    underlying legal contentions and theories.

18         **E.     WHEREAS**, the Individual Plaintiffs have now determined to dismiss

19    the F.R.Civ.P. 23(b)(2) class allegations, with the approval of the Court.

20         **F.     WHEREAS**, without admitting any wrongdoing, liability, or legal

21    violations on the part of Orange, without conceding the validity of any of

22    Plaintiffs' legal theories or claims, and for the sole purpose of resolving the Action

23    and any claims relating thereto in an economic and efficient manner, the Parties

24    now desire to enter into this Agreement on the terms set forth herein.

25                                   **TERMS**

26         **NOW, THEREFORE,** for full and valuable consideration, the sufficiency

27    of which is hereby acknowledged, and based upon the foregoing Recitals, and the

3

terms, conditions, covenants, and agreements herein, the Parties agree as follows:

**1.    Order re Continuing Jurisdiction, and Effective Date.** Following the full execution of this Agreement by all Parties, the Parties shall file with the Court in the Action the "[Proposed] Order re Settlement and Continuing Jurisdiction," attached hereto as <u>Exhibit A</u> (the "Order"). The obligations of the Parties in the remaining sections of this Agreement, and the releases contained herein, shall become effective and operative on the date on which the Order is signed and entered by the Court, and shall be contingent upon the Court's signing and entry of the Order (hereinafter, the "Effective Date").

**2.    Incorporation of Recitals.** The representations in the above section of this Agreement, entitled "RECITALS," are hereby incorporated into and made a material part of the terms and representations of this Agreement.

**3.    Construction and Operation of New Homeless Shelter(s).** Orange commits to the following with respect to the funding and/or expedited review of one or more new facilities to provide placements for unsheltered individuals within the City's jurisdiction:

**3.1**    The cities in the area designated by the County as the North Special Planning Area ("North SPA"), which includes, Orange, Fullerton, Placentia, Buena Park, Anaheim, Brea, Cypress, La Habra, La Palma, Los Alamitos, Stanton, Villa Park and Yorba Linda, shall fund, or obtain funding from the County for, the construction and initial operation of two or more feasible, temporary, low-barrier homeless shelters at locations within North SPA cities (collectively, the "Shelters," and individually a "Shelter"), with a total capacity of at least 200 beds to be operational and a goal of having the facilities operational by June 30, 2019, or sooner if possible. The North SPA shall have complete discretion in determining which, if any, Shelter projects to fund, and which Shelter projects are suitably feasible, subject to any limitations set forth herein.

4

**3.2**     To the extent that it is required to do so by Government Code sec. 65583 et seq., or any other relevant provision, Orange agrees to execute an MOU with the County and the participating North SPA cities, setting forth the financial responsibilities of each participating government entity for the development and ongoing operation of the Shelter(s) and the allocation of beds to each participating entity according to its financial contribution.

**3.3**     The City of Orange also agrees to expedite any necessary processing, review, approvals, and/or inspections of any Shelter project selected by the North SPA for funding pursuant to this Agreement, to the extent reasonably practicable and permitted by law.

**3.4**     The North SPA cities, in conjunction with the County, currently plan to fund two Shelter(s) in the North SPA, each with an initial capacity of 100 beds and the availability of expansion to 200 beds, if necessary.  Although these projects are not the exclusive means by which Orange may satisfy its obligation to meet the needs of homeless individuals in the City, Plaintiffs acknowledge and agree that the creation of these Shelter projects, or any portion thereof initially totaling 200 Shelter beds, shall satisfy Orange's obligations under Paragraph 3.1 of this Agreement to meet the Court's requirement of available placements for at least 60 percent of the unsheltered individuals in the Defendant City.

**4.**     <u>**Enforcement of Anti-Camping and Anti-Loitering Provisions.**</u>

**4.1**     Orange shall establish the following policies and procedures relating to the enforcement of Orange Municipal Code sections 12.66.030 and 12.48.045 (collectively, the "Anti-Camping Provision"), or any comparable provisions of state law, or any law concerning "loitering" against homeless individuals within its jurisdiction:

**4.1.1** Absent exigent circumstances, any enforcement of the Anti-Camping Provision against a homeless individual (including any of the

5

1  named Plaintiffs) will first be preceded by contacts by outreach and engagement

2  personnel to determine appropriate shelter placement for the individual in question,

3  per the procedures outlined herein. For purposes of this Agreement, the term

4  "appropriate outreach and engagement personnel" shall include County Outreach

5  and Engagement personnel, and/or representatives from CityNet or any other

6  organization(s) with which Orange has contracted for such outreach and

7  engagement services (collectively, "O&E personnel"), who are trained in engaging

8  in appropriate clinical assessments of individuals with disabilities when necessary

9  to determine an appropriate placement.  Orange may elect to use City employees as

10 long as they are properly trained.

11

12     **4.1.2**  In implementation of Section 4.1.1, prior to enforcement of the

13 Anti-Camping Ordinance against any homeless individual, Orange will first work

14 with O&E personnel to locate and offer an available shelter placement for the

15 individual in question in the North SPA that constitutes a reasonable

16 accommodation of the individual's disabilities, if any.  If no such shelter is

17 available in the North SPA but an alternative appropriate and immediately

18 available placement within the County of Orange is identified by O&E, Orange

19 may place the individual at that shelter with the consent of the individual.  Orange

20 may consider this offer an "available bed" for purposes of enforcement so long as

21 the placement does not impede the individual's ability to access their doctors,

22 outpatient programs in which they may be enrolled, work and other support

23 systems in or near Orange. If the individual accepts the offered placement outside

24 of the North SPA, Orange will provide transportation to the placement and will

25 assist the individual in finding any necessary transportation to and from scheduled

26 appointments or work required as a result of the placement outside of the North

27 SPA, including but not limited to bus passes. If the individual declines the offered

28 placement, Orange may proceed with enforcement of the Anti-Camping Ordinance

in its discretion. Notwithstanding the preceding sentence, for any individual who declines the offered placement, Orange will first give the person a warning and an opportunity to immediately leave the location before engaging in further enforcement efforts, such as citation and/or arrest.   If the alleged violation arises from an individual's presence in a park outside of the established operational hours, Orange Municipal Code section 12.48.090 (the "Park-Hours Provision"), and if there is no appropriate and immediately available placement for that person, Orange will advise the individual that they must leave the park.   Orange will advise the individual that they may move to any public area outside the park per *Martin v. City of Boise*.  If the person does not leave the park after receiving a warning, Orange may issue a citation to the individual.  However, if the individual contests whether the offered and immediately available bed is a reasonable accommodation, absent exigent circumstances, Orange shall not execute a custodial arrest but will, instead, issue a citation and advise the individual of the available Dispute Resolution process.  Orange shall advise of the availability of the Dispute Resolution Process at each stage of engagement once an individual declines an offered placement.

   **4.1.3**  The requirements of this Section 4.1 shall only apply until the earlier of (a) the date on which the case of *Martin v. City of Boise*, Case No. 15-35845, 2018 WL 4201159 (9th Cir. Sept. 4, 2018) ("*Martin v. Boise*") is no longer applicable law within the jurisdiction of the Ninth Circuit, and (b) the date on which the Court finds that there are sufficient appropriate and immediately available placements for the unsheltered population in the City of Orange.

   **4.2**   Orange shall not cite or arrest any homeless individual for violation of the law based on an alleged obstruction of public property unless that individual, either individually or in conjunction with his or her property, actually obstructs free passage of any person or vehicle on any public highway, alley,

7

1    sidewalk, or crosswalk and declines to move the object(s) creating obstruction

2    from the public right of way after being requested to do so.

3         **4.3**    Nothing in this Agreement constitutes an admission by Orange

4    that its current policies and procedures for enforcement of the Anti-Camping

5    Provision and/or Anti-Loitering Provision are either (a) different than those set

6    forth above, or (b) in any way legally inadequate, or a concession by Plaintiffs that

7    it is legally adequate.

8         **4.4**    Nothing in this Agreement constitutes a promise,

9    representation, or warranty, on the part of Orange, that any number of beds will be

10   available to any particular person(s) at any time. The lack of availability of an

11   appropriate and immediately accessible bed for any person or persons at any time,

12   including any of the Plaintiffs, may impact the ability of Orange to find a purported

13   violation of law, including but not limited to Orange Municipal Code sections

14   12.66.030 and 12.48.045 (the "Anti-Camping Provision").  However, the failure to

15   meet the number of beds set out in this agreement, and a failure of a shelter to meet

16   reasonable accommodation needs, may be raised with this court under the Dispute-

17   Resolution procedure set forth below.

18   **5.**    **Disability Laws.**

19        **5.1**    Any agreement entered into by Orange, whether directly or by

20   an MOU with the North SPA cities and/or County, with a privately operated

21   Shelter(s) or a private contractor to operate a public shelter, will require that the

22   facility meets the requirements of the Americans with Disabilities Act, 42 U.S.C.

23   §§ 12101 *et seq.* (the "ADA"), its associated regulations, or any other state or

24   federal laws relating to disabilities, including but not limited to the Fair Housing

25   Act 42 U.S.C. §§ 3601 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*,

26   and/or Government Code section 11135 (collectively with the ADA, the Disability

27   and Anti-discrimination Laws").

28                                      8

**5.2**    The Parties hereby agree that any and all disputes concerning the adequacy of any placement offered to a homeless individual pursuant to Section 4.1 of this Agreement, including but not limited to whether the offered placement sufficiently accommodates the individual's disabilities, will be resolved via the "Dispute-Resolution Process," as defined below.

**6.    Dispute-Resolution Process.** The Court shall retain jurisdiction over the Action for a period of three years from the date of this Agreement (hereinafter, the "Termination Date"), for the purposes of (a) overseeing the implementation of this Agreement, and (b) implementing and presiding over the a dispute-resolution process (the "Dispute-Resolution Process"), to be established by the Court and to which Plaintiffs and Orange, hereby consent and agree:

**6.1**    Except as expressly identified in this Agreement, or as may be modified by the Court or the Parties, with the Court's consent, during the three-year period of the Court's continued jurisdiction, this Dispute-Resolution Process shall apply to adjudicate any and all disputes between, on the one hand, Orange, and, on the other hand, any homeless individual or individuals (including but not limited to any individual Plaintiffs), relating to (a) the implementation of this Agreement, and/or (b) Orange's enforcement of the above-identified Orange Municipal Code sections, or analogous state penal code provisions applied on the basis of an individual's status as homeless, including but not limited to disputes regarding the availability or adequacy of any shelter or shelter services offered to the individual pursuant to Section 4.1 of this Agreement (collectively, the "Disputes," and individually, a "Dispute").

**6.2**    In the event of any Dispute arising during the pendency of the Court's retained jurisdictions, the parties to that Dispute will first attempt to meet and confer informally with the other side in an effort to resolve it. In the case of a Dispute raised by one or more homeless individuals (including but not limited to

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 49 of 56   Page ID
#:3693
Case 8:18-cv-00155-DOC-JDE   Document 279   Filed 11/02/18   Page 10 of 17   Page ID
#:2969

any individual Plaintiffs) against Orange, or a Dispute raised by Orange against one or more homeless individuals who are known to be represented by counsel of record in the Action, this attempt will at least involve (a) a written communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy, and providing any available evidence in relation thereto, and (b) a discussion, either in person or via telephone, seeking to resolve the Dispute.  Orange employees, as well as the employees of the Shelter(s), shall give any affected individual notice of the Court's Dispute-Resolution Process and the contact information for Plaintiffs' counsel, together with a statement that Plaintiffs' counsel may be available to assist them.

**6.3**    If the parties to a Dispute are unable to resolve it within two (2) court days after it is first raised informally by one of the parties to the Dispute, any party to the Dispute may request a hearing with the Court under the standards and processes to be set by the Court, and the Court will have jurisdiction to resolve that Dispute.  If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by the Court.

**6.4**    Except as provided for in Section 4, hereinabove, nothing in this agreement shall impact Orange's right to enforce any law against a person believed to be homeless, including issuing citations and arresting the person for an alleged violation of the law.

**6.5**    In resolving any Dispute, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence, and other due process. The Court shall not be empowered to award damages or any other monetary relief to any party as a result of any Dispute submitted to this process.

**8.**    <u>**Release and Covenant Not to Sue.**</u>

10

Case 8:18-cv-00155-DOC-JDE   Document 279   Filed 11/02/18   Page 11 of 17   Page ID
#:2970

**8.1**   In consideration for the terms of this Agreement, Plaintiffs, and each of them, on their own behalf (the "Releasing Parties"), hereby release and forever discharge Orange, as well as its present and former employees, agents, managers, officers, directors, council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees, costs, and liabilities, arising from and relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Parties, and/or any of them, have, or ever may claim to have, as against the Released Parties, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, (c) the availability of homeless shelters, shelter beds, and/or other homeless accommodations in Orange County, (d) Orange's alleged obligation to provide and/or fund such accommodations, and/or (e) Orange's alleged inability to enforce any of the Ordinances identified herein (including but not limited to any law that the Releasing Parties claim criminalizes a person's homeless status), against any person because of his or her homeless status (hereinafter, the "Released Claims"), conditional upon the provision of section 4.1.3, hereinabove.

**8.3**   The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Parties and within the scope of the Released Claims based solely and only on the events giving rise to this Action. To effectuate the intent of the Parties, the Releasing Parties expressly agree to waive and relinquish all rights and benefits they may have under Section 1542

11

Case 8:18-cv-00155-DOC-JDE   Document 334   Filed 08/06/19   Page 51 of 56   Page ID
#:3695
Case 8:18-cv-00155-DOC-JDE   Document 279   Filed 11/02/18   Page 12 of 17   Page ID
#:2971

1  of the Civil Code of the State of California, which reads as follows:

2  § 1542. [General release; extent] A general release does not extend to
3  claims which the creditor does not know or suspect to exist in his or her
   favor at the time of executing the release, which if known by him or her
4  must have materially affected his or her settlement with the debtor.

5      **8.4**     The Releasing Parties, and each of them, warrant that they have

6  made no assignment, and will make no assignment, of any claim, chose in action,

7  right of action, or any right, of any kind whatsoever, within the scope of the

8  Released Claims, and that no other person or entity of any kind had or has any

9  interest in any of the demands, obligations, actions, causes of action, debts,

10 liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or

11 claims within the scope of the Released Claims.

12     **9.**     **Dismissal of the Action.** At the conclusion of the Court's retained

13 jurisdiction, Plaintiffs will take all necessary actions and file all necessary

14 documents to effectuate dismissal of the Action, with prejudice.

15

16     **10.**     **Settlement Payments and Attorneys' Fees.** Within thirty (30) days

17 after the full execution of this Agreement by the Parties, Orange shall make the

18 following payments to the following persons or entities:

19         a.     $40,000 made payable to the Elder Law and Disability Rights

20 Center in full satisfaction of any claims for attorneys' fees and/or costs of

21 Plaintiffs' counsel in connection with the Action;

22         b.     $7,500 to a Special Needs Trust, in satisfaction of any claims

23 for damages on behalf of Cameron Ralston; and

24         Except as set forth above, all Parties, and all Releasing Parties, shall bear

25 their own costs, expenses, and attorneys' fees in relation to or arising out of (a) the

26 Action, (b) the resolution, negotiation, and settlement of the Action, including the

27 negotiation of this Agreement, and (c) the implementation of this Agreement,

28 including the resolution of any Dispute.

12

11.   **Non-Admission of Liability.** By entering into this Agreement, Orange admits no liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein constitutes an admission by Orange as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made against it in the Action, or that the claims alleged in the Action are suitable for class-wide treatment (which Orange expressly denies). Orange has entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, that the plaintiffs have agreed to move for dismissal of the class allegations, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

12.   **Knowing and Voluntary.** This Agreement is an important legal document and in all respects has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, prior to signing this Agreement, (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, prior to signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

13.   **Entire Agreement.** This Agreement constitutes the entire agreement

13

between the Releasing Parties and Orange regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Releasing Parties and Orange relating to the subject matter hereof. The Releasing Parties and Orange each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement shall be made by written instrument executed by each party hereto in order to become effective.

    **14.**   **Warranty of Authority.**  Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

    **15.**   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement.

    IN WITNESS WHEREOF, this Settlement Agreement is hereby entered into and executed by the parties hereto on the dates set forth below.

Dated: _Nov. 2_____, 2018          ORANGE COUNTY CATHOLIC WORKER

1

By: _____
xxxxxxxxxxxxxxxxxxxxx

2
3   Dated: _____, 2018        LISA BELL, ON HER OWN BEHALF

4

5                                    _____

6   Dated: _____, 2018        MELISSA FIELDS, ON HER OWN
                                     BEHALF
7

8                                    _____

9   Dated: _____, 2018        GLORIA SHOEMAKE, ON HER OWN
10                                   BEHALF

11                                   _____

12

13  Dated: _____, 2018        RICHIE THOMAS, ON HIS OWN
14                                   BEHALF

15                                   _____

16

17  Dated: _____, 2018        SHAWN CARROLL, ON HIS OWN
                                     BEHALF
18

19                                   _____

20  Dated: _____, 2018        LARRY FORD, ON HIS OWN BEHALF
21

22

23                                   _____

24
25  Dated: _____, 2018        CAMERON RALSTON, ON HIS OWN
                                     BEHALF
26

27                                   _____

28

15

1  Dated: _____, 2018          KATHY SCHULER, ON HER OWN
2                                    BEHALF
3                                    _____
4  Dated: Oct. 29, 2018             CITY OF ORANGE
5
6                                   By: _____
7                                       Teresa E. Smith, Mayor
8  APPROVED AS TO FORM:
9
10 Dated: Oct. 31, 2018, 2018       ELDER LAW AND DISABILITY
                                    RIGHTS CENTER
11
12
13                                  By: _____
                                       Brooke Weitzman /s/
14                                     Attorneys for Plaintiffs
15
16
17 Dated: Oct. 31, 2018, 2018       LAW OFFICE OF CAROL A. SOBEL
18
19                                  By: _____
20                                     Carol A. Sobel
                                       Attorneys for Plaintiffs
21
22
23
24
25
26
27
28

                                   16

1  Dated: _____ Oct. 29 _____, 2018   ORANGE CITY ATTORNEY'S
2                                         OFFICE
3
4                                         By: _____
5                                         Wayne W. Winthers
                                          Attorneys for Defendant
6                                         CITY OF ORANGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17