BROOKE WEITZMAN SBN 301037
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 E 17th Street
Santa Ana, California 92705
t. 714-617-5353
e. bweitzman@eldrcenter.org

CAROL A. SOBEL SBN 84483
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, California 90401
t. 310-393-3055
e. carolsobellaw@gmail.com

Attorneys for Plaintiffs

KARL H. BERGER SBN 178458
City Attorney, City of Bellflower
HENSLEY LAW GROUP
3655 Torrance Blvd., Suite 300
Torrance, California 90503
t. (818) 333-5120
e. kberger@hensleylawgroup.com

Attorneys for Defendant, City of Bellflower

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ORANGE COUNTY CATHOLIC WORKER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ORANGE COUNTY, et al.; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 8:18-cv-00155-DOC-JDE <br><br> **SETTLEMENT AGREEMENT** |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between the City of Bellflower, a general law city and municipal corporation ("City"), and Orange County Catholic Worker ("OCCW"), an unincorporated association acting by and through its designated representatives XXX

1

(collectively, "Plaintiff"). The parties to this Agreement are individually referred to as a "Party" and collectively as the "Parties."

## RECITALS

The Parties agree that this Agreement is entered into with reference to the following:

A. On January 29, 2018, Plaintiffs filed this Action entitled *Orange County Catholic Worker, et al. v. Orange County et al.*, California Central District Case No. 8:18-cv-00155-DOC-JDE (the "Action").

B. OCCW is an unincorporated association dedicated to the service and care of the poor in the County of Orange; OCCW represents and provides services to individuals who are homeless – as defined by applicable law – residing in the County of Orange.

C. On September 23, 2019, Plaintiff filed a Supplemental [~~an Amended~~] Complaint (the "Complaint") alleging that that City, by and through its employees and upon its behalf by members of the Los Angeles County Sheriff's Department, violated Plaintiff's rights by enforcing various trespass, presence, and/or anti-camping regulations (collectively, "Public Safety Laws") at times when, according to Plaintiff, there were no immediately accessible and appropriate beds available to them in Los Angeles County.

D. City disputes Plaintiff's factual allegations and legal contentions as set forth in the Complaint.

E. The Complaint alleges the following claims for relief against City: (1) violation of the Eight and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983) and Article VII, section 17 of the California for alleged "cruel and unusual punishment"; (2) violation of the First and Fourth Amendments to the U.S. Constitution (42 U.S.C. § 1983); violation of the right to due process of law under the Fourteenth Amedment to the U.S. Constitution (42 U.S.C. § 1983); (4) violation of California Civil Code § 52.1; (5) violation of California Government Code § 815.6; and (6) violation of Government Code § 11135. City disputes each of these claims for relief in its entirety and disputes Plaintiff's underlying contentions and theories.

F. Without admitting any wrongdoing, liability or legal violations on the part of City, without conceding the validity of any of Plaintiff's legal theories or claims, and for the sole purpose of

preemptively, economically, and efficiently resolving the Action (and any claims relating thereto) as to City, the Parties now desire to enter into this Agreement on the terms set forth below.

## TERMS

The Parties agree to the following to resolve the Action (and any claims related thereto):

1. **Order regarding Continuing Jurisdiction and Effective Date.** Following the full execution of this Agreement, the Parties will file with the Court in the Action the "[Proposed] Order re Settlement and Continuing Jurisdiction" attached as Exhibit "A," and incorporated by reference (the "Order"). The Parties' obligations in this Agreement and the releases contained below become effective and operative on the date on which the Order is signed and entered by the Court (the "Effective Date") and is contingent upon the Court's signing and entry of the Order.

2. **Recitals.** The Recitals are incorporated into and made a material part of the terms and representations of this Agreement.

3. **Definitions.** Unless the contrary is stated or clearly appears from the context, the following definitions will govern the construction of the words and phrases used in this Agreement:

"City" means the City of Bellflower and its agents including, without limitation, the Los Angeles County Sheriff's Department acting on City's behalf in accordance with applicable law or the "Municipal Law Enforcement Services Agreement" existing at the time of this Agreement with a termination date of June 30, 2024.

"Homeless Person" has the same meaning as set forth in 42 U.S.C. § 11302.

"Homeless Population" means the number of homeless persons residing within City's jurisdiction as determined by City's most recent actual count during the term of this Agreement. At the time of entering this Agreement, City's Homeless Population was approximately 70 Homeless Persons (as determined by the Homeless Persons' last permanent residence).

"Outreach and Engagement" or "O&E" means efforts made by persons trained in engaging in clinical assessments of individuals with disabilities as necessary to determine an appropriate placement with a reasonable accommodation of the individual's disability. O&E personnel may include City employees, homeless liaison, and trained persons from the Los Angeles County Sheriff's Department.

"Personal Effects" means personal property consisting of at least the following items:

A. Medication, personal documents, identification, prescriptions, eyeglasses, or other medical devices;

B. Sleeping bag or bed roll which is sanitary and non-verminous;

C. Tents in usable and good condition;

D. Clothes stored in a manner protecting them from the elements, which are not unsanitary, soiled, or verminous; and

E. Such additional personal property identified in best practices drafted in accordance with this Agreement.

"Restricted Area" means any public right-of-way and public property including, without limitation, parks, parking lots, and the "Trail" as defined by Bellflower Municipal Code ("BMC") § 12.44.010.

"Temporary Shelter" means facilities with sleeping accommodations, the primary purpose of which is to provide temporary shelter for Homeless Persons at no charge. City will provide Temporary Shelter in accordance with this Agreement to accommodate its Homeless Population. Such Temporary Shelter will be provided in a secular manner. City may, after utilizing best practices that include due process considerations in accordance with applicable law, deny Temporary Shelter to Homeless Persons who engage in voluntary actions which result in a public nuisance or a threat to the public health, safety, general welfare, or quiet enjoyment of the Temporary Shelter Site or nearby public property.

"Temporary Shelter Site" or "TSS" means the geographic site that may be agreed to between the parties pursuant to Section 13. The TSS will include facilities to accommodate human habitation including, without limitation, sanitary facilities, designed to protect public health and safety, all in accordance with attached Exhibit "A," which is incorporated by reference.

4. **Construction of Temporary Shelters at the TSS.** The TSS will be the geographic location for City's Temporary Shelters as contemplated by this Agreement. City will construct or cause to be constructed Temporary Shelters with sufficient beds and facilities to accommodate City's Homeless Population for any overnight stay. The types of beds and facilities provided by City must be

4
SETTLEMENT AGREEMENT AND RELEASE

reasonably designed to shelter Homeless Persons from the elements but need not be permanent. For example, cots and tents will meet the requirements of this Agreement. City will use its best effort to ensure construction of the Temporary Shelter by the earliest practicable date with a goal of making best efforts to complete construction and commence operations for the TSS not later than December 31, 2019.

5. **Operation of Temporary Shelters.** City may ensure that Temporary Shelters be operated by referral only, giving priority to City's Homeless Population. It may establish admission requirements that are developed in accordance with Section 13 that, at a minimum, include protections for Homeless Persons to prevent arbitrary and capricious removal from the TSS and, additionally, ensuring that Homeless Persons with a disability are reasonably accommodated in accordance with applicable law. Referrals to the Temporary Shelter is available only to City and prioritized for Homeless Persons demonstrating they are part of City's Homeless Population. Temporary Shelters will be operated on a secular basis and in full compliance with all applicable federal and state non-discrimination laws including, without limitation, California Government Code § 11135. City may establish operational policies and procedures that limit personal property present at the TSS and in Temporary Shelters to only Personal Effects belonging to a Homeless Person. City will store personal property in accordance with applicable law and may dispose of such personal property that may be classified as solid or liquid waste.

6. **Funding of Temporary Shelter Construction and Operation.** City is solely responsible for identifying and securing monies required to fund construction, operation, and maintenance of the Temporary Shelters and the TSS. Nothing in this Agreement obligates Plaintiffs to contribute to such funding.

7. **Bellflower General Plan.** City may utilize this Agreement and its construction/operation of Temporary Shelters as part of updating its Housing Element in accordance with Government Code § 65583, *et seq.* Plaintiffs may challenge any breach of this Agreement in accordance with applicable law.

8. **City Maintenance Project.** Nothing in this Agreement may be construed to prevent City from performing routine maintenance, remediation, or cleaning projects as determined in City's

sole discretion. City will advise Plaintiff's counsel when a project is expected to be submitted to City's City Council (or appropriate City department) for approval that may result in displacement of Homeless Persons included with City's Homeless Population. Such project may be subject to the Dispute-Resolution process of this Agreement. Nothing precludes City from implementing an emergency project as determined by an administrative declaration of emergency or otherwise. Absent exigent circumstances, City will strive to provide at least 24-hours notice to affected Homeless Persons and provide storage, at no charge, for personal property in an area that is accessible to Homeless Persons to reclaim their personal property in accordance with applicable law.

9. **Enforcement of Anti-Nuisance Regulations.** City will establish the following policies and procedures to implement City's trespass, presence, anti-camping, and park closure regulations (the "Anti-Nuisance Regulations") and any analogous provision of local or State law applied against Homeless Persons within its jurisdiction:

   a. Absent exigent circumstances, any enforcement of the Anti-Nuisance Regulations against a Homeless Person will first be preceded by contacts with Outreach and Engagement personnel.

   b. O&E personnel will first work with the Homeless Person to offer an appropriate and available placement at a shelter other than the Temporary Shelters at the TSS. Such placements include, without limitation, countywide Department of Mental Health placements. City may consider this offer an "available bed" for purposes of enforcing the Anti-Nuisance Regulations so long as the placement does not unreasonably impede the individual's ability to access medical appointments; outpatient programs in which the individual may be enrolled; work; and other support systems. If the Homeless Person accepts the offered placement, the O&E personnel will provide transportation to the placement and will assist the Homeless Person in finding necessary transportation to and from scheduled appointments or work including, without limitation, bus passes, when transportation is necessitated by such placement.

c. Alternatively, O&E personnel may offer the Homeless Person temporary shelter at the TSS if appropriate. City may also consider this offer an "available bed" for purposes of enforcing the Anti-Nuisance Regulations.

d. City may, but is not required, designate a person or organization to act as a homeless ombudsman to ensure effective and appropriate placement determinations in accordance with this section.

e. If a Homeless Person declines the offered placement in any facility including the TSS, City may proceed with enforcing its Anti-Nuisance regulations in its discretion. Notwithstanding the preceding sentence, for any individual who declines the offered placement, City will first give the person a warning and an opportunity to leave the location before engaging in citation and/or arrest. Provided the individual relocates upon warning to another location, he or she will not be cited or arrested for violating an Anti-Nuisance Regulation. If the individual fails to relocate to another location as directed, then the individual may be issued a citation or, subject to this Agreement, placed under custodial arrest for the violation. City will advise the individual of the Dispute-Resolution process described below. If a violation arises from an individual's presence in a Restricted Area and if there is no immediately available placement for that person, City will advise the individual of a location he or she may move to and avoid citation or arrest for violating the Anti-Nuisance regulations until an appropriate and immediately available bed is made available to the individual. The requirements of this Section apply until the earlier of (i) the date on which *Martin v. City of Boise*, 902 F.3d 1031 (9th Cir. 2018) is no longer applicable law within the jurisdiction of the Ninth Circuit, or (b) the date on which the Court finds that there are sufficient appropriate and immediately available placements for City's Homeless Population.

f. City will not cite or arrest any Homeless Person for violating applicable law based upon an alleged obstruction of public property unless that individual, either individually or conjunction with personal property, actually interferes with the intended use of the

public property and declines to move the personal property creating obstruction in the public right of way after being requested to do so.

10. **No Admission.** Nothing in this Agreement constitutes an admission by City that its current policies and procedures for enforcement of Anti-Nuisance Regulations are either (a) different from those set forth in this Agreement; or (b) in any way legally inadequate, or a concession by Plaintiffs that it is legally adequate.

11. **No Guarantee.** Nothing in this Agreement constitutes a promise, representation, or warranty by City that any number of beds will be available to any particular Homeless Person at any time. The lack of availability of any appropriate and immediately accessible bed for any person or persons at any time may impact the ability of City to punish a purported violation of Anti-Nuisance regulations based upon an individual's status as a Homeless Person. The failure of City to construct and operate Temporary Shelters to reasonably accommodate City's Homeless Population may be raised by the Court under the Dispute-Resolution in this Agreement.

12. **Facial Challenges to Anti-Nuisance Regulations.** Nothing in this Agreement limits Plaintiffs from raising facial challenges to City's Anti-Nuisance Regulations on constitutional grounds.

13. **Best Practices.** The Parties will meet and confer to draft best practices that will implement this Agreement in a practical manner and in accordance with applicable law.

14. **Dispute Resolution.** The Court will retain jurisdiction over the Action until the date that is four, or (if automatically extended) eight, years from the Effective Date (the "Termination Date") for purposes of (a) overseeing implementation of this Agreement and (b) implementing and presiding over the dispute-resolution process (the "Dispute-Resolution Process") to be established by the Court and to which Plaintiffs and City consent and agree:

    a. Except as expressly identified in this Agreement or as may be modified by the Court, or the Parties with the Court's consent, during the four-year period of the Court's continuing jurisdiction this Dispute-Resolution Process will apply to adjudicate any and all disputes arising out the shelter or enforcement including whether a placement is available and appropriate (a "Dispute"). The Dispute-Resolution Process does not apply to any dispute regarding an individuals violation of laws other than the Anti-Nuisance

regulations and this Agreement. Unless terminated by either party at least 30 days before the four year anniversary date of this Agreement, the Dispute-Resolution Process, and the Court's ongoing jurisdiction, will renew for an additional four-year period, for a total of eight years.

b. Should a Dispute arise, the parties to that Dispute will first attempt to meet and confer informally with the other side to resolve the matter in good faith. Such attempt will at least involve (a) a communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy and providing any available evidence in relation thereto; and (b) a discussion either in person or by telephone seeking to resolve the Dispute.

c. If the parties to a Dispute are unable to resolve it within two court days after it is first informally raised, any party to the Dispute may request a hearing with the Court under the standards and processes to be set by the Court and the Court will have jurisdiction to resolve that Dispute. If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by the Court.

d. The fact that a person initiated this Dispute-Resolution Process does not affect City's right to enforce any law against that person including issuing citations. If enforcement action is taken, the City will inform the Homeless Person of the dispute resolution problem and provide contact information for the Elder Law and Disability Rights Center. If the individual does not have access to a phone, O&E will assist them to contact the ELDR Center. If the individual initiates the Dispute-Resolution Process, City agrees that no custodial arrest will subsequently be made for violating an Anti-Nuisance Regulation arising from an individual's status as a Homeless Person until the Dispute-Resolution Process is concluded. Once the Dispute-Resolution Process is concluded regarding an issue, City is not required to complete a subsequent Dispute-Resolution Process regarding the same issue and the same individual before a custodial arrest where the individual does not comply with a warning or leave once a citation is issued

provided City complies with the Court's determination of that issue. The phrase "same issue" refers to an issue determined by the Court in a Dispute-Resolution Process where the individual's objections, including any claim of alleged disability, physical limitations, and the offered bed are substantially similar for purposes of determining whether the individual's disability or other objection is being reasonably accommodated. In circumstances involving citation for violating an Anti-Nuisance Regulation, the Court may issue an order directing City to stay the filing of formal charges against a Homeless Person until the Dispute-Resolution Process is concluded for that Dispute. City agrees not to contest such a request for a brief stay of the filing of charges.

  e. In resolving any Dispute, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence, and other due process. The Court is not empowered to award damages or any other monetary relief including, without limitation, attorney's fees, to any part as a result of any Dispute submitted to this process. Nothing in this Agreement limits the ability of Plaintiff to seek damages in other proceedings not subject to this Agreement.

  15. **Release and Covenant Not to Sue.** In consideration for the terms of this Agreement, Plaintiffs, and each of them, on their own behalf, and any other individual claiming rights under this Agreement including, without limitation, those employing the Dispute-Resolution Process (the "Releasing Parties"), hereby release and forever discharge City, as well as its present and former employees, agents, managers, officers, directors, council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Parties, and/or any of them, have, or ever may claim to have, as against the Released Parties, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been 2 raised in, the Action, (c) the availability of the TSS, Temporary Shelter, beds, and/or other homeless accommodations, (d) City's alleged obligation to provide and/or

fund such accommodations, and/or (e) City's alleged inability to enforce any of the Anti-Nuisance Regulations (including, without limitation, to any law that the Releasing Parties claim criminalizes a person's homeless status), against any person because of his or her homeless status (the "Released Claims").

    a. The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Parties and within the scope of the Released Claims based solely and only on the events giving rise to this Action. To effectuate the intent of the Parties, the Releasing Parties expressly agree to waive and relinquish all rights and benefits they may have under California Civil Code Section 1542, which reads as follows:

SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

    b. The Releasing Parties, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, light of action, or any light, of any kind whatsoever, within the scope of the Released Claims, and that no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Claims.

16. **Dismissal of the Action.** At the conclusion of the Court's continuing jurisdiction, Plaintiffs will take all necessary actions and file all necessary documents to effectuate dismissal of the Action, with prejudice.

17. **Settlement Payments and Attorneys' Fees.** All Parties, and all Releasing Parties, will bear their own costs, expenses, and attorneys' fees in relation to or arising out of (a) the Action, (b) the

1  resolution, negotiation, and settlement of the Action, including the negotiation of this Agreement, and

2  (c) the implementation of this Agreement, including the resolution of any Dispute.

3      18.    **Non-Admission of Liability.** By entering into this Agreement, City admits no liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein constitutes an admission by City as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made in the Action. City entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, are inadmissible in evidence and cannot be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

    19.    **Knowing and Voluntary.** This Agreement is an important legal document and, in all respects, has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, before signing within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, before signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

    20.    **Entire Agreement.** This Agreement constitutes the entire agreement between Plaintiffs and City regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between Plaintiffs and City relating to the subject matter hereof. Plaintiffs and City each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement,

# Minimum Standards for Emergency Shelters

**Instructions:** Place a check mark in the correct column to indicate whether the property is approved or deficient with respect to each standard. A copy of this checklist should be placed in the shelter's files.

| Approved | Deficient | Standard (24 CFR part 576.403(b)) |
|---|---|---|
| | | 1. *Structure and materials*:<br>a. The shelter building is structurally sound to protect the residents from the elements and not pose any threat to the health and safety of the residents.<br>b. Any renovation (including major rehabilitation and conversion) carried out with ESG assistance uses Energy Star and WaterSense products and appliances. |
| | | 2. *Access*. Where applicable, the shelter is accessible in accordance with:<br>a. Section 504 of the Rehabilitation Act (29 U.S.C. 794) and implementing regulations at 24 CFR part 8;<br>b. The Fair Housing Act (42 U.S.C. 3601 et seq.) and implementing regulations at 24 CFR part 100; and<br>c. Title II of the Americans with Disabilities Act (42 U.S.C. 12131 et seq.) and 28 CFR part 35. |
| | | 3. *Space and security*: Except where the shelter is intended for day use only, the shelter provides each program participant in the shelter with an acceptable place to sleep and adequate space and security for themselves and their belongings. |
| | | 4. *Interior air quality*: Each room or space within the shelter has a natural or mechanical means of ventilation. The interior air is free of pollutants at a level that might threaten or harm the health of residents. |
| | | 5. *Water Supply*: The shelter's water supply is free of contamination. |
| | | 6. *Sanitary Facilities*: Each program participant in the shelter has access to sanitary facilities that are in proper operating condition, are private, and are adequate for personal cleanliness and the disposal of human waste. |
| | | 7. *Thermal environment*: The shelter has any necessary heating/cooling facilities in proper operating condition. |
| | | 8. *Illumination and electricity*:<br>a. The shelter has adequate natural or artificial illumination to permit normal indoor activities and support health and safety.<br>b. There are sufficient electrical sources to permit the safe use of electrical appliances in the shelter. |
| | | 9. *Food preparation*: Food preparation areas, if any, contain suitable space and equipment to store, prepare, and serve food in a safe and sanitary manner. |
| | | 10. *Sanitary conditions*: The shelter is maintained in a sanitary condition. |
| | | 11. *Fire safety*:<br>a. There is at least one working smoke detector in each occupied unit of the shelter. Where possible, smoke detectors are located near sleeping areas.<br>b. All public areas of the shelter have at least one working smoke detector.<br>c. The fire alarm system is designed for hearing-impaired residents.<br>d. There is a second means of exiting the building in the event of fire or other emergency. |
| | | 12. If ESG funds were used for renovation or conversion, the shelter meets state or local government safety and sanitation standards, as applicable. |
| | | 13. Meets additional recipient/subrecipient standards (if any). |

or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, without limitation, any purported supplements, modifications, waivers, or terminations of this Agreement, are valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement must be made by written instrument executed by each Party in order to become effective.

21. **Warranty of Authority.** Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

22. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which is considered an original but all of which constitute one agreement.

**Signatures:**

Date: 9/23/2019

Sonny Santa Ines, Mayor
City of Bellflower

Approved as to form:

Karl H. Berger, City Attorney
City of Bellflower

Approved as to from:

Carol Sobel
Attorney for *OCCW et al.*, Plaintiffs

Date: Sept. 23, 2019

Orange County Catholic Workers, Plaintiff

Larry Ford, Plaintiff

Melissa Fields, Plaintiff

Lisa Bell, Plaintiff

Gloria Shoemake, Plaintiff

Cameron Ralston, Plaintiff

Juan Garza
Mayor Pro Tem, Bellflower

_____
Richie Thomas, Plaintiff

_____
Kathie Schuler, Plaintiff

_____
Shawn Carroll, Plaintiff