```
                                    FILED
                              CLERK, U.S. DISTRICT COURT
                                  SEP 23, 2019
                              CENTRAL DISTRICT OF CALIFORNIA
                              BY: _____rrp_____ DEPUTY
```

**FILED NUNC PRO TUNC**

1  **BROOKE WEITZMAN** SBN 301037
2  **WILLIAM WISE** SBN 109468
   **ELDER LAW AND DISABILITY RIGHTS CENTER**
3  1535 E 17th Street
4  Santa Ana, California 92705
   t. 714-617–5353
5  e. bweitzman@eldrcenter.org
6  e. bwise@eldrcenter.org

7  **CAROL A. SOBEL** SBN 84483
8  **MONIQUE ALARCON** SBN 311650
   **LAW OFFICE OF CAROL A. SOBEL**
9  725 Arizona Avenue, Suite 300
10 Santa Monica, California 90401
   t. 310-393-3055
11 e. carolsobellaw@gmail.com
12 e. monique.alarcon8@gmail.com
13 e. avneet.chattha7@gmail.com

14 [Additional Counsel on Next Page]
15 Attorneys for Plaintiffs

16              UNITED STATES DISTRICT COURT
17    FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

18 ORANGE COUNTY CATHOLIC      | Case No.:  18-cv-00155 DOC KES
19 WORKER,                     |
20                             | SUPPLEMENTAL COMPLAINT
          Plaintiff,           |
21     v.                      |
22                             |
23 The CITY OF BELLFLOWER,     |
24                             |
          Defendant.           |

1

1  **PAUL L. HOFFMAN** SBN 71244
   **CATHERINE SWEETSER** SBN 271142
2  SCHONBRUN, SEPLOW, HARRIS & HOFFMAN
3  11543 W. Olympic Blvd.
   Los Angeles, California   90064
4  t. 310-396-0731
5  e. hoffpaul@aol.com
   e. csweetser@sshhlaw.com
6  e. cmullen@sshhlaw.com

**JURISDICTION AND VENUE**

1. As to the Supplemental Complaint, this is an action for injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 based upon the violations of Plaintiffs' rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as various federal statutory provisions. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on federal statutes and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. The Court has jurisdiction over Plaintiffs' supplemental state law claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in the Southern Division of the Central District in that the events complained of herein relate to events in Orange County.

**PRELIMINARY STATEMENT**

3. This Supplemental Complaint addresses facts relating to the CITY OF BELLFLOWER, which is located in the Southeast area of the neighboring County of Los Angeles, close to the border with Orange County. Plaintiffs incorporate all relevant facts from the First Amended Complaint as though fully set forth herein.

4. The initial phase of this case was brought against Orange County, and the City of Anaheim, the City of Orange, and the City of Costa Mesa. Plaintiffs alleged that these City defendants took actions to force unhoused people into the area of the Santa Ana Riverbed between the Santa Ana Freeway and Ball Road. The County announced the intent to push those people back into the surrounding cities without a plan for housing or shelter.

5. The Court acted to halt the proposed Riverbed evictions and required the County to provide a plan to relocate the unsheltered community living in the Riverbed in a manner that would not result in moving people to other encampments and would not produce an influx on Santa Ana, the City within the Defendant County that currently bears the brunt of caring for the unhoused population in the

County because of the concentration of County services in Santa Ana. Santa Ana is the primary location of a variety of County services, including General Relief, the courts and, significantly, the jail.

6. Subsequently, the Court directed that several hundred individuals in the homeless community at the Santa Ana Civic Center end and the individuals staying there as of the end of March be provided with appropriate alternatives.

7. The closure of these two encampments, which displaced between 1,000 and 1,500 people total, placed the focus on the lack of adequate facilities and programs to respond to the housing and homeless crisis the County faces. It also brought to the fore the failure of the cities and County to provide sufficient resources in their own communities and the consequent mobility of unsheltered persons threatened with arrest if they did not relocate from particular public spaces. These actions by local law enforcement officials have contributed to the migration of some percentage of unsheltered persons to neighboring jurisdictions to avoid contacts with law enforcement. This includes migration across city and nearby county geographic borders.

8. In the 2019 Point-in-Time Count ("PIT"), 6,860 people experiencing homelessness were identified, of which 3,961 individuals are unsheltered. About 14 percent (536) people are unsheltered in the South County cities. *See* "Everyone Counts," at [www.ocgov.com/civicax/filebank/blobdload.aspx?BlobID=92093](www.ocgov.com/civicax/filebank/blobdload.aspx?BlobID=92093). The 2017 Point-in-Time Count reported 4,792 homeless individuals in Orange County. The 2019 Point-in-Time Count is an increase of approximately 30 percent over the 2017 PIT. The portion of unsheltered people rose to 35 percent in 2019.

9. Over decades, the primary response of government entities has been to invest in approaches that address the visible presence of homeless people as a blight, without significantly reducing the number of residents on the street each night. These approaches include criminalizing homelessness by arresting homeless individuals for loitering, making it illegal to sleep in public places at night, seizing

and destroying homeless people's property, and engaging in a pattern of warrantless stops and interrogations. The identical practices have been repeatedly challenged and enjoined by judges of the Central District in Los Angeles and the Ninth Circuit, uniformly rejecting these practices criminalizing homelessness as a violation of the First, Fourth, Eighth and Fourteenth Amendments.

10. In addition, the directives issued by the United States Interagency Council on Homelessness ("USICH"), composed of nineteen federal cabinet and agency heads charged with organizing federal efforts to end homelessness, have instructed that the criminalization of homelessness is neither a lawful nor an effective approach to addressing the issue. The most recent USICH report, "Ending Homelessness for People Living in Encampments," is directly on point.

11. Specifically, the USICH underscored that "forced dispersal" of homeless persons is inappropriate and undermines the goal of providing services to homeless individuals. The USICH underscored the importance of "intensive and persistent outreach and engagement."

12. The organizational Plaintiff Orange County Catholic Worker ("OCCW"), along with several individual plaintiffs, filed this action and sought a temporary restraining order against the closure of the riverbed in Orange County without a plan for relocating those living there. The Court initially denied the request but set a hearing on February 13, 2018. Almost immediately after the Court's order issued, the County announced plans to immediately close the riverbed and arrest anyone there.

13. Plaintiffs then sought an emergency order to stay the riverbed closure until the scheduled February 13, 2018 hearing. The Court issued the requested relief. At the hearing on February 13, County elected officials informed the Court that they would now locate placements for additional emergency shelters on County property. In addition, the County committed to a process to assess the needs of persons living on the riverbed and place people at shelters, veterans

facilities, recuperative care, residential substance abuse programs and similar facilities, as well as time-limited motel stays, depending upon individual situations.

## THE LACK OF AVAILABLE SHELTER

14. The available shelter space in Orange County is woefully inadequate both in number and accessibility to meet the needs of the unsheltered population and this has contributed to the migration of unsheltered individuals within Orange County and, on information and belief, to neighboring cities in adjacent counties. By Orange County's own estimates, almost 4,000 people lacked any shelter in the 2019 PIT. Orange County opened the first and only year-round emergency shelter, the Courtyard, in 2016. Now it is at more than double its original announced capacity, exacerbating barriers for disabled individuals staying there. On a typical night, over 400 people sleep in very close quarters in the repurposed bus terminal without walls. Until recently, the only way to get into the Courtyard was to show up and see if a bed was available that night, and because it is not near any other shelter, a person who did so and found the Courtyard was full had no choice but to sleep outside because it was too late to find transportation and get to any other shelter before it closed for the night.

15. The first year-round transitional shelter, Bridges at Kraemer Place, started operating with approximately 100 beds, and expanded to 200 beds in mid-2018.[1] Under immense pressure, the County opened the first 100 beds months earlier than originally anticipated in an open warehouse in May 2017. The second hundred beds also opened earlier than originally planned.

16. Neither the Courtyard nor Bridges are adequate to meet the needs of the unsheltered population on multiple bases. The two emergency shelters at the local National Guard armories are similarly inadequate and usually only operate

---

[1] https://www.ocregister.com/2016/09/15/mercy-house-to-operate-year-round-anaheim-homeless-shelter/

during winter months, although Governor Brown approved extending use of the armories for several additional months in 2018 to deal with the crisis created by the closure of the Riverbed and Civic Center encampments. The Santa Ana Armory opened on October 30, 2017 and was scheduled to close on April 15, 2018; the Fullerton Armory Shelter opened December 1, 2017 and was also scheduled to close on April 15, 2018. For 2018, the Santa Ana Armory opened at the beginning of December. In 2018, the Fullerton Armory opened with significant restrictions that make it less practical as an alternative. *See* Orange County Register, October 25, 2018: "Orange County's homeless shelter program expected to continue at armory sites this winter, with possible restrictions in Fullerton." For 2019, only the Fullerton armory is currently expected to be operational. The Santa Ana armory will not open because Santa Ana has elected to open its own year-round shelter, The Link.

17. At the time this action was filed, the only other public shelter in the County was the Alternative Sleeping Location (ASL) in the Defendant City of Laguna Beach. It opened in 2009 in response to a lawsuit filed several years ago, challenging the City's enforcement of anti-camping laws. It is operated through a service provider contract with the Friendship Shelter. The ASL prioritizes space for people who were residents of Laguna Beach prior to a specific date. Non-residents are accommodated if no Laguna Beach resident claims the beds. According to the County's Homeless Management Information System (HMIS), of 401 people who stayed there in 2017, only 12 percent reported Laguna Beach as their last permanent address.

18. In addition to the Courtyard, Bridges and the ASL, there are additional public shelters that were created in response to the *OCCW* litigation. These include two shelters scheduled to open in the Orange County North Service Provider Area ("SPA"), one in Placentia and one in Buena Park. The supplemental Defendant City of BELLFLOWER is located in close proximity to the two North SPA shelters.

# PARTIES

**PLAINTIFF:**

**Orange County Catholic Worker**

19. Plaintiff Orange County Catholic Worker ("OCCW") sues on its own behalf and on behalf of unsheltered persons in the region served by the organization. OCCW operates a community at Isaiah House in Santa Ana. In furtherance of its mission, Isaiah House of the Orange County Catholic Worker has served poor people with dignity since 1987, providing meals for the homeless, shelter, bags of food and clothing, showers, and emergency assistance. As part of their community with the Catholic Worker, members of the group assist homeless communities in the parks and public areas of nearby cities almost every day. They engage with each person they meet and help them connect with available resources. On some days they deliver food and on others they bring books, tents and other basic necessities for an unsheltered person.

20. Carrying out the mission of the Catholic Worker, each time government entities relocate a homeless population, OCCW organizes volunteers and resources to help people move their belongings. As each such action is taken by the government, the Catholic Worker has had to shift priorities to respond to these measures and provide additional resources for homeless individuals targeted.

21. The OCCW assists women who come to Isaiah House from the Bridges shelter, the Courtyard shelter, and other facilities. Sometimes, OCCW can provide a bed for a person. Other times, when all of the beds are already taken, unsheltered people sleep in tents on the OCCW property.

22. The work of Plaintiff OCCW is significantly impacted by enforcement of anti-camping and related laws throughout the County and in nearby municipalities in neighboring counties. People charged with violating municipal laws based on their homeless status anywhere in Orange County are usually transported to Santa Ana to the County jail, no matter where they are arrested in

the County. In addition, when enforcement occurs in neighboring counties, unhoused individuals migrate to Orange County for the services available there.

**DEFENDANT:**

23. Defendant BELLFLOWER is a municipal entity duly organized under the laws of the State of California and with the capacity to sue and be sued. The policies, of the City of BELLFLOWER, include but are not limited to various City Code section(s) that have the effect of criminalizing the status of homelessness in the city.

24. Plaintiff OCCW, on behalf of the unsheltered individuals it represents, alleged that the City of BELLFLOWER, by and through its employees and upon its behalf by members of the Los Angeles County Sheriff's Department, violated Plaintiff's rights by enforcing various trespass, presence, and/or anti-camping regulations (collectively, "Public Safety Laws") at times when, according to Plaintiff, there were no immediately accessible and appropriate beds available to them in the jurisdiction.

25. The City of BELLFLOWER believes that it is in the City's best interest to submit to the jurisdiction of the United States District Court in this action to address the needs of the unsheltered population within the City despite disputing the allegations of the Supplemental Complaint.

**FIRST CAUSE OF ACTION**
**Violation of Eighth and Fourteenth Amendments (42 U.S.C. §1983)**
**Art. 7, §17 California Constitution (Cruel and Unusual Punishment)**

26. Plaintiff OCCW realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

27. The acts and omissions of Defendant CITY, as described herein, violate the constitutional rights of homeless individuals to be free from actual or threatened cruel and unusual punishment. By virtue of their status as unhoused, and the absence and insufficiency of shelter or housing in the region, unsheltered

9

persons have no way to comply with the laws Defendant has enforced and threatens to enforce against them.

28. Plaintiff OCCW further alleges that it violates the substantive due process rights of homeless individuals to threaten them with citation and arrest for being present on City property when the property is closed to the public. Enforcement of City anti-camping laws against homeless individuals, would result in migration of unsheltered persons into surrounding cities such as Santa Ana, and increasing the burden on Santa Ana to address homelessness throughout the region.

29. The citation and threats of citation for behavior such as camping on public property when there is inadequate shelter available violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 7, §17 of the California Constitution.

30. The Defendant has a custom, policy, and/or practice of enforcing its ordinances, or threatening to enforce its ordinances, that punish homeless persons for the unavoidable behavior in public in violation of the CITY's camping ordinances.

31. An actual controversy exists between Plaintiff and the CITY regarding the threat of citation if homeless persons remain on public property after being told that they may not "camp" there. Plaintiff desires a judicial determination of the rights and duties and a declaration as to Defendant's constitutional obligations.

**SECOND CAUSE OF ACTION**
**Violation of First and Fourth Amendment; 42 U.S.C. 1983**
**(Against All Defendants)**

32. Plaintiff OCCW realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

33. Defendant subjects individuals who appear to law enforcement to be homeless to detention and directs them to move along from public places where they have a right to be pursuant to the First Amendment. The stops and subsequent

1  detentions and interrogations are unlawful seizures as they are done without
2  reasonable suspicion or probable cause to believe that the individuals had or were
3  about to commit a crime other than a purported violation of a law necessitated by
4  their status as homeless individuals and lack of available shelter.

5        34.    Unsheltered persons, as everyone else, have a First Amendment right
6  to be present in a public space, to "loiter" in a public space for no reason and not
7  to be excluded from that space by threat, intimidation or coercion because they are
8  homeless.  Without a reasonable alternative place where they can be during the day
9  and sleep at night, homeless persons have no choice but to be on public property
10 during the day with their property and to "camp" on the same property at night.

11       35.    As a direct consequence of Defendant's past and threatened future
12 actions, Plaintiff and the individuals it represents have suffered and will continue
13 to suffer a violation of constitutional rights as a result of Defendant's policies,
14 practices and customs.

## THIRD CAUSE OF ACTION
## CALIFORNIA CIVIL CODE Sec. 52.1 ("Bane Act")

17       36.    Plaintiff OCCW realleges and incorporates the allegations set forth in
18 the preceding paragraphs as though fully set forth hereat.

19       37.    The Defendant's conduct, as described herein, interferes by threats,
20 intimidation, or coercion, or attempts to interfere by threats, intimidation, or
21 coercion, with the exercise and enjoyment of the rights of unsheltered individuals
22 the Plaintiff OCCW represents as secured by the United States Constitution or laws
23 of the United States, and the Constitution or laws of the state of California.

24       38.    Defendant engaged in conduct, including coercive and intimidating
25 tactics, directed at unsheltered individuals in the CITY aimed at moving them out
26 of the CITY if they could not be accommodated at the local shelters, if
27 any.Defendant's actions are the proximate cause of the harm suffered by the
28

unsheltered population, as well as the failure to fulfill the statutory obligation to provide for homeless individuals within their respective jurisdictions.

39. Defendant's continued unlawful acts against and affecting the Plaintiffs is ongoing and will continue unless and until the Court enjoins this conduct. As a direct and proximate result of Defendant's actions, and those of its contractors and agents, Plaintiffs and the unsheltered persons they represent, experienced and continue to experience direct injury, including pain and suffering.

## FOURTH CAUSE OF ACTION
### Government Code Section 11135

40. Plaintiff OCCW realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

41. On information and belief, Plaintiff alleges that the CITY of BELLFLOWER and or its contract LEO, the Los Angeles County Sheriff's receives funding from the State and Federal governments, directly or indirectly through the County of Orange in monies provided to operate the ASL.

42. California Government Code section 11135 provides that:
> No person … shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.

43. The Defendants, and each of them, are entities subject to the requirements and prohibitions of section 11135 in that they receive public monies and financial assistance from state agencies and other state fund.

44. The term "disability" applies to both mental, medical and physical disabilities as defined in California Government Code section 12926. Plaintiff

alleges that a significant number of those individuals who are subject to the policies challenged herein, and who are not able to enter the ASL, are disabled within the meaning of the statutes cited herein.

45. As a direct and proximate result of Defendants' actions, and those of its contractors and agents, Plaintiffs and the Plaintiff Class experienced and continue to experience direct injury, including pain and suffering.

**WHEREFORE**, Plaintiffs pray as follows:

1. For an order enjoining and restraining Defendant BELLFLOWER from enforcing "Anti-Camping" and related municipal ordinances unless and until shelter beds are available equal to at least 60 percent of the unhoused persons in the CITY.

2. For an order enjoining and restraining Defendant BELLFLOWER from threatening homeless persons with arrest or citations if they continue to be present in public space in that city when there are not available shelter beds for at least 60 percent of the unhoused population.

3. For a declaratory judgment that Defendant BELLFLOWER's policies, practices and conduct as alleged herein violate the rights of unsheltered persons under the United States and California constitutions and the laws of California;

4. For such other relief as the Court deems just and proper.

Dated: September 22, 2019     Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL
ELDER LAW & DISABILITY RIGHTS CENTER
SCHONBRUN SEPLOW HARRIS & HOFFMAN

    /s/ Carol Sobel
By: CAROL A. SOBEL
Attorneys for Plaintiffs