James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Gary S. Kranker, SBN 146426
gsk@jones-mayer.com
Krista MacNevin Jee, SBN 198650
kmj@jones-mayer.com
JONES & MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendant: City of Whittier

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY CATHOLIC WORKER, an unincorporated association; LISA BELL, SHAWN CARROLL, MELISSA FIELDS, LARRY FORD, CAMERON RALSTON, KATHY SCHULER, GLORIA SHOEMAKE, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ORANGE COUNTY, the CITY OF ANAHEIM, the CITY OF COSTA MESA, and the CITY OF ORANGE,<br><br>Defendants. | Case No. 8:18-cv-00155 DOC (JDE)<br><br>*Hon. David O. Carter*<br><br>**SETTLEMENT AGREEMENT** |

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between the City of Whittier, a California Charter city and municipal corporation ("City"), and Orange County Catholic Worker ("OCCW"), an unincorporated association acting by and through its designated representatives XXX (collectively, "Plaintiff"). The parties to this Agreement are individually referred to as a "Party" and collectively as the "Parties."

## RECITALS

The Parties agree that this Agreement is entered into with reference to the following:

A. On January 29, 2018, Plaintiff filed this Action entitled Orange County Catholic Worker, et al. v. Orange County et al., California Central District Case No. 8:18-cv-00155-DOC-JDE (the "Action").

B. OCCW is an unincorporated association dedicated to the service and care of the poor in the County of Orange; OCCW represents and provides services to individuals who are homeless — as defined by applicable law residing in the County of Orange.

C. On _____, Plaintiff will be filing a Supplemental Complaint (the "Complaint") alleging that City violated Plaintiff's rights by enforcing various trespass, presence, property, living in a vehicle and/or anti-camping regulations (collectively, "Public Safety Laws") in violation of the constitutional and statutory rights of people experiencing homelessness in the City at times when, according to Plaintiff, there were no immediately accessible and appropriate beds available to them in either the City of Whittier and/or the County of Los Angeles. More specifically, the Supplemental Complaint alleges that the "Public Safety Laws" enforced by City, in whole or in part, violate the First, Fourth, Fourteenth Amendments, as well as statutory rights pursuant to 42 U.S.C. § 12101 et seq., and analogous provisions of the California Constitution and

statutory laws.

D.   City disputes Plaintiff's factual allegations and legal contentions as set forth in the Complaint.

E.   The Complaint alleges the following claims for relief against City: (1) violation of the Eight and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983) and Article VII, section 17 of the California for alleged "cruel and unusual punishment"; (2) violation of the First and Fourth Amendments to the U.S. Constitution (42 U.S.C. § 1983); (3) violation of the right to due process of law under the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983); (4) violation of Title II and III of the ADA (42 U.S.C. § 12101 et seq.); (5) violation of California Civil Code § 52.1; (6) violation of California Government Code § 815.6; (7) violation of California Civil Code § 54 et seq. (the California Disabled Persons Act); and (8) violation of Government Code § 11135. City disputes each of these claims for relief in its entirety and disputes Plaintiff's underlying contentions and theories.

F.   Without admitting any wrongdoing, liability or legal violations on the part of City, without conceding the validity of any of Plaintiffs legal theories or claims, and for the sole purpose of preemptively, economically, and efficiently resolving the Action (and any claims relating thereto) as to City, the Parties now desire to enter into this Agreement on the terms set forth below.

## TERMS

The Parties agree to the following to resolve the Action (and any claims related thereto):

1.   **Order regarding Continuing Jurisdiction and Effective Date.** Following the full execution of this Agreement, the Parties will file with the Court in the Action the "[Proposed] Order re Settlement and Continuing Jurisdiction" attached as Exhibit "A," and incorporated by reference (the "Order"). The Parties' obligations in this Agreement and the releases contained below become effective

and operative on the date on which the Order is signed and entered by the Court (the "Effective Date") and is contingent upon the Court's signing and entry of the Order.

2. **Recitals.** The Recitals are incorporated into and made a material part of the terms and representations of this Agreement.

3. **Definitions.** Unless the contrary is stated or clearly appears from the context, the following definitions will govern the construction of the words and phrases used in this Agreement:

"City" means the City of Whittier, its Police Department, employees and independent contractors.

"Disabled Person" and "Disability" have the same meaning as set forth in 42 U.S.C. § 12101, et seq.

"Homeless Person" has the same meaning as set forth in 42 U.S.C. § 11302.

"Homeless Population" means the number of unsheltered homeless persons residing within City's jurisdiction as determined by City's most recent actual count during the term of this Agreement. At the time of entering this Agreement, City's Homeless Population was approximately 286 Homeless Persons (as counted in the final Los Angeles Homeless Services Authority ("LAHSA") 2019 Point-in-Time Count), of which 54 were sheltered.

"Outreach and Engagement" or "O&E" means efforts made by persons trained in engaging in clinical assessments of individuals with disabilities as necessary to determine an appropriate placement with a reasonable accommodation of the individual's disability. O&E personnel may include City employees, including members of the City's Police Department, homeless liaison, and trained persons from the outreach organizations employed by or on behalf of the City.

"Personal Effects" means personal property consisting of, but not limited to, the following items:

A. Medication, personal documents and papers, identification, prescriptions, eyeglasses, medical devices such as insulin and blood pressure monitors, disability assistive devices;

B. Sleeping bags, bed rolls and blankets;

C. Functional tents and tarps to cover tents as protective covers for the elements;

D. Clothes;

E. Bicycles;

F. Musical instruments;

G. Suitcases, backpacks, and carts used to transport property;

H. Food for personal consumption and utensils;

I. Personal electronic equipment, including computers, radios, cell phones and cell phone charging equipment;

J. Pet supplies;

K. Personal hygiene items; and,

L. Such additional personal property identified in best practices drafted in accordance with this Agreement.

"Restricted Area" means any public right-of-way and public property including, without limitation, parks at times when they are not open to the public, parking lots, City Library during hours when the buildings are closed to the public, water utility property, solid waste disposal property, redevelopment property, railroad property, CalTrans property County and State properties at times when they are not open to the public, County Flood Control District Property (including Leffingwell Creek, La Mirada Creek and San Gabriel Riverbed) and the "Greenway Trail" as defined by Whittier Municipal Code ("WMC") § 12.42.020 M-O. Should the City of Whittier chose to enforce in Cal Trans property, the City will comply with the settlement requirements to be set out in *Sanchez v. California Dept. of*

*Trans.*, Alameda Superior Court Case No:, RG 16842117 (June 2019); "Temporary Shelter" means facilities with sleeping accommodations, the primary purpose of which is to provide temporary shelter for Homeless Persons at no charge. City will provide Temporary Shelter in accordance with this Agreement to accommodate at least 60% of its unsheltered Homeless Population which is herein acknowledged to be 139 individuals based on the 2019 PIT. The Temporary Shelter will operate in a secular manner. City may, after utilizing best practices that include due process considerations in accordance with applicable law, deny Temporary Shelter to Homeless Persons who engage in voluntary actions which result in a public nuisance or a threat to the public health, safety, general welfare, or quiet enjoyment of the Temporary Shelter Site or nearby public property. If the alleged "voluntary" actions of the individual are a result of a disability, the Homeless Persons will not be denied Temporary Shelter without an alternative appropriate placement identified.

"Temporary Shelter Site" or "TSS" means the geographic site that may be agreed to between the parties pursuant to Section 13. The TSS will include facilities to accommodate human habitation including, without limitation, sanitary facilities, designed to protect public health and safety, all in accordance with attached Exhibit "A," which is incorporated by reference.

4. **Construction of Temporary Shelters at the TSS.** The TSS will be the geographic location for City's Temporary Shelters as contemplated by this Agreement. City will construct or cause to be constructed Temporary Shelters with sufficient beds and facilities to accommodate, 60% of City's total Homeless Population of 286 individuals as set out by the 2019 PIT, adjusting for the expanded 45 available placements at First Day Whittier, which is herein acknowledged to be 139 individuals for any overnight stay. Any shelter used by the City to place Homeless Persons and included in the City's minimum number of

60% will provide separate spaces for men and women, ensuring privacy for women, and couples and shall permit emotional support animals and will meet all Emergency Shelter standards established by the Department of Housing and Urban Development (HUD) and any applicable state regulations on minimum shelter standards, all requirements of the Los Angeles County Department of Health for congregate shelters, as well as the terms of this agreement. The types of beds and facilities provided by City must be reasonably designed to shelter Homeless Persons from the elements but need not be permanent. For example, cots and tents will meet the requirements of this Agreement if they meet the requirements of the ADA and are a reasonable accommodation for a specific individual. City will use its best effort to ensure construction of the Temporary Shelter by the earliest practicable date with a goal of making best efforts to complete construction and commence operations for the TSS not later than six months after this agreement is signed.

5. **Operation of Temporary Shelters.** City may ensure that Temporary Shelters be operated by referral only giving priority to City's Homeless Population. The City will permit referral by the above referenced and approved O&E personnel, which may include City employees, homeless liaison, and trained persons from the Whittier Police Department and outreach organizations employed by or on behalf of the City. The City may assess "residency" based on, but not limited to, the following criteria and may require evidence that an individual meets said criteria:

    a. Individual(s)' presence in the City for more than 12 months and sleeping in a place not meant for human habitation, including evidence that the individual has been cited for Public Safety Law violations in the preceding 12 months in the City;

    b. Individual(s)' immediate family member residing in the City;

    c. Individual(s) became unhoused while previously living in the

City;

  d. Individual(s) with self or at least one family member currently enrolled in a school in the City.

  e. Other criteria / documentation as identified by the City.

The City may also establish admission requirements that are developed in accordance with Section 13 that, at a minimum, include protections for Homeless Persons to prevent arbitrary and capricious removal from the TSS, or any other facility utilized by the City to meet its obligations under this Agreement, and, additionally, ensuring that reasonable accommodations are provided for Homeless Persons with a disability in accordance with applicable law. Referrals to the Temporary Shelter are available only to City and prioritized for Homeless Persons demonstrating they are part of City's Homeless Population as defined above. Temporary Shelters will be operated on a secular basis and in full compliance with all applicable federal and state non-discrimination laws including, without limitation, California Government Code § 11135. City may establish operational policies and procedures that limit personal property present at the TSS and in Temporary Shelters to only Personal Effects belonging to a Homeless Person. The TSS Operator, currently the Salvation Army, shall set the amount of Personal Effects which can be brought into the TSS by each Homeless Individual who is housed at the TSS and protocols for storing any excess property.

  6. **Funding of Temporary Shelter Construction and Operation.** City is solely responsible for identifying and securing monies required to fund construction, operation, and maintenance of the Temporary Shelters and the TSS. Nothing in this Agreement obligates Plaintiffs to contribute to such funding.

  7. **Whittier General Plan.** City may utilize this Agreement and its construction/operation of Temporary Shelters as part of updating its Housing Element in accordance with Government Code § 65583, et seq. Plaintiffs may challenge any breach of this Agreement, or that this Agreement is insufficient to

meet the Housing Element requirements of Government Code § 65583 et seq. with respect to homeless individuals only.

8. **City Municipal Code.** Plaintiffs allege that the City's Public Safety Laws in general, including Whittier Municipal Code § 12-42 et seq. are not consistent with applicable decisional law in the Ninth Circuit and the Central District of California concerning, *inter alia*, the protected constitutional interest of unsheltered individuals in their property in public places. The parties acknowledge that City received a demand letter regarding the lawfulness of some of these provisions from a non-profit legal organization. Nothing in this agreement may be construed to represent Plaintiff's acquiescence in, or approval of, said ordinance(s), or in any way to suggest that the issues raised in the demand letter are without basis in whole or in part. Nothing in this agreement prohibits Plaintiffs from bringing an action to enjoin those sections of the Whittier Municipal Code, including but not limited to § 12-42 et seq. which Plaintiffs deem to be unconstitutional, or from joining with others to do so.

Nothing in this agreement may be construed to represent the City's opinion regarding the status of said ordinance(s), or in any way to suggest that the issues raised in the demand letter have any basis in whole or in part.

9. **City Maintenance Project.** Any maintenance, remediation, or cleaning projects conducted by the City shall be consistent with the requirements approved by the federal courts to protect the property interests of unhoused persons. In addition, City will advise Plaintiff's counsel when a project is expected to be submitted to City's City Council (or appropriate City department) for approval that may result in displacement of Homeless Persons. Such project may be subject to the Dispute-Resolution process of this Agreement. Notwithstanding the foregoing, nothing precludes City from implementing an emergency project necessary to abate an immediate and significant health and safety situation. Absent exigent circumstances, City will provide at least 72-hours

notice to affected Homeless Persons and provide notice of a site to which they can relocate, as well as storage, at no charge, for personal property in an area that is accessible to Homeless Persons to reclaim their personal property in accordance with applicable law.

**9. Enforcement of "Public Safety Laws".** City will establish the following policies and procedures to implement City's trespass, property, presence, anti-camping, living in a vehicle, and park closure regulations (the "Public Safety Laws defined in Recitals "C" above) and any analogous provision of local or State law applied against Homeless Persons within its jurisdiction:

    a. No enforcement of the "Public Safety Laws" will occur or be threatened until the City has adequate and appropriate available placements for a minimum of 60% of the number of unsheltered individuals in the 2019 PIT. Even after the City creates within the City adequate and appropriate placements for a minimum of 60% of the number of unsheltered individuals in the then-current PIT, the City may not enforce its Public Safety Laws unless there is an adequate and appropriate available placement for the unsheltered individual suspected of violating a Public Safety Law.

    b. Absent exigent circumstances, any enforcement of the Public Safety Laws against a Homeless Person will first be preceded by contacts with Outreach and Engagement personnel.

    c. O&E personnel will first work with the Homeless Person to offer an appropriate and available placement at the TSS or other shelter in the City. If there is an adequate and appropriate placement available outside of the City, City may consider this offer an "available bed" for purposes of enforcing the Public Safety Laws so long as the placement is a reasonable accommodation of a disability; provides placement for couples to remain together; does not impede the individual's ability to access medical appointments, outpatient programs in which the individual may be enrolled, work, and other support services and systems; and

provides placement with an emotional support animal. If the Homeless Person accepts the offered placement, the O&E personnel will provide reasonable transportation to the placement and will provide the Homeless Person the necessary reasonable transportation to and from scheduled appointments or work including, without limitation, bus passes, when transportation is necessitated by such placement.

    d.   City may, but is not required to, designate a person or organization to act as a homeless ombudsman to ensure effective and appropriate placement determinations in accordance with this section. The designation of a homeless ombudsman is in addition to, not in lieu of, the requirement to precede any enforcement of Public Safety Laws with outreach by O & E personnel.

    e.   If a Homeless Person declines the offered placement in any facility including the TSS, City may proceed with enforcing its Public Safety laws in its discretion. Notwithstanding the preceding sentence, for any individual who declines the offered placement City will first give the person a warning and an opportunity to leave the location for an identified safe location before engaging in lawful enforcement. Provided the individual relocates upon warning to a designated location, he or she will not be subject to lawful enforcement for violating any of the Public Safety Laws. If the individual fails to relocate to another location as directed, then the individual may be subject to lawful enforcement. City will advise the individual of the Dispute-Resolution process described below. No individual who asserts or presents a disability will be cited or taken into custody for a purported violation of this section unless there is an appropriate placement for that person and a qualified outreach worker is available to interface with the individual.

    f.   If a violation arises from an individual's presence in a Restricted Area and if there is no immediately available placement for that person, City will advise the individual of a location he or she may move to and avoid lawful enforcement for

violating the Public Safety regulations until an appropriate and immediately available bed is made available to the individual. The requirements of this Section apply until (i) the date on which *Martin v. City of Boise*, 902 F.3d 1031 (9th Cir. 2018) is no longer applicable law within the jurisdiction of the Ninth Circuit, or (b) the expiration of the Court's jurisdiction.

g. City will not engage in lawful enforcement of its Public Safety regulations as against any Homeless Person for violating applicable law based upon an alleged obstruction of public property unless that individual, either individually or in conjunction with personal property, actually interferes with the intended use of the public property, including but not limited to, violations of ADA access requirements, and declines to move the personal property creating obstruction in the public right of way after being requested to do so.

**10. No Admission.** Nothing in this Agreement constitutes an admission by City that its current policies and procedures for enforcement of Public Safety Laws are either (a) different from those set forth in this Agreement; or (b) in any way legally inadequate, or a concession by Plaintiff that they are legally adequate.

**11. No Guarantee.** Nothing in this Agreement constitutes a promise, representation, or warranty by City that any number of beds will be available to any particular Homeless Person at any time. The lack of availability of any appropriate and immediately accessible bed for any person or persons at any time may impact the ability of City to enforce or punish a purported violation of Public Safety Laws regulations based upon an individual's status as a Homeless Person. The failure of City to construct and operate Temporary Shelters to reasonably accommodate City's Homeless Population may be raised by the Court under the Dispute-Resolution in this Agreement.

**12. Facial Challenges to Anti-Nuisance Regulations.** Nothing in this Agreement limits Plaintiffs from raising facial or as-applied challenges to City's Public Safety Laws on constitutional or statutory grounds.

13. **Best Practices.** The Parties will meet and confer to draft best practices that will implement this Agreement in a practical manner and in accordance with applicable law. To the extent possible, the City will implement the Standards of Care developed in *OCCW*.

14. **Dispute Resolution.** The Court will retain jurisdiction over the Action until the date that is four, or (if automatically extended) eight, years from the Effective Date (the "Termination Date") for purposes of (a) overseeing implementation of this Agreement and (b) implementing and presiding over the dispute-resolution process (the "Dispute-Resolution Process") to be established by the Court and to which Plaintiff and City consent and agree:

   a. Except as expressly identified: in this Agreement or as may be modified by the Court, or the Parties with the Court's consent, during the four-year period of the Court's continuing jurisdiction this Dispute-Resolution Process will apply to adjudicate any and all disputes arising out the shelter or enforcement including whether a placement is available and appropriate (a "Dispute"). The Dispute-Resolution Process does not apply to any dispute regarding an individual's violation of laws other than the Public Safety Laws and this Agreement. Unless terminated by either party at least 30 days before the four-year anniversary date of this Agreement, the Dispute-Resolution Process, and the Court's ongoing jurisdiction, will renew for an additional four-year period, for a total of eight years.

   b. Should a Dispute arise, the parties to that Dispute will first attempt to meet and confer informally with the other side to resolve the matter in good faith. Such attempt will at least involve (a) a communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy and providing any available evidence in relation thereto; and (b) a

discussion either in person or by telephone seeking to resolve the Dispute.

c. If the parties to a Dispute are unable to resolve it within two court days after it is first informally raised, any party to the Dispute may request a hearing with the Court under the standards and processes to be set by the Court and the Court will have jurisdiction to resolve that Dispute. If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by the Court.

d. Except as set out in this Agreement, hereinabove, the fact that a person initiated this Dispute-Resolution Process does not affect City's right to enforce any law against that person including issuing citations. If enforcement action is taken, the City will inform the Homeless Person of the dispute resolution problem and provide contact information for the Elder Law and Disability Rights Center. If the individual does not have access to a phone, O&E will assist them to contact the ELDR Center. If the individual initiates the Dispute-Resolution Process, City agrees that no custodial arrest will subsequently be made for violating any Public Safety Law arising from an individual's status as a Homeless Person until the Dispute-Resolution Process is concluded. Once the Dispute-Resolution Process is concluded regarding an issue, depending upon the outcome of that process, City is not required to complete a subsequent Dispute-Resolution Process regarding the same issue and the same individual before a custodial arrest where the individual does not comply with a warning or leave once a citation is issued provided City complies with the Court's determination of that issue. The phrase "same issue" refers to an issue determined by the Court in a Dispute-Resolution Process

where the individual's objections, including any claim of alleged disability, physical limitations, and the offered bed are substantially similar for purposes of determining whether the individual's disability or other objection is being reasonably accommodated. In circumstances involving citation for violating any Public Safety Law, the Court may issue an order directing City to stay the filing of formal charges against a Homeless Person until the Dispute-Resolution Process is concluded for that Dispute. City agrees not to contest such a request for a brief stay of the filing of charges while the dispute is being reviewed by the Court. Should a Homeless/Collaborative Court or similar non-criminal resolution process be established in Los Angeles County, the City agrees to refer the initial formal charges against a particular individual for a violation of a Public Safety Law to the Homeless/Collaborative Court or similar non-criminal process in the first instance to obviate the adverse impact of criminal charges on the ability of people experiencing homelessness to obtain or qualify for housing, jobs and services, and to expand the ability of a cited individual to connect with available services and treatment. For any individual the City takes into custody for a violation of a Public Safety Law resulting from the lack of appropriate shelter/housing, the City will direct the individual to LAHSA.

e. In resolving any Dispute, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence, and other due process. The Court is not empowered to award damages or any other monetary relief including, without limitation, attorney's fees, to any party as a result of any Dispute submitted to this process. Nothing in this Agreement limits the ability of Plaintiff to seek damages in other

-15-
SETTLEMENT AGREEMENT

proceedings not subject to this Agreement.

15. **Release and Covenant Not to Sue.** In consideration for the terms of this Agreement, and except as set forth hereinabove, Plaintiffs, and each of them, on their own behalf, and any other individual claiming rights under this Agreement including, without limitation, those employing the Dispute-Resolution Process (the "Releasing Parties"), hereby release and forever discharge City, as well as its present and former employees, agents, managers, officers, directors, council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Parties, and/or any of them, have, or ever may claim to have, as against the Released Parties, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, (c) the availability of the TSS, Temporary Shelter, beds, and/or other homeless accommodations, (d) City's alleged obligation to provide and/or fund such accommodations, and/or (e) City's alleged inability to enforce any of the Public Safety Laws (including, without limitation, to any law that the Releasing Parties claim criminalizes a person's homeless status), against any person because of his or her homeless status (the "Released Claims").

    a. The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Parties and within the scope of the Released Claims based solely and only on the events giving rise to this Action. To effectuate the intent

   of the Parties, the Releasing Parties expressly agree to waive and relinquish all rights and benefits they may have under California Civil Code Section 1542, which reads as follows:

  SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

  b. The Releasing Parties, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, light of action, or any light, of any kind whatsoever, within the scope of the Released Claims, and that no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Claims.

**16. Dismissal of the Action.** At the conclusion of the Court's continuing jurisdiction, Plaintiffs will take all necessary actions and file all necessary documents to effectuate dismissal of the Action, with prejudice.

**17. Settlement Payments and Attorneys' Fees.** All Parties, and all Releasing Parties, will bear their own costs, expenses, and attorneys' fees in relation to or arising out of (a) the Action, (b) the resolution, negotiation, and settlement of the Action, including the negotiation of this Agreement, and (c) the implementation of this Agreement, including the resolution of any Dispute.

**18. Non-Admission of Liability.** By entering into this Agreement, City admits no liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein

constitutes an admission by City as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made in the Action. City entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, are inadmissible in evidence and cannot be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

19. **Knowing and Voluntary.** This Agreement is an important legal document and, in all respects, has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, before signing within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, before signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

20. **Entire Agreement.** This Agreement constitutes the entire, agreement between Plaintiff and City regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between Plaintiff and City relating to the subject matter hereof. Plaintiff and City each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no

representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, without limitation, any purported supplements, modifications, waivers, or terminations of this Agreement, are valid or binding, unless executed in writing by all of the Parties to this Agreement, Any alteration, change, or modification of or to this Agreement must be made by written instrument executed by each Party in order to become effective.

21. **Warranty of Authority.** Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

22. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which is considered an original but all of which constitutes one agreement.

Signatures:

Date: 4/6/20

Joe Vinatieri, Mayor
City of Whittier

Date: _____

Orange County Catholic Workers, Plaintiff

Date: 4/6/20

Henry Bouchot, Mayor Pro Tem
City of Whittier

Approved as to form:

Richard D. Jones, City Attorney
City of Whittier

Approved as to form:

Carol Sobel
Attorney for *OCCW et al.*, Plaintiffs

Approved as to form:

Brooke Weitzman
Attorney for *OCCW et al.*, Plaintiffs

-19-
SETTLEMENT AGREEMENT