**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

**CAROL A. SOBEL** SBN 84483          **PAUL L. HOFFMAN** SBN  71244
**WESTON ROWLAND** SBN 327599   **CATHERINE SWEETSER** SBN 271142
**LAW OFFICE OF CAROL SOBEL**     SCHONBRUN, SEPLOW, HARRIS &
1158 26TH STREET, #552               HOFFMAN & ZELDES
Santa Monica, California 90403      11543 W. Olympic Blvd.
t. 310-393-3055                      Los Angeles, California   90064
e. carolsobellaw@gmail.com          t.  310-396-0731
e. rowlandweseston@gmail.com        e. hoffpaul@aol.com
                                    e. csweetser@sshhlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| ORANGE COUNTY CATHOLIC WORKER, | Case No. 8:18-cv-00155 DOC (JDE) |
| Plaintiffs, | **REQUEST FOR EMERGENCY STATUS CONFERENCE AND ORDER** |
| v. | |
| ORANGE COUNTY, et al., | |
| Defendants. | |

        With complete disregard for the existing settlement and the "60% plus 1"
minimum bed requirement before any case by case enforcement, the City of Santa
Ana secretly closed its only emergency shelter, shipped the willing residents to a

different City in the North SPA like luggage, and continued enforcement. They City current has zero of the required 450 beds available.

Through the dispute resolution process the City agreed to immediately reopen the LINK shelter for 200 and to ensure no tickets were written pending that reopening. They City now plans to clear an encampment of approximately 40 people at 3:00PM Saturday under the guise of an "abatement action" claiming all arrests will be for the abatement order, not camping and therefore not a violation of the settlement. The encampment (just like the riverbed and many church parking lots over which this Court supervised notice, outreach and relocation of individuals) is private property. However, the property owner has welcomes the Court to help (just like the churches of Fullerton) in ensuring the City provides services to the people seeking refuse on their property. With permission, the property owner El Centro will appear at the hearing as Pastor Don, Father Dennis, and many others have in the past.

On September 23, 2019, Plaintiff Orange County Catholic Worker ("OCCW") and the City of SANTA ANA filed a Notice of Conditional Settlement and Exhibit A, the Santa Ana Settlement Agreement.  The Court retained broad jurisdiction to enforce the Settlement Agreement for the period of time and pursuant to the conditions specified in the Agreement. On September 23, 2019, the Court reviewed and preliminarily approved the Settlement Agreement incorporated in full Order.

The Settlement Agreement and Court Order represented an overarching agreement set forth in other related settlements: The City would maintain available low-barrier emergency shelter beds for a minimum of 60% of its houseless population. The City would cease all enforcement of all property and quality of life related crimes (including municipal code violations and park hours) at any time if fell short of the 60% minimum, the City would engage in outreach and assessments to ensure that appropriate services were offered to those who require a higher level

of care than congregate shelter. Unlike other similar settlements, while the 60% at that time was set at 450 beds, the City and the Plaintiffs agreed that the existing 200 bed shelter would suffice pending the construction of the second 250 bed shelter.

During negotiations, Plaintiffs agreed to relatively loose language around the beds because the Court had broad discretion to enforce the 60% plus one rule and the City felt it was necessary due to a divided council. The City Manager and City Attorney who participated in those negotiations are still the City Manager and City Attorney for the City.

Despite the settlement, the City continued to write quality of life tickets without engaging in the required outreach and assessment. Almost all individuals from the City who Plaintiffs were able to assist in connection to Telecare services for severe and persistent mental illness had dozens of tickets written over the preceding year during the settlement but had never been assessed for higher level care by Telecare.

During the Covid-19 crisis, the LINK shelter converted to a higher-barrier sheltering becoming an fully locked facility that only allowed people to leave during the day with permission and an appointment or approved trip that staff deemed necessary. In other cities that implemented similar laws, the Court deemed those high-barrier shelter and required that before any enforcement, those cities offer low-barrier shelter that allowed people to walk in and out of the front doors during daytime hours. At the time of the settlement negotiation, the County operated a low-barrier shelter in downtown Santa Ana and the City could offer that as an alternative for those who declined a shuttle-only facility. That County shelter closed. There was also an extended time for the "seasonal armory" shelter, a low barrier nighttime only option operated by the County. That has also closed. Finally, there was a low-barrier women's shelter and that shelter closed.

Many individuals, particularly those with severe and persistent mental illness, continued to have weekly interactions with law enforcement with no meaningful assistance provided. They found refuse at El Centro Cultural de Mexico - a non-profit organization that like the churches in other cities, told them they would help find services and would not lead with police. After months of begging the city to send help, working with Plaintiffs and other community organizations to one by one begin getting people enrolled in Telecare, and fighting daily to get any newly opened bed at the County Yale shelter to be used for this group of people, the City opted to pursue an abatement action in state court for permission to remove the people and property.

The City attempts to skirt this Court jurisdiction are no different than if other cities used trespassing laws in areas closed to the public. If a City with no shelter beds can avoid the terms of this settlement by displacing people through a determination that they are a "nuisance" or a danger to "health and safety" simply by existing while no shelter is available within the service planning area, the settlements are meaningless and Plaintiffs should return to the practice of filing new cases for each violation. If the City is permitted to proceed as planned, in addition to violating this settlement there will be new violations of ADA Title II - 42 U.S.C 12132 and likely state created dangers for those who are forced into the street without their belongings and without anywhere to go despite their severe and persistent disabilities.

## CONCLUSION

Plaintiffs seek an emergency hearing and Court intervention to stop all action by the City that would displace houseless people within the City of Santa Ana (including at the property on Ross street through the abatement) pending that hearing. While there is a pending request to continue the information Dispute Resolution

4

process before 3PM today, as of this time it is unclear to Plaintiffs if that will happen. The City knew about this issue for days or weeks and opted to post a 24 hours notice at 3PM Friday and give no notice to Plaintiffs.

There is no renewed urgency for the site. Nothing has changed since last week in court. The site has been in place for months during which time the City could have worked with the Court or Plaintiffs to provide notice and resources as all other cities did, as this City did in the past. The people the City deems a nuisance have yet to be offered shelter beds since the City does not have a shelter within it's limits. Instead, the City attempts to avoid the jurisdiction of this Court and its duties under the settlement. Despite the City claim in state court, there is no justification or any urgent abatement that cannot be resolved by opening the shelter and followed the process this court has supervised so many times before. If the City proceeds as planned, it will cause irreparable harm to the desperate people waiting for shelter and services. The people who the City has deemed a nuisance despite having not even a single emergency shelter bed to offer them, after closing its only shelter—The LINK.

At that status conference, Plaintiffs will request an order finding the City to be in violation of the settlement, suspending all City action that would displace any people pending the opening of the 450 required low-barrier emergency beds, and sanctioning the City with attorney fees and any other actions the Court deemed fit.

Respectfully submitted,

ELDER LAW AND DISABLITY RIGHTS CENTER
LAW OFFICE OF CAROL A. SOBEL

Dated: _5/8/2021_____          _/s/ Brooke Weitzman_____.
Brooke Weitzman
Attorneys for Plaintiffs

**EXHIBIT A**

1  SONIA R. CARVALHO (SBN 162700)
   CITY ATTORNEY
2  JOHN M. FUNK (204605)
   ASSISTANT CITY ATTORNEY
3  CITY OF SANTA ANA
   20 CIVIC CENTER PLAZA M-29
4  P.O. BOX 1988
   SANTA ANA, CALIFORNIA 92702
5  TELEPHONE:  (714) 647-5201
   FACSIMILE:    (714) 647-6515
6  EMAIL:  jfunk@santa-ana.org

7

8  Attorneys for Defendant and Cross-Claimant
   CITY OF SANTA ANA

9

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                  SOUTHERN DIVISION

13

14  ORANGE COUNTY CATHOLIC          )  Case No.: SACV 18-0155-DOC (JDE)
15  WORKER, an unincorporated       )
    association; Lisa Bell, Shawn Carroll, )  **SETTLEMENT AGREEMENT BY**
16                                  )  **AND BETWEEN THE CITY OF**
    Melissa Fields, Larry Ford, Cameron  )  **SANTA ANA AND THE ORANGE**
17  Ralston, Kathy Schuler, Gloria       )  **COUNTY CATHOLIC WORKER**
18  Shoemake, as individuals,            )

19

20            Plaintiffs,             )

21        v.                          )

22  ORANGE COUNTY, the City of       )
    Anaheim, the City of Costa Mesa, the  )
23  City of Orange, et al.           )

24            Defendants.            )

25                                  )

26                                  )

27                                  )

28

                            1

1  City of Santa Ana,

2              Cross-Claimant,

3         v.

4

5  County of Orange, City of Aliso Viejo,
6  City of Anaheim, City of Brea, City of
7  Buena Park, City of Costa Mesa, City of
   Cypress, City of Dana Point, City of
8  Fountain Valley, City of Fullerton, City of
9  Garden Grove, City of Huntington Beach,
   City of Irvine, City of La Habra, City of
10 La Palma, City of Laguna Beach, City of
11 Laguna Hills, City of Laguna Niguel, City
   of Laguna Woods, City of Lake Forest,
12 City of Los Alamitos, City of Mission
13 Viejo, City of Newport Beach, City of
14 Orange, City of Placentia, City of Rancho
15 Santa Margarita, City of San Clemente,
   City of San Juan Capistrano, City of Seal
16 Beach, City of Stanton, City of Tustin,
17 City of Villa Park, City of Westminster
   and City of Yorba Linda,
18

19             Cross-Defendants.

20

21

22              **SETTLEMENT AGREEMENT**

23       This Settlement Agreement ("Agreement") is entered into by and between

24 Defendant and Cross-Claimant City of Santa Ana ("City"), and Plaintiff Orange

25 County Catholic Worker ("OCCW"), an unincorporated association acting by and

26 through its designated representatives.

27       The parties to this Agreement are referred to herein individually as a "Party"

28 and collectively as the "Parties."

                                    2

**RECITALS**

A.     WHEREAS, on January 29, 2018, OCCW and certain individual plaintiffs filed an action, entitled *Orange County Catholic Worker et al. v. Orange County et al.*, United States District Court, Central District of California, Case No. 8:18-cv-00155-DOC-KES ("OC Catholic Worker Action"), against the County of Orange ("County"), the City of Anaheim, the City of Costa Mesa, and the City of Orange.

B.     WHEREAS, on March 17, 2018, the City of Santa Ana intervened in the OC Catholic Worker Action as a defendant.

C.     WHEREAS, on April 26, 2018, the City of Santa Ana filed a cross-complaint in the OC Catholic Worker Action against the County and all other cities in the County, alleging violations of the: (1) Eighth Amendment (cruel and unusual punishment); (2) Fourteenth Amendment (equal protection); and (3) Fourteenth Amendment (due process) ("Cross-Complaint").  The Cross-Complaint was served on the County, the City of Anaheim, the City of Orange, and the City of Tustin. The Cross-Complaint remains unserved on all other cross-defendants.

D.     WHEREAS, on July 26, 2018, OCCW filed a First Amended Complaint ("OCCW FAC"), which, among other changes, pleaded a potential class action against the County.  At the time of execution of this Agreement, the OCCW FAC is the operative complaint in the OC Catholic Worker Action.

E.     WHEREAS, on November 13, 2018, OCCW filed a Supplemental Complaint adding the City of Tustin as a defendant.

F.     WHEREAS, on June 28, 2019, OCCW filed a Supplemental Complaint adding the cities of Brea, Buena Park, Cypress, Fullerton, La Habra, La Palma, Los Alamitos, Placentia, Stanton, Villa Park, and Yorba Linda as defendants ("North SPA Cities").

G.     WHEREAS, the OCCW FAC as well as the Supplemental Complaints, alleges that OCCW is an unincorporated association dedicated to the

3

service and care of the poor in Orange County, and that the individual OCCW plaintiffs are homeless individuals residing in Orange County. The OCCW FAC alleges, inter alia, that defendants, and each of them, have violated the OCCW plaintiffs' rights by enforcing various laws against them, including trespass, loitering, and/or anti-camping ordinances, at times when, according to the OCCW plaintiffs, there were no immediately accessible and appropriate beds available to them in Orange County. The City of Santa Ana disputes the factual allegations and legal contentions made by OCCW in the OCCW FAC.

H.   WHEREAS, the OCCW FAC includes the following causes of action against the City of Santa Ana as well as other defendants: (1) violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, and Article VII, section 17 of the California Constitution for alleged "cruel and unusual punishment"; (2) violation of the First and Fourth Amendments to the U.S. Constitution; (3) violation of the right to due process of law under the Fourteenth Amendment to the U.S. Constitution; (4) violation of California Civil Code section 52.1; (5) violation of California Government Code section 815.6; and (6) violation of California Government Code section 11135. Defendant City of Santa Ana disputes each and every claim for relief in the OCCW FAC in its entirety and disputes OCCW's underlying legal contentions and theories.

I.   WHEREAS, the Cities of Anaheim, Costa Mesa, Orange, and Tustin have each entered into separate settlement agreements with OCCW, all of which have been approved by the Court.

J.   WHEREAS, the North SPA Cities have collectively entered into a settlement agreement with OCCW that has been approved by the Court.

K.   WHEREAS, the City of Santa Ana has voluntarily dismissed all those parties to the Cross-Complaint that were served such that the County remains the sole cross-defendant that has been served with the Cross-Complaint.

4

L.     WHEREAS, without admitting any wrongdoing, liability, or legal violations on the part of the City of Santa Ana, without conceding the validity of any of the OCCW's legal theories or claims, and for the sole purpose of preemptively, economically, and efficiently resolving the OC Catholic Worker Action as to the City of Santa Ana, the Parties now desire to enter into this Agreement on the terms set forth herein.

## TERMS

NOW, THEREFORE, for full and valuable consideration, the sufficiency of which is hereby acknowledged, and based upon the foregoing Recitals, and the terms, conditions, covenants, and agreements herein, the Parties agree as follows:

**1.     Order re Continuing Jurisdiction and Effective Date**

Following the full execution of this Agreement by all Parties, the Parties shall file with the Court in the OC Catholic Worker Action proposed orders regarding settlement and continuing jurisdiction and incorporating the terms of this Agreement.  Except for the obligations of the City in Section 3, the obligations of the Parties in the remaining sections of this Agreement, and the releases contained herein, shall become effective and operative on the date(s) on which the respective order is fully executed and entered by the Court ("Effective Date"), and shall be contingent upon the Court's signing and entry of the respective order.  The obligations of the City in Section 3 shall become effective and operative only upon the Court's approval of a separate settlement agreement between the City and County as to the City's Cross-Complaint, including but not limited to the subjects of a replacement site for the County-operated shelter known as the "The Courtyard" and the parties' obligations under a related Memorandum of Understanding currently in effect between them.  This Agreement shall be in effect for three (3) years following the Effective Date and then shall terminate.

1  **2. Incorporation of Recitals**

2  The representations in the above-section of this Agreement, entitled

3  "Recitals," are hereby incorporated into and made a material part of the terms and

4  representations of this Agreement.

5  **3. Construction and Operation of Shelters**

6  3.1 At the time of this Agreement, the City operates a temporary,

7  low-barrier shelter in the City with a capacity of 200 beds, known as "The Link."

8  3.2 The City shall fund, obtain funding for, and/or coordinate third-

9  party funding for, the construction and operation of an additional low-barrier

10 homeless shelter at a different location within the boundaries of the City, with

11 capacity of 200 beds, expandable to 250 beds ("Additional Shelter"). The City

12 shall have complete discretion in determining which Additional Shelter to fund and

13 which shelter project may be feasible, subject to any limitations set forth herein.

14 The City's funding commitment for the Additional Shelter shall be for three (3)

15 years, beginning on the Effective Date.

16 3.3 There will be an overlap period of time during which The Link

17 and the Additional Shelter will operate concurrently such that the total number of

18 beds during this time will be up to 450. Any remaining number of beds that may

19 be necessary to satisfy the City's obligations under Section 3 of this Agreement

20 shall be addressed in the context of a separate settlement agreement between the

21 City and County as to the City's Cross-Complaint.

22 3.4 The City shall require that the Link and the Additional Shelter

23 be operated on a non-religious basis, but not exclude religious organizations from

24 operating, and in full compliance with all applicable state and federal

25 antidiscrimination laws, including but not limited to, California Government Code

26 section 11135 and the Americans with Disabilities Act, 42 U.S.C. section 12101 et

27 seq.

28

6

3.5    Although the above-referenced shelters are not the exclusive means by which the City may satisfy its obligation to meet the needs of homeless individuals in the City, OCCW Plaintiffs acknowledge and agree that the creation and operation of The Link and the Additional Shelter, or a number of placements equal to The Link and the Additional Shelter, shall satisfy the City's obligations under Section 3 of the Agreement, as well as any other requirement by the Court pertaining to the number of available beds for the unsheltered individuals in the City.

**4.    Enforcement of Anti-Camping Ordinances**

4.1    The City shall establish the following policies and procedures relating to the enforcement of Santa Ana Municipal Code sections 10-400 to 10-403 and 10-550-551 ("Anti-Camping Ordinances"), curfews including park hours, or any comparable provisions of state law, or any law concerning "loitering" against homeless individuals within its jurisdictions. This shall apply to the City and its agents including but not limited to private security:

4.1.1    Absent exigent circumstances, any enforcement of the Anti-Camping Ordinances against a homeless individual (including any of the Individual OCCW Plaintiffs) will first be preceded by contacts from outreach and engagement personnel to determine an available and appropriate placement for the individual in question, per the procedures outlined herein.  For purposes of this Agreement, "outreach and engagement personnel" may include County Outreach and Engagement Personnel, representatives from CityNet, City employees, the homeless liaison, police officers, and any other organizations with which the City has contracted for such outreach and engagement services (collectively, "O&E Personnel") who are trained in engaging in appropriate clinical assessments of individuals with disabilities to determine an appropriate placement.

4.1.2    In implementation of Section 4.1.1, prior to enforcement of the Anti-Camping Ordinances against any homeless individual, O&E Personnel

7

1  will locate and offer an available and appropriate placement in the City for the
2  individual in question.

3          4.1.3  If the individual declines the offered placement, the City
4  may proceed with enforcement of the Anti-Camping Ordinances in its sole
5  discretion subject to the dispute resolution process detailed herein.

6          4.1.4  If the alleged violation arises from an individual's
7  presence in a park outside of the established operational hours of the park, and if
8  there is no appropriate and immediately available placement for that person, the
9  City will advise the individual that they must leave the park and move to any
10 public area outside of the park.  If the person does not leave the park after
11 receiving this warning, the City may issue a citation to the individual.

12         4.1.5  The requirements of this Section 4.1 shall only apply
13 until the earlier of: (a) the date on which the case of *Martin v. City of Boise*, 902
14 F.3d 1031 (9th Cir. 2018) ("*Martin v. Boise*") is no longer applicable law within
15 the jurisdiction of the Ninth Circuit or (b) the date on which the Court finds that
16 there are sufficient appropriate and immediately available placements for the
17 unsheltered homeless population in the City.

18         4.2    Nothing in this Agreement constitutes an admission by the City
19 that its current policies and procedures for enforcement of the Anti-Camping
20 Ordinances are either: (a) different from those set forth above or (b) in any way
21 legally inadequate, or a concession by the OCCW Plaintiffs that they are legally
22 adequate.

23         4.3    Nothing in this Agreement constitutes a promise,
24 representation, or warranty, on the part of the City, that any number of beds will be
25 available to any particular person(s) at any time.  The lack of availability of an
26 appropriate and immediately accessible bed for any person or persons at any time,
27 including any of the individual OCCW plaintiffs, may impact the ability of the
28 City to punish a purported violation of the Anti-Camping Ordinances.

4.4.    Absent exigent circumstances, the City shall not cite or arrest any homeless individual for violation of the law based on an alleged obstruction of public property unless that individual, either individually or in conjunction with his or her property, actually obstructs free passage of any person or vehicle on any public highway, alley, sidewalk, or crosswalk and declines to move the object(s) creating obstruction from the public right of way after being requested to do so, or actually obstructs with access to a public highway, alley, sidewalk, or crosswalk for sanitation, cleaning, or routine maintenance or repair purposes and declines to cease the obstruction after being requested to do so.

4.5    Nothing in this Agreement shall impact the authority of the City to enforce any law not based on an individual's unsheltered status against a person believed to be homeless, including issuing and arresting the person for an alleged violation of law.

## 5.    **Dispute-Resolution Process**

The Court shall retain jurisdiction over the OC Catholic Worker Action for a period of three years from the Effective Date for the purposes of (a) overseeing the implementation of this Agreement, and (b) implementing and presiding over the a dispute-resolution process (the "Dispute-Resolution Process") to be established by the Court and to which Plaintiffs and the City hereby consent and agree:

5.1    Except as expressly identified in this Agreement, or as may be modified by the Court or the Parties, with the Court's consent, during the three-year period of the Court's continued jurisdiction, this Dispute-Resolution Process shall apply to adjudicate any and all disputes between, on the one hand, the City, and, on the other hand, any homeless individual or individuals who consent, at the time of requesting the Dispute-Resolution Process, to be bound by the Dispute-Resolution Process and the provisions of this Agreement applicable to the OCCW Plaintiffs (including but not limited to the individual OCCW plaintiffs), relating to (a) the implementation of this Agreement, and/or (b) the enforcement of the above-

identified Municipal Code sections, or other laws applied against any homeless person arising out of that individual's homeless status, including but not limited to disputes regarding the availability or adequacy of any shelter or shelter services offered to the individual pursuant to Section 4.1 of this Agreement and expressly excluding violations of law relating to conduct not arising from the individual's homeless status (examples include but are not limited to possession of illegal substances or weapons, trespass on private property, acts of violence, public intoxication, etc.) (collectively, the "Disputes," and individually, a "Dispute").

5.2     In the event of any Dispute arising during the pendency of the Court's retained jurisdiction, the parties to that Dispute will first attempt to meet and confer informally with the other side in an effort to resolve it. In the case of a Dispute raised by one or more homeless individuals against the City, or a Dispute raised by the City against one or more homeless individuals, including any such persons who are known to be, or the City is advised are, represented by counsel of record in the OC Catholic Worker Action, this attempt will at least involve (a) a written communication from the party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy, and providing any available evidence in relation thereto, and (b) a discussion, either in person or via telephone, seeking to resolve the Dispute. In the event the City receives a complaint from a homeless individual, City employees, as well as the employees of any City shelter facility, shall give any affected individual notice of the Court's Dispute-Resolution Process and the contact information for applicable legal services organizations, including the law center associated with Plaintiffs' counsel, together with a statement that such entities may be available to assist them.

5.3     If the parties to a Dispute are unable to resolve it within two (2) court days after it is first raised informally by one of the parties to the Dispute, any party to the Dispute may request a hearing with the Court under the standards and

10

processes to be set by the Court, and the Court will have jurisdiction to resolve that Dispute. If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by the Court.

5.4     The fact that a person has initiated the Dispute-Resolution Process shall not impact the City right to enforce any law against that person, including issuing citations to the person, concurrently with the Dispute-Resolution Process. However, the City agrees that no custodial arrest will be made for a violation of the anti-camping, loitering, and similar laws arising from an individual's status as homeless prior to the exhaustion of the Dispute-Resolution Process with the Court pursuant to Section 5.3 of this Agreement. In circumstances involving citation, the Court may issue an order directing the City to stay the filing of formal charges against the homeless individual until the Dispute-Resolution Process has been completed for that Dispute. The City agrees not to contest such a request for a brief stay of the filing of charges. Once the Dispute-Resolution Process has concluded regarding an issue, the City will not be required to await exhaustion of the Dispute-Resolution Process regarding the same issue and the same individual prior to a custodial arrest where the individual does not comply with a warning or leave once a citation has been issued, provided the City complies with the Court's determination of that same issue for that same individual. For purposes of the Section 5.4, "same issue" refers to an issue determined by the Court in the Dispute-Resolution Process where the individual's objections, including any claim of alleged disability, physical limitations and the offered placement are substantially similar for purposes of determining whether the individual's disability or other objection is being reasonably accommodated.

5.5     In resolving any Dispute, the Court may enforce any rights available to a party under this Agreement, subject to sufficient notice, opportunity to

11

be heard, briefing, evidence, and other due process.  The Court shall not be empowered to award damages or any other monetary relief to any party as a result of any Dispute submitted to this process.  Nothing in this Agreement limits the ability of any Plaintiff to seek damages in other proceedings not subject to this Agreement.

5.6    Should either party disagree with the Court's determination resulting from the Dispute-Resolution Process, nothing in this Agreement shall preclude either party from commencing litigation concerning the subject of said Dispute, and pursuing any remedies available at law; provided that in advance of initiating such action, the parties shall first engage in an in-person meet-and-confer to occur within seven (7) calendar days of a request from the other party.

6.    **Release and Covenant Not to Sue**

6.1    In consideration for the terms of this Agreement, OCCW Plaintiffs, and each of them, and any other individual claiming rights under this Agreement (the "OCCW Releasing Parties"), hereby release and forever discharge the City of Santa Ana, as well as its present and former employees, agents, managers, officers, directors, councilmembers, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "City Released Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorney's fees, costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the OCCW Releasing Parties, and/or any of them, have, or ever may claim to have, as against the City Released Parties, or any of them, whether directly or indirectly, relating to, or arising out of the: (a) OC Catholic Worker Action; (b) any claims raised in, or that could been raised in, the OC Catholic Worker Action; (c) the availability of homeless shelters, shelter beds, and/or other homeless accommodations in the City of Santa Ana; (d) the City's alleged obligation to provide or fund such

12

1    accommodations; and/or (e) the City's alleged inability to enforce any of the Anti-

2    Camping Ordinances and any law that the OCCW Releasing Parties claim

3    criminalizes a person's homeless status, against any person because of his or her

4    homeless status (collectively, the "OCCW Released Claims").

5            6.2     The releases set forth in Section 6.1 are releases of all claims,

6    demands, causes of action, obligations, damages, and liabilities, of any nature

7    whatsoever, and are intended to encompass all known and unknown, foreseen and

8    unforeseen, claims that are possessed by the OCCW Releasing Parties and within

9    the scope of the OCCW Released Claims based solely and only on the events

10   giving rise to the OC Catholic Worker Action.  To effectuate the intent of the

11   Parties, the OCCW Releasing Parties expressly agree to waive and relinquish all

12   rights and benefits they may have under California Civil Code Section 1542, which

13   reads as follows:

14         A general release does not extend to claims that the creditor or

15         releasing party does not know or suspect to exist in his or her favor at

16         the time of executing the release and that, if known by him or her,

17         would have materially affected his or her settlement with the debtor or

18         released party.

19            6.3     The OCCW Releasing Parties warrant that they have made no

20   assignment, and will make no assignment, of any claim, chose in action, right of

21   action, or any right, of any kind whatsoever, within the scope of the OCCW

22   Released Claims, and that no other person or entity of any kind had or has any

23   interest in any of the demands, obligations, actions, causes of action, debts,

24   liabilities, rights, contracts, damages, attorney's fees, costs, expenses, losses, or

25   claims within the scope of the OCCW Released Claims.

26        **7.**     **Dismissal of the OC Catholic Worker Action**

27         Upon entry of the Court's Order re Continuing Jurisdiction and Settlement,

28   the OCCW Plaintiffs, as to the City, will take all necessary actions and file all

necessary documents to effectuate dismissal of the OC Catholic Worker Action with prejudice.

### 8.    Settlement Payments and Attorney's Fees

All Parties to this Agreement shall bear their own costs, expenses, and attorney's fees in relation to or arising out of: (a) the OC Catholic Worker Action; (b) the resolution, negotiation, and settlement of the OC Catholic Worker Action, including the negotiation of this Agreement; and (c) the implementation of this Agreement.

### 9.    Non-Admission of Liability

By entering into this Agreement, the City does not admit any liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the OC Catholic Worker Action.  Nothing herein constitutes an admission by the City as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made in the OC Catholic Worker Action.  The City has entered into this Agreement solely to avoid the time, expense, and risk of continued litigation.  The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, and that this settlement and any document related to this settlement, including this Agreement and any related orders, and the negotiations leading up to this settlement, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding, except in an action or proceeding to approve, interpret, or enforce this Agreement.

### 10.    Knowing and Voluntary

This Agreement is an important legal document that has been voluntarily and knowingly executed by the Parties.  The Parties, and each of them, specifically represent that, prior to signing this Agreement: (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement; (b) they have each carefully read and fully understand all of the

14

provisions of this Agreement; and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. The OCCW Plaintiffs and City further specifically represent that, prior to signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

### 11.    Entire Agreement

This Agreement constitutes the entire agreement by and between the OCCW Releasing Parties and the City Released Parties regarding the matters discussed herein, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the OCCW Releasing Parties and the City Released Parties relating to the subject matter hereof. The OCCW Releasing Parties and the City Released Parties each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement shall be made by written instrument executed by each Party in order to become effective.

### 12.    Warranty of Authority

Each individual or entity that executes this Agreement represents and warrants, in his, her or its personal capacity, that he, she, or it is duly authorized

15

and empowered to enter into this Agreement on behalf of the party it purports to represent.

**13.     Counterparts**

This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement.

**14.     No Waiver of Terms of Agreement**

The failure to insist upon compliance with any term, covenant, or condition contained in this Agreement shall not be deemed a waiver of that term, covenant, or condition, nor shall any waiver or relinquishment of any right or power contained in this Agreement at any one time or more times be deemed a waiver or relinquishment of any right or power at other time or times.

**15.     Modification of Agreement**

The enforcement terms of this Agreement may be vacated or modified, at the request of any Party hereto, if: (a) the holding of *Martin v. Boise* is reversed or modified, or is otherwise no longer good law; (b) the Court determines that the number of available and appropriate shelter placements in the City warrants termination or modification of the Agreement; or (c) upon petition by the City, the Court determines that other terms of the Agreement have been met.

IN WITNESS WHEREOF, this Settlement Agreement is hereby entered into and executed by the parties hereto on the dates set forth below.

OC CATHOLIC WORKER

Dated: _Sept 23_ , 2019          By: _Orange County Catholic Worker_
                                          _by Carol Sobel_

16

1   APPROVED AS TO FORM

2

3   

4   Carol A. Sobel
    Attorneys for Plaintiffs

5

6   APPROVED AS TO FORM

7

8   

9   Brooke Weitzman
    Attorneys for Plaintiffs

10

11                                      CITY OF SANTA ANA

12

13   Dated: _9/23__, 2019        By: _____

14                                      Kristine Ridge
                                        City Manager

15

16   APPROVED AS TO FORM

17

18   

    John M. Funk
19   Assistant City Attorney

20

21   ATTEST

22

23   _____

    Daisy Gomez
24   Clerk of the Council

25

26

27

28

17